UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---------------------------------------------------
)
Marcus Harris and Julius Caldwell, on )
behalf of themselves and all others )
similarly situated, )
)
                Plaintiffs,        )        **CLASS ACTION**
v.                                 )        **COMPLAINT**
                                   )
CHIPOTLE MEXICAN GRILL, INC.,      )
                                   )
                Defendant.         )
                                   )
---------------------------------------------------

## <u>INTRODUCTION</u>

1.      This is a federal collective and state class action brought pursuant to the

Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (the "FLSA") and the Minnesota Fair

Labor Standards Act, Minn. Stat. § 1777.21 et seq. ("MFLSA"), respectively, to recover

unpaid overtime compensation and other unpaid wages owed to Plaintiffs Marcus Harris,

Julius Caldwell, and all others similarly situated, who are former or current hourly-paid

employees of Defendant Chipotle Mexican Grill, Inc. ("Chipotle").

2.      Chipotle employs these employees within the District of Minnesota to

work in its restaurants. Throughout the applicable time period, Chipotle has maintained

offices and restaurants within the District of Minnesota.

3.      For at least three years prior to the filing of this action and continuing

through the date of this action, Chipotle has devised and implemented general policies

and practices to deprive its hourly-paid employees of the compensation to which they are

entitled.  Chipotle routinely requires its hourly-paid employees to work "off the clock,"

without pay, and utilizes timekeeping devices that automatically punch employees off the clock, even if they are still working.

4.      Harris and Caldwell, on behalf of themselves and all others similarly situated former and current hourly-paid Chipotle employees during the applicable time period, seek unpaid overtime, unpaid regular wages, liquidated damages and/or pre-judgment interest, post-judgment interest and attorneys fees and costs.

5.      Plaintiffs shall request that the Court authorize concurrent notice to all former and current hourly-paid employees who were employed by Chipotle during the applicable time period, informing them of the pendency of this action and of their right to opt in to this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b).

6.      Harris and Caldwell also propose a Rule 23 class brought on behalf of themselves and all other former and current hourly-paid employees who were employed by Chipotle in Minnesota during the applicable time period.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, jurisdiction over the class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper under 28 U.S.C. §1391(b)(1) and § 1391(c), as the Defendant conducts business within this District, and many of the acts complained of occurred in this District.

## COVERAGE

9.     At all times material hereto, Plaintiffs and all similarly-situated employees were "employees" of Defendant within the meaning of FLSA because they were individuals employed by and employer.   Also, all similarly-situated employees were "employees" of Defendant within the meaning of FLSA because:

   a.   the Defendant exercised control over Plaintiffs and all similarly-situated employees work schedules, work tasks and work processes;

   b.   the Plaintiffs and all similarly-situated employees had no opportunity to experience a profit or loss consistent with the characteristics of being independent businesswomen/ businessmen;

   c.   the Plaintiffs and all similarly-situated employees did not invest in Defendant's business, did not include amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself;

   d.   Plaintiffs and all similarly-situated employees did not transfer from place to place as particular work is offered to them; Plaintiffs worked for only one employer, Defendant, and such relationship was continuous and of indefinite duration;

   e.   Plaintiffs and all similarly-situated employees did not "make any independent judgments," and thus did not exercise their skills "in any independent manner;

   f.   Plaintiffs and all similarly-situated employees services were a necessary component of Defendant's business; and

   g.   Plaintiffs and all similarly-situated employees did not bring their own tools or equipment to work, all tools and equipment, including the

ambulances Plaintiffs and all similarly-situated
employees drove were property for Defendant.

10.     At all times material hereto, Defendant was an "employer" within the meaning of FLSA because Defendant acted directly or indirectly in the interest of the employer in relation to an employee.

11.     At all times material hereto, Defendant was an employer because it had the ability to do the following with respect to Plaintiffs and all similarly-situated employees: hire and fire, supervise work schedules and conditions of employment, determined rates and method of payment and were obligated under the law to maintain employment records.

