WILLIAMS LAW FIRM
1632 Homestead Trail
Long Lake, MN  55356
(612) 940-4452


January 31, 2014

**VIA ECF**

The Honorable Steven E. Rau
United States Magistrate Judge
United States Courthouse
316 North Robert Street, Room 334
St. Paul, MN 55101

>	Re:	*Marcus Harris, et al. v. Chipotle Mexican Grill, Inc.*
>		Case No. 13-cv-1719 (SRN/SER)

Dear Judge Rau:

At the hearing on Plaintiffs' Motion for Conditional Certification, the Court requested letter briefs regarding Chipotle's assertion that Plaintiffs' counsel should be disqualified due to "conflicts" that supposedly "permeate the proposed class." Rule 1.7 of the Minnesota Rules of Professional Conduct provides that a "concurrent conflict" exists if the representation of one client will be directly adverse to another client, or there is a significant risk that the lawyer's representation of one client will be materially limited by the lawyer's obligations to another client. Even if a conflict exists, however, the lawyer may represent both clients if he reasonably believes he will be able to provide competent and diligent representation to both clients; the representation is not prohibited by law; the representation does not involve the assertion of one client's claim against another client; and both clients give written, informed consent.  Minn. R. Prof. Conduct 1.7(b).

Chipotle asserts that Plaintiffs' counsel should be disqualified because "manager" employees who opt into this case ["manager opt-ins"] may undermine the claims of other opt-ins if they deny engaging in wrongful conduct to avoid unspecified "consequences." With this argument, Chipotle ignores adverse precedent, misstates the holdings from inapposite cases, and assumes conflicts where none exist.  Such abusive tactics should be rejected, and Chipotle's bid to disqualify Plaintiffs' counsel should be denied.

>	1.	<u>Chipotle does not have standing to seek disqualification</u>.

Chipotle lacks standing to seek the disqualification of Plaintiffs' chosen counsel. "'As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless *the former client* moves for disqualification.'"  *Andrews Farm v. Calcot, Ltd.,* 2010 WL 4010146, at *2 (E.D. Cal. Oct. 13, 2010) (emphasis added) (quoting *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88 (5th Cir. 1976); *Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998)); *accord In re Potash Litig*., 1993 WL 543013, at *9-11 (D. Minn. Dec. 8, 1993) (following the *In re Yarn* rule); *Beiter Co., v. Blomquist*, 132 F.R.D. 220, 224 (D. Minn. 1990) (citing *In re Yarn*)). *See also Colyer v.*

The Honorable Steven E. Rau
January 31, 2014
Page 2 of 5

*Smith*, 50 F.Supp.2d 966, 969 (C.D. Cal. 1999) (citing *In re Yarn* as the "majority view"). As the *Andrews* court explained, "[s]tanding requires that the party have personally suffered from an 'injury in fact' which is causally related to the conduct at issue. The court must consider whether *defendants* have demonstrated an injury in fact, that they will endure, as opposed to an injury to *plaintiff*." *Andrews*, 2010 WL 4010146, at *3 (citations omitted; emphasis in original); *see also O'Connor v. Jones*, 946 F.2d 1395, 1400-01 (8th Cir. 1991) (holding that a motion to disqualify counsel requires the moving party to demonstrate that it suffered "injury in fact"). Because Chipotle is not a current or former client, it lacks standing to seek the disqualification of Plaintiffs' chosen counsel.[1]

    2.    <u>There are no conflicts among potential class members</u>.

Chipotle speculates that intra-class conflicts may arise if manager opt-ins deny requiring other employees to work off the clock, to avoid "consequences." Although Chipotle does not specify these "consequences," it presumably refers to the prospect of individual liability under the Federal Labor Standards Act ("FLSA").

Under the FLSA, an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (2006) ("Definitions"). The Supreme Court has described "[t]he test of employment[ ]" as "economic reality rather than technical concepts[.]" *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961); *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005); *Boucher v. Shaw,* 572 F.3d 1087, 1091 (9th Cir. 2009); *Maseck v. TAK Communications*, 2011 WL 1190579 at *5 (D. Minn. March 28, 2011)*; Saunders v. ACE Mortgage Funding, Inc.*, 2007 WL 4165294 at *4 (D. Minn. Nov. 16, 2007). Because just about any supervisor, officer, or director may "act in the interest of the employer," an individual manager or