12.     Also, at all times material hereto, Defendant was an employer because it had exclusive operational control over Plaintiffs and all similarly-situated employees, were solely responsible for the day-to-day operations, *and* had direct responsibility for the supervision of the Plaintiffs and all similarly-situated employees.

13.     At all times material hereto, Defendant had two (2) or more employees.

14.     At all times material hereto, Defendant was, and continues to be an "enterprise engaged in commerce" within the meaning of FLSA.

15.     At all times material hereto, Defendants were, and continues to be an "enterprise engaged in commerce" within the meaning of FLSA.

16.     Also, the annual gross revenue of Defendant was in excess of $500,000 per annum during the relevant time periods.

17.     At all times material hereto, Plaintiffs, and all similarly-situated employees were "engaged in commerce" and subject to individual coverage of the FLSA.

## PARTIES

18.     Individual Plaintiff and Class Representative Marcus Harris ("Harris") was, at all material times, a resident of Hennepin County, Minnesota.  Harris is a current covered, non-exempt employee of Chipotle, as defined by the FLSA, 29 U.S.C. § 203(e) and (g).  Chipotle employed Harris as an hourly-paid employee to work in its restaurants preparing, serving, and selling its food products, and to perform other related tasks, including cleaning.

19.     Individual Plaintiff and Class Representative Julius Caldwell ("Caldwell") was, at all material times, a resident of Hennepin County, Minnesota.  Caldwell is a current covered, non-exempt employee of Chipotle, as defined by the FLSA, 29 U.S.C. § 203(e) and (g). Chipotle employed Caldwell as an hourly-paid employee to work in its restaurants preparing, serving, and selling its food products, and to perform other related tasks, including cleaning.

20.     Defendant Chipotle Mexican Grill, Inc. is incorporated under the laws of the State of Delaware with its principal place of business located at 1401 Wynkoop Street, Suite 500, Denver, Colorado 80202.  Chipotle has fast food Mexican restaurants throughout the United States, including in Minnesota, where Plaintiffs worked during the applicable time period.  Plaintiffs are informed and believe that Chipotle currently employs over 30,000 hourly paid restaurant workers nationwide, hundreds of which currently work at approximately fifty (50) restaurants located throughout Minnesota.

## FACTUAL ALLEGATIONS

21.     The preceding allegations are incorporated by reference as if fully stated herein.

22.     Chipotle, a chain of non-franchised Mexican style restaurants, describes itself as "compet[ing] in a category of dining now called 'fast-casual,' the fastest growing segment of the restaurant industry, where customers expect food quality that's more in line  with full-service restaurants, coupled with the speed and convenience of fast food." http://www.chipotle.com/en-us/company/about_us.aspx.

23.     One of Chipotle's largest expenses is the payroll of its hourly-paid employees. To reduce this expense and maximize profit, Chipotle maintains a company-wide policy of not paying hourly-paid employees for all time worked, and encouraging its general managers to require that work be performed off the clock.

24.     Chipotle implements its policy with a system of reward and punishment. Payroll budgets are set that realistically can  be  met only if hourly employees work off the clock. General managers are awarded bonuses and other compensation for staying within their payroll budgets. If a payroll budget is exceeded, the general manager's job security is threatened.

25.     The pressure of reducing payroll expense and staying within payroll budgets results in general managers grossly understaffing each location.

26.     The lack of adequate staff, which is a direct result of Chipotle's policies, causes Chipotle to allow, encourage, and direct its hourly employees to perform work without proper compensation.

27.     Chipotle routinely requires hourly-paid employees to punch out, and then continue working until they are given permission to leave. If an employee does not punch out as required, Chipotle utilizes time clock devices that automatically record an

employee as having punched out, even if the employee has not punched out and is still working.

28.     Chipotle routinely conducts trainings, meetings, and other activities that hourly-paid employees are required to attend, but for which they are not allowed to punch in.

29.     Chipotle has failed, and continues to fail, to accurately record, report, and/or preserve records of hours worked by its hourly-paid employees. As a result, Chipotle does not make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment.

30.     Chipotle's actions were pursuant to general policies and directives that were issued from its corporate offices in Colorado, and were carried out by general managers at its stores nationwide, including in Minnesota.