---

[1]The *In re Yarn* rule has been cited in no fewer than 43 federal court opinions and 14 state court opinions. Yet, at the hearing on Plaintiffs' motion for conditional certification, defense counsel did not even mention *In re Yarn*, *In re Potash*, *Beiter*, or any other of the plethora of cases that require a party to demonstrate standing when seeking to disqualify another party's counsel. This raises the serious question of whether Chipotle and its counsel complied with their duty of candor under Rule 3.3 of the Minnesota Rules of Professional Conduct. It also raises a significant question as to whether Chipotle and its counsel are engaged in the sort of abusive tactic courts warn about with respect to disqualification motions. *See, e.g., Richardson-Merrell, Inc., v. Koller*, 472 U.S. 424, 441 (1985) (Brennan, J., concurring) ("the tactical use of attorney-misconduct disqualification motions is a deeply disturbing phenomenon in modern civil litigation. When a trial court mistakenly disqualifies a party's counsel as the result of an abusive disqualification motion, the court in essence permits the party's opponent to dictate his choice of counsel"); *Macheca Transp. Co. v. Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (holding that "disqualification motions should be subjected to particularly strict scrutiny," and that disqualification is an "extreme measure" which "should be imposed only when absolutely necessary" due to "the potential for abuse by opposing counsel") (citations and internal quotations omitted).

supervisor will be held liable only where the evidence shows that they exercised economic and operational control over the employment relationship. *See Boucher,* 572 F.3d at 1091; *see also Saunders*, 2007 WL 4165294 at *4 (the "economic realities test" takes into account "the real economic relationship between the employer who uses and benefits from services of workers and the party that hires or assigns the workers to that employer") (citation omitted).

In applying the "economic realities test," courts consider factors such as the person's ownership interest, degree of control over the corporation's financial affairs and compensation practices, and role in causing the corporation to compensate or not compensate employees in compliance with the FLSA. *Saunders*, 2007 WL 4165294 at *4 (citing *Baystate Alternative Staffing, Inc. v. Herman,* 163 F.3d 668, 677-78 (1st Cir.1998)). No single economic factor is dispositive. *Id.* (citing *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir.1991)). Since economic reality is determined based upon all of the circumstances, any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition. *Id.* (citing *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730 (1947)); *see McDonald v. JP Marketing Associates*, 2007 WL 1114159 at *5 (D. Minn. April 13, 2007) (holding that a person who did not directly hire and fire employees, supervise employees, determine employee compensation, or maintain employment records, was not an "employer" under the FLSA); *Baird v. Kessler,* 172 F. Supp.2d 1305, 1311 (E.D. Cal. 2001) (holding that one who did not "control the purse strings" was not an "employer" under the FLSA, even though he set work schedules, assisted in drafting employee handbooks, recommended or reviewed the termination of employees, and maintained employment records).

There are no potential conflicts between potential manager opt-ins and other potential members of this proposed collective action. First, Chipotle has made no showing that its managers are "employers" within the meaning of the FLSA. Hourly-paid Kitchen Managers and Service Managers have no ownership interest in Chipotle, no control over the company's financial affairs or compensation practices, and no power to direct the company's compliance with the FLSA. They do not set schedules, determine employee compensation, or maintain employment records. Their duties are similar to those of the crew members they supervise: preparing food and cleaning. And, they were subjected to the same off-the-clock policies as the crew members they supervised. *See generally* Supplemental Declaration of Julius Caldwell [ECF No. 63]. Moreover, while salaried Apprentices and General Managers may have relatively more managerial control, they also have no ownership interest in Chipotle, no control over the company's financial affairs or compensation practices, and no power to direct the company's compliance with the FLSA. Nor do they set compensation, maintain employment records, or direct company compliance with the FLSA. And, to the extent any manager opt-ins directed employees to work off the clock, they did so in compliance with Chipotle's centrally-set labor budgets and the "policy to violate the policy" evidenced by Plaintiffs.

Second, even if manager opt-ins potentially were subject to individual FLSA liability, there are still no "conflicts" because Plaintiffs have not sued anyone in their

The Honorable Steven E. Rau
January 31, 2014
Page 4 of 5

individual capacity, and have no plans to do so. If this is not already obvious, the notice can be amended to state this explicitly.[2] Thus, the only way manager opt-ins will be subjected to individual liability in this case is if Chipotle sues its own managers for contribution – which would likely fail, based on the lack of any showing that Chipotle managers are "employers" under the FSLA.[3] Moreover, if Chipotle sues its own managers, the interests of manager opt-ins will be *aligned* with those of all other opt-ins, since they will all seek to prove that managers acted in accordance with Chipotle's centralized budgets and policies, under threat of discipline (including termination).

    3.    <u>Disqualification is not warranted</u>.