31.     Chipotle has actual knowledge that work is performed by hourly employees without compensation.

32.     Chipotle's conduct in denying overtime and regular wages to its hourly-paid employees, and in failing to keep accurate records with respect to hours worked by its hourly-paid employees, was reckless and willful.  Indeed, such conduct is consistent with corporate management's view, as stated in Chipotle's 2012 Annual Report (at p.16) to its shareholders, that "complying with the[] rules[,]" "including [federal and state] wage and hour laws," "subjects us to substantial expense and can be cumbersome…." (A .pdf version of Chipotle's 2012 Annual Report can be found at http://ir.chipotle.com/phoenix.zhtml?c=194775&p=irol-reportsAnnual.)

## FACTUAL ALLEGATIONS RELATING TO PLAINTIFFS

33.     The preceding allegations are incorporated by reference as if fully stated herein.

34.     During the applicable time period, Harris, Caldwell, and other hourly-paid Chipotle employees were required by Chipotle to work off the clock.

35.     During the applicable time period, Harris, Caldwell, and other hourly-paid Chipotle employees regularly worked in excess of forty eight (48) hours per week, without receiving overtime compensation for all hours worked during the week, and without receiving regular pay for all hours worked during the week.

36.     Harris, a Chipotle crew member, was required to work off the clock from the first day he started at Chipotle, when he was told not to punch in during his "training," which lasted for an entire eight-hour shift.  Subsequently, Chipotle has routinely required Harris to punch out at the end of his scheduled shift, but keep working for hours on "clean up" and other duties. Harris is not compensated for this work, which often exceeds ten to fifteen hours per week, on top of the approximately forty (40) hours per week for which he is paid.

37.     If Harris fails to punch out as required, Chipotle's time clock automatically punches him out and manipulates his time record to show him having punched out at the end of his scheduled shift, even though he worked for hours afterward.

38.     If Harris complains about not being paid for all the hours he had worked, Chipotle retaliates by cutting his hours the following week.  On one occasion, Chipotle reduced his scheduled hours from thirty five (35) one week, to fourteen (14) the next week.

39.     During the applicable time period, Harris has witnessed other hourly-paid Chipotle employees being subjected to the same treatment, in that they are routinely required to punch out and then keep working, they are punched out automatically by the time clock, or they are otherwise required to work off the clock.

40.     Caldwell, a Chipotle service manager, is also required to work off the clock. In addition to being required to punch out at the end of his scheduled shift, Caldwell is required to attend store meetings and other activities, off the clock.

41.     In the store meetings, the general and assistant managers routinely stress to service managers that they must take whatever steps are necessary to stay within the payroll budget, including requiring hourly-paid employees to punch out early and work off the clock.

42.     Caldwell has witnessed other hourly-paid Chipotle employees being subjected to the same treatment, in that they are routinely required to punch out and then keep working, they are punched out automatically by the time clock, or they are otherwise required to work off the clock.

43.     Throughout the United States, including Minnesota, are numerous persons similarly situated to Plaintiffs, all of whom are former or current hourly-paid Chipotle employees during the applicable time period.

## FEDERAL COLLECTIVE ACTION ALLEGATIONS

44.     The preceding allegations are incorporated by reference as if fully stated herein.

45.     This lawsuit is brought by Plaintiffs as a collective action, on behalf of themselves and all others similarly situated, pursuant to the FLSA,  29 U.S.C. § 216(b) (the "Federal Collective Group").

46.     Plaintiffs are informed and believe that Chipotle currently has over 30,000 hourly-paid employees in the United States, including the District of Columbia and Puerto Rico.

47.     Plaintiffs are similarly situated to the other members of the Federal Collective Group because they all (a) worked for Chipotle during the applicable time period; (b) performed the same or similar duties; (c) had limited or no administrative responsibilities; (d) were and are not professionals within the meaning of the FLSA; and (e) were required to work off the clock, without compensation. As a result, there are questions of law and fact common to the Federal Collective Group, Plaintiffs have a well-defined community of interest with the Federal Collective Group; and they are adequate representatives of the Federal Collective Group.