Even if there were a possibility of intra-class conflicts, this would not be sufficient grounds for disqualifying Plaintiffs' chosen counsel. Chipotle must demonstrate an ethical breach that "so infects the litigation in which the disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims," or that is "so 'manifest and glaring' or 'open and obvious' that it 'confront[s] the court with a plain duty to act.'" *See Andrews*, 2010 WL 4010146 at **2-4 (quoting, *inter alia*, *In re Yarn*, 530 F.2d at 88-89). *See also Central Milk Producers Co-op, v. Sentry Food Stores, Inc.*, 573 F.2d 988, 993 (8th Cir. 1978) (affirming denial of defendant's motion to disqualify where, among other things, there was "no allegation of actual impropriety"); *Local 894 Laborers' Int'l Union of N.A. v. American Roadway Logistics, Inc.*, 2012 WL 3067377, at *1, *2 (N.D. Ohio July 27, 2012) ("A court should only disqualify counsel when there is a reasonable possibility that some specifically identifiable impropriety actually occurred.") (quoting *Moses v. Sterling Commerce (Am.), Inc.*, 122 Fed. Appx. 177, 183-84 (6th Cir. 2005)); *Shaffer v. Fresh Farm, Inc.,* 966 F.2d 142, 145-46 (4th Cir. 1992) (vacating decision to disqualify plaintiffs' counsel that rested on speculation, hypothesis, and a mere "likelihood" that counsel might engage in unethical behavior). Chipotle does not demonstrate any present or imminent ethical breach at all, but merely speculates that a conflict *may* arise depending upon who wishes to opt into this case, what some opt-ins *may* wish to allege or deny with respect to other

---

[2]Since this is an opt-in action, the decision not to sue individual managers does not bind anyone who wishes to do otherwise; they are free to pursue such claims in their own individual lawsuit. If necessary, the notice and opt-in form can be amended to make this fact, and the fact that no claims will be asserted by one opt-in against another, abundantly clear. This will more than satisfy Rule 1.7(b)'s "informed consent" requirement.

[3]It is doubtful that Chipotle could create a "conflict" by suing its own managers, even if it attempted to do so. *See Copantitla v. Fiskardio Estiatorio, Inc.*, 788 F. Supp. 2d 253, 281-82 (S.D.N.Y. 2011) (holding that there was no conflict between "properly tipped" and "improperly tipped" class members, because the defendant's counterclaim against "improperly tipped" class members failed as a matter of law); *Arrington v. National Broadcasting Co., Inc.*, 531 F. Supp. 498, 505-06 (D.D.C. 1982) (finding no conflict where the defendant was not allowed to inject third-party actions into the case).

The Honorable Steven E. Rau
January 31, 2014
Page 5 of 5

opt-ins, and what the response by the other opt-ins *may* be. Chipotle's "what ifs" and "maybes" are insufficient grounds for disqualifying Plaintiffs' counsel.

Significantly, Chipotle has cited no case in which counsel were disqualified from representing an opt-in class due to an intra-class conflict.[4] Plaintiffs have uncovered no such case, either. In the absence of any such authority, Plaintiffs' counsel should be allowed to ameliorate whatever potential conflicts may be of concern to the Court by amending the class definition, notice, and/or consent to join form, so that opt-ins are fully informed when they consent to be joined in this case, consistent with Rule 1.7(b).

        Respectfully submitted,

        WILLIAMS LAW FIRM

        s/*Kent M. Williams*

        Kent M. Williams, Esq.

---

[4]To create an appearance of supporting precedent, Chipotle and its counsel cite (and mischaracterize) the holdings of three inapposite cases. The first, *Ortiz v. Fibreboard Corp*, 527 U.S. 815 (1999), a Rule 23 case in which the plaintiffs sought to certify a mandatory "limited fund" settlement class, is of little significance here, where Plaintiffs have moved for conditional certification of a permissive opt-in class to which employees must affirmatively consent to be bound. Moreover, in *Ortiz* there was no contention, much less a determination, that class counsel should be disqualified. The second, *Lou v. Ma Laboratories, Inc.*, WL 2014 68605 (N.D. Cal. Jan. 8, 2014), another Rule 23 case, is unavailing because counsel represented two classes in overlapping class litigation **in two separate proceedings,** a point which Chipotle's counsel attempted to obscure at the hearing. *Compare* Defendant's Exhibits Presented at Oral Argument on Plaintiff's Conditional Certification Motion, Exhibit E at 2 ("an attorney who represents **either** an individual or another class against the same defendant **may not serve as class counsel in FLSA case**") (emphasis in original), *with Lou v. Ma Laboratories*, 2014 WL 68605 at *2 ("counsel cannot simultaneously represent a class and prosecute either individual or class claims against the same defendants **in a different proceeding**") (emphasis added). In this case, Bachus & Schanker, LLC represents opt-in Leah Turner against Chipotle in an unrelated individual worker's compensation action in Colorado state court; none of the attorneys in this action are involved in that suit, or have any knowledge of that suit, other than its existence. And, in the third case, *White v. Osmose*, 204 F. Supp. 2d 1309 (M.D. Ala. 2002), an FLSA collective action, the Court merely held that a foreman with dissimilar job duties was not "similarly situated" with crewmembers. *White*, 204 F. Supp.2d at 1314. Significantly, the Court went on to certify a class of foremen represented by the same counsel who unsuccessfully sought to include crewmembers in the class. *Id*. at 1315.