48.     The following questions of law and fact predominate over questions that may affect individual members of the Federal Collective Group:

       a.     Whether Chipotle failed to adequately compensate the members of the Federal Collective Group for all hours worked, as required by the FLSA;

       b.     Whether the members of the Federal Collective Group have been damaged and, if so, the damages to which they are entitled; and

c.      Whether Chipotle willfully violated the FLSA and, if so, the liquidated damages to which members of the Federal Collective Group are entitled.

## CLASS ACTION ALLEGATIONS

49.     In addition to bringing this lawsuit as a nationwide collective action under the FLSA, Plaintiffs propose a class on behalf of themselves and all persons in the State of Minnesota who, within three years prior to the filing of this action, were employed by Chipotle and paid on an hourly basis.

50.     The proposed class meets the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, in that

a.      The members of the Class are so numerous that joinder of all class members would be impracticable.   On information and belief, members of the proposed class number in the thousands.

b.      There are numerous common questions of law and fact at issue. These questions include, but are not limited to, the following:

(1)      whether class members are non-exempt current or former hourly-paid employees within the meaning of Minn Stat. §§ 177.23 and 177.24;

(2)      whether Chipotle was or is the employer of class members within the meaning of Minn. Stat §§ 177.23, 177.24, and 181.171(4);

(3)      whether Chipotle is a "large employer" within the meaning of Minn. Stat. § 177.24;

(4)      whether class members were entitled to be compensated at the federal minimum wage rate of $7.25 per hour;

(5)     whether Chipotle, by its policies and practices, refused and failed to pay the requisite minimum wage to class members;

(6)     whether Chipotle's failure to pay minimum wages violated the rights of class members;

(7)     whether Chipotle's failure to pay overtime wages violated the rights of class members;

(8)     whether Chipotle failed to accurately record, report, and/or preserve records of hours worked by class members;

(9)     whether Chipotle's actions were willful;

(10)    whether class members suffered loss of income and other economic injury as a result of Chipotle's actions; and

(11)    whether class members are entitled to damages, liquidated damages, interest, and other relief.

c.      The representative Plaintiffs' claims are typical of the claims of all other class members. Plaintiffs' claims arise under the same acts and conduct as the claims of other class members. Plaintiffs also bring the same claims, under the same legal authority, and seek the same relief, as all other class members.

d.      Plaintiffs will fully and adequately represent the interests of the class. Plaintiffs have retained counsel who are knowledgeable and experienced in prosecuting class actions. There are no known conflicts with class members that would render Plaintiffs or their counsel inadequate.

51.    The class meets the requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure, in that Chipotle has acted, or refused to act, on grounds that apply generally to the class as a whole.  As alleged herein, all of Chipotle's hourly-paid

employees are subjected to the same treatment by Chipotle, in that they are all required to work off the clock, or face retaliation by Chipotle.

52.     The class also meets the requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure, in that common questions of law or fact predominate over questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Specifically, the benefits of class treatment outweigh class members' interests in individually controlling the prosecution of separate actions; plaintiffs are aware of no other litigation concerning the controversy that has already been brought by other class members; the efficiencies to be gained make it desirable to concentrate litigation of the claims in one forum; and there are no particular aspects of the claims that would make a class action unmanageable.

**COUNT I**
**VIOLATION OF THE FEDERAL LABOR STANDARDS ACT**
**29 U.S.C. §207**
**(all hourly-paid employees nationwide)**

53.     The preceding allegations are incorporated by reference as if fully stated herein.

54.     As an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(a), Chipotle is subject to the requirements of the FLSA.

55.     All of Chipotle's hourly-paid employees are considered "non-exempt" from the maximum hour requirements of the FLSA, 29 U.S.C. § 213(a)(1).

56.     The FLSA requires that minimum compensation of $7.25 per hour be paid to non-exempt employees. 29 U.S.C. § 207.

57.     The FLSA requires that overtime compensation be paid to non-exempt employees who work more than forty (40) hours in one week. 29 U.S.C. § 207.

58.     The FLSA requires employers to keep accurate records of the wages, hours, and other terms of employment for each of their employees, including but not limited to the employee's total hours worked each day and each week; the employee's total daily or weekly earnings; the employee's total daily or weekly regular wages; and the employee's total daily or weekly overtime wages.

59.     By requiring hourly employees to work off the clock, Chipotle willfully, knowingly and/or recklessly violated the minimum and overtime compensation provisions of the FLSA.

60.     By failing to keep accurate records of the time its employees worked, Chipotle willfully, knowingly and/or recklessly violated the FLSA's recordkeeping provisions.

61.     As a result of Chipotle's unlawful conduct, Plaintiffs and all other similarly situated persons have suffered injury, in that they have been deprived of overtime and regular compensation.

62.     Plaintiffs and all other similar-situated persons are entitled to damages in an amount to be determined at trial.

**COUNT II**
**VIOLATION OF THE MINNESOTA FAIR LABOR STANDARDS ACT**
**MINN STAT. § 177.24 ET SEQ.**
**(Plaintiffs and all other hourly-paid employees who are**
**members of the Minnesota Rule 23 class)**

63.     The preceding allegations are incorporated by reference as if fully stated herein.

64.     Plaintiffs and members of the Minnesota Rule 23 class are current or former hourly-paid employees of Chipotle within the meaning of Minn Stat. §§ 177.23 and 177.24.

65.     Chipotle was or is the employer of Plaintiffs and members of the Minnesota Rule 23 class within the meaning of Minn. Stat §§ 177.23, 177.24, and 181.171(4).

66.     At all relevant times, and on information and belief, Chipotle had an annual gross sales volume in excess of $625,000.00.

67.     At all relevant times, and on information and belief, Chipotle constitutes a "large employer" within the meaning of Minn. Stat. § 177.24.

68.     Pursuant to Minn. Stat. § 177.24, Plaintiffs and members of the Minnesota Rule 23 class were entitled to be compensated at the federal minimum wage rate of $7.25 per hour.

69.     Chipotle, by its policies and practices, refused and failed to pay the requisite minimum wage to Plaintiffs and other members of the Minnesota Rule 23 class, as mandated by Minn. Stat. § 177.24(b).

70.     By failing to compensate Plaintiffs and members of the Minnesota Rule 23 class, Chipotle violated, and continues to violate, the rights of Plaintiffs and members of the Minnesota Rule 23 class.

71.     Chipotle also violated the MFLSA by failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and members of the Minnesota Rule 23 class, thereby failing to make, keep, and preserve records with respect to each of

its employees sufficient to determine their wages, hours, and other conditions and practices of employment.

72.     Chipotle's actions in violating the above statutory provisions were willful and were not the result of mistake or inadvertence.

73.     Plaintiffs, on behalf of themselves and all other members of the Minnesota Rule 23 class, seek damages in the amount of their respective unpaid wages, liquidated damages as allowed under the MFLSA, interest, and other legal and equitable relief, in an amount to be determined at trial, but which in the aggregate exceed $5 million.

## COUNT III
## VIOLATION OF THE MINNESOTA FAIR LABOR STANDARDS ACT
## MINN STAT. § 177.25 ET SEQ.
### (Plaintiffs and all other hourly-paid employees who are
### members of the Minnesota Rule 23 class)

74.     The preceding allegations are incorporated by reference as if fully stated herein.

75.     Minn. Stat. § 177.25 requires employers to pay employees one and one-half times the regular rate at which they are or were employed for all hours worked over forty-eight (48) per work week. Employers who violate §177.25 are liable to the affected employees in the amount of unpaid wages, costs, attorneys fees, and other appropriate relief.

76.     Chipotle routinely required Plaintiffs and other members of the Minnesota Rule 23 class to work in excess of forty eight (48) hours per week.

77.     By requiring Plaintiffs and other members of the Minnesota Rule 23 class to work off the clock, Chipotle routinely failed to record and compensate Plaintiffs and

other members of the Minnesota Rule 23 class for hours they worked in excess of forty eight (48) hours per week.

78.     As a result, Chipotle willfully failed and refused to pay Plaintiffs and other members of the Minnesota Rule 23 class their overtime wages for all hours they worked in excess of forty eight (48) hours per week.

79.     Chipotle's actions, policies, and/or practices as described above violate the MFLSA's overtime requirements, in that Chipotle regularly and repeatedly failed to compensate Plaintiffs and other members of the Minnesota Rule 23 class at the requisite overtime rate.

80.     Chipotle also violated the MFLSA by failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and members of the Minnesota Rule 23 class, thereby failing to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment.

81.     As a direct and proximate result of Chipotle's conduct, Plaintiffs and members of the Minnesota Rule 23 class have suffered, and continue to suffer, loss of income and other economic injury.

82.     Plaintiffs and members of the Minnesota Rule 23 class are entitled to damages, attorneys fees, costs, and other relief, in an amount to be determined at trial, but which in the aggregate exceed $5 million.

**COUNT IV**
**FAILURE TO MAINTAIN RECORDS**
**MINN. STAT. § 177.30**
**(Plaintiffs and all other hourly-paid employees who are**
**members of the Minnesota Rule 23 class)**

83.     The preceding allegations are incorporated by reference as if fully stated herein.

84.     Plaintiffs and members of the Minnesota Rule 23 class are current or former hourly-paid employees of Chipotle within the meaning of Minn Stat. §§ 177.23 and 177.24.

85.     Chipotle was or is the employer of Plaintiffs and members of the Minnesota Rule 23 class within the meaning of Minn. Stat §§ 177.23, 177.24, and 181.171(4).

86.     Pursuant to Minn. Stat. § 177.30, employers are required to make and keep accurate records as delineated herein, including but not limited to: (a) the name, address, and occupation of each employee; (b) the rate of pay, the amount paid each pay period to each employee; and (c) the hours worked each day and each work week by the employee.

87.     Chipotle unlawfully failed to maintain records as required by Minn. Stat. § 177.30.

88.     Chipotle's actions in violating the above statutory provisions were willful and were not the result of mistake or inadvertence.

89.     As a direct and proximate result of Chipotle's conduct, Plaintiffs and members of the Minnesota Rule 23 class have suffered injury, and are entitled to damages, attorneys fees, costs, and other relief, in an amount to be determined at trial, but which in the aggregate exceed $5 million.

WHEREFORE, Plaintiffs request the following relief:

(a)     certification of this case as a collective action under the FLSA;

(b)     certification of a Minnesota class under Rule 23;

(c)     an order preliminarily and permanently enjoining Chipotle from engaging the above-described conduct;

(d)     an award of the value of Plaintiff's unpaid wages, and the unpaid wages of all other current and former hourly-paid Chipotle employees included in this action;

(e)     an award of reasonable attorneys fees, expenses, expert fees and all other costs incurred in this action;

(f)     an award of pre- and post-judgment interest; and

(g)     any and all other relief that the Court deems proper.

## JURY DEMAND

Plaintiffs request a jury trial on all issues so triable.


Dated: July 2, 2013                            _/s Kent M. Williams_____
                                               Kent M. Williams
                                               Minn. Bar No. 0222884
                                               Attorney for Plaintiffs
                                               WILLIAMS LAW FIRM
                                               1632 Homestead Trail
                                               Long Lake, MN 55356
                                               Telephone: (612) 940-4452
                                               Fax: (763) 473-0314
                                               williamslawmn@aol.com

                                               Colleen T. Calandra, Esq.
                                               Colorado Bar No. 041788
                                               Attorney for Plaintiffs
                                               BACHUS & SCHANKER, LLC
                                               1899 Wynkoop Street, Suite 700
                                               Denver, CO 80202
                                               Tel: (303) 893-9800
                                               Fax:  (303) 893-9900
                                               colleen.calandra@coloradolaw.net

Adam S. Levy, Esq.
Penn. Bar No. 066866
Attorney for Plaintiffs
LAW OFFICE OF ADAM S. LEVY, LLC
P.O. Box 88
Oreland, PA 19075
Tel:  (267) 994-6952
Fax:  (215) 233-2992
adamslevy@comcast.net