## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Marcus Harris, Julius Caldwell, Demarkus Hobbs, and Dana Evenson, on behalf of themselves and all others similarly situated, | **Case No. 13-cv-1719 (SRN/SER)** |
| Plaintiffs, | |
| v. | **REPORT & RECOMMENDATION** |
| Chipotle Mexican Grill, Inc., | |
| Defendant. | |

---

Adam S. Levy, Esq., Law Office of Adam S. Levy LLC, P.O. Box 88, Oreland, Pennsylvania 19075, for Plaintiffs.

Karen O'Connor and Kyle Bachus, Esqs., Bachus & Schanker LLC, 1899 Wynkoop Street, Suite 700, Denver, Colorado 80202, for Plaintiffs.

Kent M. Williams, Esq., Williams Law Firm, 1632 Homestead Trail, Long Lake, Minnesota 55356, for Plaintiffs.

Andrew A. Smith and John K. Shunk, Esqs., Messner Reeves LLP, 1430 Wynkoop Street, Suite 300, Denver, Colorado 80202, for Defendant.

Joel A. Mintzer, Esq., Robins Kaplan Miller & Ciresi LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis, Minnesota 55402, for Defendant.

Richard Simmons, Esq., Sheppard Mullin Richter & Hampton LLP, 333 South Hope Street, Forty-Third Floor, Los Angeles, California 90071, for Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Plaintiffs Marcus Harris ("Harris"), Julius Caldwell ("Caldwell"), Demarkus Hobbs ("Hobbs"), and Dana Evenson's ("Evenson") (collectively, "Plaintiffs") Motion for Conditional Collective Action Certification and for Judicial Notice to Class, "Motion for Conditional Certification") [Doc. No. 33]. This

matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), (B), and (C), and District of Minnesota Local Rule 72.1.   (Order of Reference) [Doc. No. 74].  This Court heard oral argument on January 24, 2014.  (Minute Entry Dated Jan. 24, 2014) [Doc. No. 78].  For the reasons stated below, this Court recommends that the Motion for Conditional Certification be granted in part and denied in part.

## I.     BACKGROUND

### A.     Factual Background

Plaintiffs, on behalf of themselves and others similarly situated, brought this lawsuit against Defendant Chipotle Mexican Grill, Inc. ("Chipotle") for violations of the Fair Labor Standards Act ("FLSA") and the Minnesota Fair Labor Standards Act.  (Consolidated Am. Class Action Compl., "Am. Compl.") [Doc. No. 31 ¶ 1]; *see also* 29 U.S.C. §§ 201–19; Minn. Stat. §§ 177.21–.35.  Plaintiffs allege that Chipotle failed to pay them for all the hours they worked as part of a corporate policy.  (Am. Compl. ¶ 28).

Chipotle owns fast food Mexican restaurants throughout the United States, including Minnesota.  (*Id.* ¶ 22).  Chipotle employs 30,000 hourly employees across the country.  (*Id.*).  Plaintiffs are or were hourly employees of Chipotle who reside in Minnesota.  (*Id.* ¶¶ 2, 18–21); (Decl. of Marcus Harris, "Harris Decl.") [Doc. No. 37 at ¶¶ 3–4]; (Decl. of Julius Caldwell, "Caldwell Decl.") [Doc. No. 38 at ¶¶ 3–4]; (Decl. of Demarkus Hobbs, "Hobbs Decl.") [Doc. No. 39 at ¶¶ 3–4]; (Decl. of Dana Evenson, "Evenson Decl.") [Doc. No. 40 at ¶¶ 3–4].  Plaintiffs allege that Chipotle has a policy to not pay its hourly employees for all time worked, and to encourage general managers to require off-the-clock work.  (Am. Compl. ¶ 25); (Caldwell Decl. ¶ 10); (Evenson Decl. ¶ 10).  Specifically, Plaintiffs allege that Chipotle's payroll budgets are set so strictly that they can only be met by employees working off the clock.  (Am. Compl. ¶ 26).

Because general managers are awarded if they meet their payroll budgets, general managers understaff each location. (*Id.* ¶ 27). Through this alleged policy, Chipotle allows, encourages, and directs its hourly employees to perform work without being compensated. (*Id.* ¶ 28). Chipotle achieves this by requiring employees to punch out before they are finished working, automatically punching employees out, conducting required meetings and trainings and prohibiting hourly employees from punching in for them, and failing to keep appropriate records. (*Id.* ¶¶ 29–31). Plaintiffs allege that these actions take place pursuant to Chipotle's policies and directives from its corporate offices, and that Chipotle is aware that its hourly employees work off the clock. (*Id.* ¶¶ 32–33). As a result, Plaintiffs allege that Chipotle's policies and conduct have denied hourly employees, such as Plaintiffs and similarly situated hourly employees, overtime and regular wages. (*Id.* ¶ 34).

**B.      Procedural Background**

Harris and Caldwell initiated this case on July 2, 2013. (Class Action Compl.) [Doc. No. 1]. This Court held a Pretrial Scheduling Conference on October 8, 2013. (Text Only Entry Dated Sept. 9, 2013) [Doc. No. 15].[1] At the Pretrial Scheduling Conference, this Court directed the parties to try to reach an agreement about a limited Rule 30(b)(6) deposition regarding Chipotle's timekeeping system. (Decl. of Joel Mintzer in Supp. of Chipotle's Opp'n to Pls.' Mot. for Conditional Certification, "Mintzer Decl.") [Doc. No. 52 ¶ 9]; *see also* Fed. R. Civ. P. 30(b)(6). The Honorable Susan Richard Nelson consolidated another related case into the instant case on October 16, 2013. (Order for Consolidation Pursuant to F.R.C.P. 42(a)) [Doc. No. 25]. Pursuant to Judge Nelson's Order, Plaintiffs filed their Amended Complaint on October 22, 2013, adding Hobbs and Evenson as named Plaintiffs. (Am. Compl. ¶ 1).

---

[1]      Because this is a Text Only Entry, there is no actual document associated with this entry.

Plaintiffs filed their Motion for Conditional Certification on October 23, 2013.  (Mot. for Conditional Certification).   In support, Plaintiffs filed four declarations, one from each of the named Plaintiffs.  (Harris Decl.); (Caldwell Decl.); (Hobbs Decl.); (Evenson Decl.).  Plaintiffs' counsel also filed an affidavit attaching a proposed notice, a proposed "consent to join" form, and three complaints filed with the Minnesota Department of Labor and Industry ("Minnesota DOLI") by Chipotle employees who claimed they had to work off the clock or were not paid for all hours worked.   *See* (Aff. of Kent M. Williams, "Williams Aff.") [Doc. No. 36 ¶¶ 2–4].  Finally, Plaintiffs filed a notice of consent, stating that Plaintiffs and three other individuals consented to join the action.  (Pls.' Notice of Filing Consent to Join Forms Pursuant to the FLSA, 29 U.S.C. § 216(b), "Pls.' Notice of Consent") [Doc. No. 32].

Chipotle responded on December 6, 2013.   (Chipotle's Opp'n to Pls.' Mot. for Conditional Certification, "Chipotle's Opp'n") [Doc. No. 49].[2]  In addition to its memorandum, Chipotle filed several declarations and accompanying exhibits.  (Decl. of David Gottlieb in Supp. of Chipotle's Opp'n to Pls.' Mot. for Conditional Certification, "Gottlieb Decl.") [Doc. No. 50]; (Decl. of Joel Chrisman in Supp. of Chipotle's Opp'n to Pls.' Mot. for Conditional Certification, "Chrisman Decl.") [Doc. No. 51]; (Mintzer Decl.).  Chipotle's supporting exhibits included, *inter alia*, declarations from the following current Chipotle employees: Jayson Beebe ("Beebe"), Alan Hawkins ("Hawkins"), Jose Hernandez ("Hernandez"), and Angelina Martinez-Herrera ("Martinez-Herrera").  *See* (Mintzer Decl. ¶¶ 4–6).[3]

---

[2]     The parties stipulated to permitting Chipotle additional time to respond.  (Order for Extension of Briefing Schedule) [Doc. No. 44]; (Order for Second Extension of Briefing Schedule) [Doc. No. 48].

[3]     Chipotle also submitted declarations from Marcelo Borja-Granizo, Miguel Ceron, and Agustina Reyes-Jimenez.  (Mintzer Decl. ¶¶ 3–4, 8).

About a week after Chipotle filed its response to Plaintiffs' Motion for Conditional Certification, Plaintiffs noticed depositions for some of the Chipotle employees who had submitted declarations supporting Chipotle's opposition to the Motion for Conditional Certification—Beebe, Hawkins, Hernandez, and Martinez-Herrera. (Notice of Deps.) [Doc. No. 53]. Chipotle moved for a protective order. (Chipotle's Mot. for Protective Order) [Doc. No. 54]. Neither party requested expedited handling of the Motion for Protective Order.

Before this Court heard or issued its order on the Motion for a Protective Order, Plaintiffs filed their reply in support of the Motion for Conditional Certification on December 30, 2013, as scheduled. (Reply Mem. in Supp. of Mot. for Conditional Certification, "Pls.' Reply") [Doc. No. 62]. With their Reply, Plaintiffs filed several additional declarations. Two of these declarations supplemented Caldwell and Harris's previous declarations. *See* (Suppl. Decl. of Julius Caldwell, "Suppl. Caldwell Decl.") [Doc. No. 63]; (Suppl. Decl. of Marcus Harris, "Suppl. Harris Decl.") [Doc. No. 64]. Two declarations were from employees who had not previously submitted declarations. (Decl. of Leah Turner, "Turner Decl.") [Doc. No. 65]; (Decl. of Ryan Cox, "Cox Decl.") [Doc. No. 66]. Plaintiffs' counsel also submitted a declaration, attaching several publically available documents, including complaints against Chipotle for nonpayment of overtime and off-the-clock work, filings in other cases against Chipotle, Internet postings about working off the clock, and a description of Chipotle's Aloha timekeeping system.[4] *See* (Decl. of Kent M. Williams, "Williams Decl.") [Doc. No. 67 at ¶¶ 6–13].

Chipotle requested permission to file a sur-reply based on the new evidence Plaintiffs filed with their Reply. (Letter to District Judge Dated Jan. 3, 2014, "Chipotle's Jan. 3, 2014

---

[4] The full title of the Aloha timekeeping system is the NCR Aloha Restaurant POS Software. (Chrisman Decl. ¶ 9). Although it has other functions, this Court refers to it as the "Aloha timekeeping system" for the sake of clarity.

Letter") [Doc. No. 70].  Plaintiffs opposed the request, and Judge Nelson denied the request.  *See* (Letter to District Judge Dated Jan. 5, 2014) [Doc. No. 71];[5] (Order on Def.'s Request for Permission to File a Sur-Reply) [Doc. No. 72].  Judge Nelson then referred the Motion for Conditional Certification to the undersigned.  (Order of Reference).

This Court heard oral argument on the Motion for Protective Order on January 6, 2014.  (Minute Entry Dated Jan. 6, 2014) [Doc. No. 73].  This Court denied the Motion for Protective Order.  (Order & Notice of Hr'g, "Jan. 2014 Order") [Doc. No. 75].  This Court permitted Plaintiffs to take the depositions of Beebe, Hawkins, and Hernandez, and provided deadlines if Plaintiffs determined supplemental briefing was needed as a result of the depositions.[6]  (Jan. 2014 Order at 4).

Prior to the hearing on the Motion for Conditional Certification, Plaintiffs did not file any supplemental briefing regarding the depositions.  Chipotle, however, filed a letter including a recent decision it believed to be relevant to the determination of the Motion for Conditional Certification.  (Letter to Mag. Judge Dated Jan. 17, 2014) [Doc. No. 76] (attaching Omnibus Order Re Certification & Related Mots., *Lou v. Ma Labs., Inc.*, No. C 12-05409 WHA (N.D. Cal. Jan. 8, 2014), the "*Lou* Order").

This Court held a hearing on the Motion for Conditional Certification on January 24, 2014.  (Minute Entry Dated Jan. 24, 2014).  During the hearing, this Court learned that the Plaintiffs took Beebe, Hawkins, and Hernandez's depositions, but decided not to submit supplemental briefing.  (Tr. of Mot. Hr'g Dated Jan. 24, 2014, "Tr.") [Doc. No. 85 at 6:7–7:13].

---

[5]    The letter itself is dated January 6, 2014, but it was filed on January 5, 2014.
[6]    The deposition of Martinez-Herrera was not ordered because the parties appeared to agree that the subpoena was defective.  *See* (Jan. 2014 Order at 3 n.1).

Chipotle provided excerpts of the deposition transcripts of Hernandez, Beebe, and Hawkins to Plaintiffs and this Court during the hearing, and Plaintiffs objected.  (Tr. at 22:16–23:9).[7]

Also during the hearing, this Court asked the parties to submit supplemental briefing on the issue raised in the *Lou* Order—potential disqualification of Plaintiffs' counsel.  (Tr. at 50:10–25).  The parties submitted their letters a week later.  (Pls.' Letter to Mag. Judge Dated Jan. 31, 2014, "Pls.' Jan. 31, 2014 Letter") [Doc. No. 80]; (Chipotle's Letter to Mag. Judge Dated Jan. 31, 2014, "Chipotle's Jan. 31, 2014 Letter") [Doc. No. 81].  Chipotle's letter included eleven exhibits; Plaintiffs' letter did not include exhibits.

## II.   DISCUSSION

### A.   Conditional Certification

#### 1.   Legal Standard

Under the FLSA, employees may bring an action against an employer on behalf themselves and other similarly situated employees.  29 U.S.C. § 216(b).  An employee must give written consent to become a party, and the consent must be filed with the court, which is called opting in.  *Id.*; *see Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 939 (D. Minn. 2009) (PJS/JJK).  "Courts have discretion, in 'appropriate cases' to facilitate the opt-in process by conditionally certifying a class and authorizing court-supervised notice to potential opt-in

---

[7]      Chipotle also provided several demonstrative exhibits, including a map showing Plaintiffs' so-called "paltry evidence;" a receipt from an employee clocking out; a chart purporting to explain why Plaintiffs are not similarly situated to each other or other employees; a chart explaining the similarities between this case and the *Saleen* case; and a list of conflicts between Plaintiffs, as well as with Plaintiffs' counsel serving as class counsel.  Chipotle also submitted the complaint filed in *Turner v. Chipotle Mexican Grill of Colorado, LLC*, Case No. 13-cv-00794-WYD-CBS (D. Colo.).

Because Chipotle did not move for any of these exhibits to be admitted into the record, the Court does not provide any citations to these documents unless they are otherwise available publically or in the record due to a previous filing.

plaintiffs." *Saleen*, 649 F. Supp. 2d at 939 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

Whether a class should be certified under the FLSA is a two-step process. *Burch v. Qwest Communc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (MJD/AJB). At the first step, plaintiffs must show "a colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan." *Id.* (internal quotations and citations omitted). "The court does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties at this initial stage." *Id.* (internal quotations and citations omitted). Any averments made in support of a Motion for Conditional Certification must be based on personal knowledge. *West v. Border Foods, Inc.*, Civil No. 05-2525 (DWF/RLE), 2006 WL 1892527, at *6 (D. Minn. June 12, 2006). But "[d]etermination of class status at the notice stage is granted liberally because the court has minimal evidence for analyzing the class." *Jennings v. Cellco P'ship*, Civ. No. 12-293 (SRN/TNL), 2012 WL 2568146, at *3 (D. Minn. July 2, 2012) (citation omitted).

The second step does not take place until discovery is complete. *Id.* (citations omitted). At that point, the court considers several factors, which include "(1) the extent and consequences of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant that appear to be individual to each plaintiff; and (3) other fairness and procedural considerations." *Id.* (citations omitted).

Specifically, Plaintiffs seek conditional certification of the following collective action (the "Class"): "All current and former hourly-paid restaurant employees of Chipotle Mexican Grill, Inc. who, on or after October 23, 2010, were automatically punched off the clock and continued to work, or who otherwise worked 'off the clock,' resulting in non-payment of regular

wages or overtime wages."  (Mem. in Supp. of Pls.' Mot. for Conditional Certification, "Pls.' Mem. in Supp.") [Doc. No. 35 at 1–2].  Additionally, Plaintiffs seek this Court's approval for notice to be sent to potential class members through a third-party administrator using various methods, and request that this Court order Chipotle to provide Plaintiffs with a list of potential opt-in plaintiffs and various facts about each class member, including, *inter alia*, his or her address, phone number, email address, job title, and location.  (*Id.* at 2–4).

### 2.    Evidence

As an initial matter, several pieces of evidence that were submitted to this Court were challenged by the opposing party.  Therefore, this Court briefly describes the status of discovery at the time of Plaintiffs' Motion for Conditional Certification, the evidence it received, and whether the submitted evidence should be considered at this stage.[8]

At the Pretrial Scheduling Conference, this Court encouraged the parties to agree to a limited Rule 30(b)(6) deposition regarding Chipotle's Aloha timekeeping system; that deposition ultimately did not take place.  *See* (Mintzer Decl. ¶ 9); (Tr. at 27:15–18); *see also* Fed. R. Civ. P. 30(b)(6).  The parties submitted several other types of evidence in support of their respective positions on conditional certification, but discovery has not been conducted.  The evidence Plaintiffs submitted with their Motion, and the evidence Chipotle submitted with its response are appropriately considered at this stage of the litigation.  *See Saleen*, 649 F. Supp. 2d at 941–94 (considering declarations provided by both parties).  The evidence submitted at various other stages of briefing and during the hearing on Plaintiffs' Motion for Conditional Certification is discussed below.

---

[8]    The weight or impact of each piece of evidence, if considered, will be discussed separately.

### a.    Plaintiffs' Reply

Plaintiffs filed several additional declarations and exhibits with their Reply.  Two of these declarations supplemented Caldwell and Harris's previous declarations.  *See* (Suppl. Caldwell Decl.); (Suppl. Harris Decl.).  Two other employee declarations were new.  (Turner Decl.); (Cox Decl.).  Finally, Plaintiffs' counsel submitted a declaration that attached several publically available documents, including complaints against Chipotle for nonpayment of overtime and off-the-clock work, filings in other cases against Chipotle, Internet postings about working off the clock, and a description of Chipotle's Aloha timekeeping system.  *See* (Williams Decl. ¶¶ 6–13).

Chipotle requested permission to file a sur-reply, arguing Plaintiffs' new evidence was prejudicial to Chipotle because Chipotle could not fully respond to those arguments.  (Chipotle's Jan. 3, 2014 Letter).  Plaintiffs opposed the request.  (Letter to District Judge Dated Jan. 5, 2014).  Judge Nelson denied Chipotle's request, stating that it did not "adequately articulate the prejudice it claims, and such prejudice is not evident from Plaintiffs' [R]eply."  (Order on Def.'s Request for Permission to File a Sur-Reply at 1) [Doc. No. 72].  Thus, consistent with Judge Nelson's Order, this Court considers documents filed with Plaintiffs' Reply.  *See* (*id.*).

### b.    The *Lou* Order

Chipotle brought the *Lou* Order to this Court's attention via letter prior to the hearing on the Motion for the Conditional Certification.  *See* (Letter to Mag. Judge Dated Jan. 17, 2014).  Because the *Lou* Order is a publically filed order, this Court will consider it in light of Chipotle's argument that Plaintiffs' counsel should be disqualified.

### c.    Chipotle's Hearing Exhibits

During the hearing on the Motion for Conditional Certification, Chipotle provided this Court and Plaintiffs with several exhibits not previously submitted.  Several exhibits were

intended to be demonstrative only, including a map showing Plaintiffs' so-called "paltry evidence;" a receipt from an employee clocking out; a chart purporting to explain why Plaintiffs are not similarly situated to each other or other employees; a chart explaining the similarities between this case and the *Saleen* case; and a list of conflicts between Plaintiffs, as well as with Plaintiffs' counsel serving as class counsel.   Chipotle also submitted the complaint filed in *Turner v. Chipotle Mexican Grill of Colorado, LLC*, Case No. 13-cv-00794-WYD-CBS (D. Colo.) (the "*Turner* Complaint").   Finally, Chipotle submitted excerpts of the deposition transcripts of Hernandez, Beebe, and Hawkins.   These depositions were taken between the time this Court denied Chipotle's Motion for Protective Order on January 8, 2014, and the hearing on the Motion for Conditional Certification on January 24, 2014.   (Jan. 2014 Order); (Minute Entry Dated Jan. 24, 2014).   The excerpts had not been previously submitted, nor were the excerpts the subject of any supplemental briefing.   *See* (Jan. 2014 Order at 4) (setting briefing schedule if Plaintiffs determined it was necessary).

Because none of the exhibits provided by Chipotle during the hearing on the Motion for Conditional Certification were submitted to or accepted by this Court as evidence, they will not be considered as part of the record.   But because the *Turner* Complaint is publically filed, it will be considered to the extent it is relevant to the issues in the instant Motion for Conditional Certification.

### d.      Chipotle's Letter Exhibits

Finally, Chipotle submitted eleven exhibits with its letter regarding potential disqualification of Plaintiffs' Counsel.   *See* (Chipotle's Jan. 31, 2014 Letter).   This Court did not contemplate the parties submitting exhibits in connection with their respective letters regarding

disqualification, and therefore, Chipotle's exhibits will not be considered in the determination of Plaintiffs' Motion for Conditional Certification.

### 3. Analysis

Conditional certification is warranted if Plaintiffs have established a "'colorable basis . . . that a class of similarly situated plaintiffs exists' or that 'the putative class members were the victims of a single decision, policy, or plan.'" *Saleen*, 649 F. Supp. 2d at 939 (quoting *Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1114, 1149 (D. Minn. 2005) (RHK/AJB); *Burch*, 500 F. Supp. 2d at 1186). "In other words, the putative class members must be harmed by an **unlawful** companywide policy." *Saleen*, 649 F. Supp. 2d at 940 (emphasis in original).

### a. The Parties' Arguments

Plaintiffs argue conditional certification is appropriate because Chipotle has an unwritten policy—which contradicts its written policy—to require employees to work off the clock. (Pls.' Mem. in Supp. at 5); (Pls.' Reply at 5–6). Chipotle controls labor budgets from its corporate headquarters in Denver, and uses the Aloha timekeeping system in all of its restaurants across the country to further control labor budgets. (Pls.' Reply at 2–3). As a result, the status of the restaurants' labor budgets are available to managers at any time through the Aloha timekeeping system, and in an effort to stay in line with the budget, closing shifts are understaffed and employees are forced to work off the clock during closing shifts. (Pls.' Reply at 3). Plaintiffs argue this unwritten policy made them the victims of Chipotle's "single decision, policy, or plan to deprive them of compensation by making them work off the clock." (Pls.' Mem. in Supp. at 5).

Plaintiffs allege that Chipotle's unwritten policy affects the closing shift in two ways. First, the Aloha timekeeping system automatically punches out all employees at 12:30 a.m.

(Pls.' Reply at 4).  Employees keep working without being punched back in because supervisors discourage them clocking back in and retaliate against them for requesting to be clocked back in. (Pls.' Mem. in Supp. at 6–7, 14–15); (Pls.' Reply at 4–5).  Therefore, the automatic clock-out results in non-payment of those hours the employees continued to work after they were automatically punched out by the Aloha timekeeping system at 12:30 a.m.  (Pls.' Mem. in Supp. at 14–15); (Pls.' Reply at 4–5, 10–11).  Second, Plaintiffs argue that they frequently have to attend mandatory meetings after they clock out of their closing shift.  (Pls.' Reply at 4).   They argue that they are not paid for the period of time between when they clock out to when the security system is armed for the night.  (*Id.* at 4–5).  Plaintiffs are discouraged from having their time edited to reflect this missing time, and are retaliated against when asked to be paid for this time.  (*Id.* at 5).

Plaintiffs argue their declarations, consents to join, reports from the Minnesota DOLI, other complaints filed in federal court in other states, and Internet postings show that Plaintiffs are similarly situated and that the unlawful behavior spans various restaurants and states over the proposed class period.[9]  (Pls. Mem. in Supp. at 15–16); (Pls.' Reply at 5–6).  Plaintiffs argue that the differences among the members of the proposed class do not create an intra-class conflict "because the primary question is **whether** the employees are entitled to recover damages."  (Pls.' Mem. in Supp. at 15) (emphasis in original).

Chipotle argues that its corporate "Timekeeping Policy" directs that all hourly employees be paid for all time worked.  (Chipotle's Opp'n at 7).  The Timekeeping Policy applies to all hourly employees, regardless of whether the employee is a crew member or a manager.  (*Id.* at 6).  All employees must review the Timekeeping Policy when they first begin working, and

---

[9]    The class period proposed by Plaintiffs is October 23, 2010, to the present.  *See* (Pls.' Mem. in Supp. at 1–2).

managers must train new hires on the Timekeeping Policy. (*Id.*). Chipotle uses the Aloha timekeeping system "to gather, record[,] and track all hours worked by all hourly employees." (*Id.* at 7). The Aloha timekeeping system resets at 12:30 a.m. each day to turn the data it collects into usable information. (*Id.* at 8–9). Because most Chipotle restaurants close at 10:00 p.m., Chipotle expects that employees closing those restaurants will "almost always" be finished working when the Aloha timekeeping system resets at 12:30 a.m. (*Id.* at 9).

Chipotle argues that employees are empowered to raise discrepancies in their reported time because each punch-out creates a receipt confirming the hours the employee worked. (*Id.* at 9). Managers can adjust an employee's time record through a "time punch edit," which "should rarely be needed." (*Id.* at 10). This "Time Punch Policy" is distributed to hourly employees through handbooks, and violations of the Timekeeping or Time Punch Policies are prohibited. (*Id.* at 11–12). Chipotle also provides two free and confidential hotlines where employees can address any concerns they do not feel comfortable raising with their managers or field leaders. (*Id.* at 12).

Chipotle argues that the use of the Aloha timekeeping system does not constitute a common policy to underpay employees. (*Id.* at 24–25). Chipotle argues Plaintiffs' declarations do not claim Chipotle's policy prevented managers from reversing the automatic clock-out. (*Id.* at 25–26). Additionally, Chipotle argues that Plaintiffs' conclusory declarations, which are based on events that occurred at only one store in Crystal, Minnesota, do not show a nationwide policy to underpay employees. (*Id.* at 27–29). Chipotle argues that the disputed Minnesota DOLI claims and the consents are not sufficient to show a nationwide policy. (*Id.* at 29–30).

Chipotle further argues that even if Plaintiffs limit their class to the Crystal, Minnesota, store, they have not shown that the nonpayment of hours worked was part of a single decision,

policy, or plan because Plaintiffs' declarations lack the identity of the offending supervisor(s), the dates of the unworked hours, and other details.  (*Id.* at 31).

Finally, Chipotle argues that Plaintiffs are not similarly situated because hourly-paid managers are responsible for ensuring crew members are paid accurately.  (*Id.* at 34–35). Chipotle argues this creates an intra-class conflict because the class members who were crew members, like Harris and Hobbs, may need to show that other class members who were managers, such as Caldwell and Evenson, were responsible for the crew members' off-the-clock work.  (*Id.* at 35–36).[10]

### b.   Court's Analysis

This Court finds that Plaintiffs have demonstrated a colorable basis to show that they are similarly situated and "the victims of a single decision, policy, or plan."  *See Burch*, 500 F. Supp. 2d at 1186 (quotations and citations omitted).   But Plaintiffs' evidence showing a common policy supports a more narrow class definition than the one Plaintiffs propose.   Plaintiffs' proposed class is: "All current and former hourly-paid restaurant employees of Chipotle Mexican Grill, Inc. who, on or after October 23, 2010, were automatically punched off the clock and continued to work, or who otherwise worked 'off the clock,' resulting in non-payment of regular wages or overtime wages."  (Pls.' Mem. in Supp. at 1–2).  As explained below, this Court finds that the evidence of a common policy relates only to those employees who worked the closing shift.

---

[10]    Plaintiffs and Chipotle addressed this so-called intra-class conflict in their January 31, 2014 letters.  *See* (Pls.' Jan. 31, 2014 Letter); (Chipotle's Jan. 31, 2014 Letter).  But this Court finds the parties' memoranda on this issue were sufficient, and did not contemplate further argument on the intra-class conflict by letter.  Therefore, the Court does not address the arguments the parties made in their letters to the extent they are different from those in the parties' memoranda.

### i.      Whether Plaintiffs Are Similarly Situated

Plaintiffs are similarly situated because they either are currently, or were recently, hourly employees in Chipotle restaurants.  (Harris Decl. ¶¶ 3–5); (Caldwell Decl. ¶¶ 3–5); (Hobbs Decl. ¶¶ 3–5); (Evenson Decl. ¶¶ 3–5); (Turner Decl. ¶¶ 2–4); (Cox Decl. ¶¶ 2–3).  Plaintiffs were required to work off the clock in two specific scenarios: when the Aloha timekeeping system automatically punched them out at 12:30 a.m., and when they were required to punch out at the end of the shift even though they continued to work or attended a meeting.  (Harris Decl. ¶¶ 7–8); (Caldwell Decl. ¶¶ 7–9); (Hobbs Decl. ¶¶ 7–8); (Evenson Decl. ¶¶ 7–9); (Suppl. Caldwell Decl. ¶¶ 6–7, 11); (Suppl. Harris Decl. ¶¶ 4–5); (Turner Decl. ¶¶ 6–9); (Cox Decl. ¶¶ 4–5, 8).[11] Additionally, Plaintiffs were prohibited from seeking pay for the hours they worked by suffering retaliation, by suffering the threat of retaliation, by not being allowed to remain punched in, or by not being allowed to punch in again following the automatic reset.  (Harris Decl. ¶ 9); (Caldwell Decl. ¶¶ 8–9); (Hobbs Decl. ¶ 9); (Evenson Decl. ¶ 10); (Suppl. Caldwell Decl. ¶¶ 8, 10, 12); (Suppl. Harris Decl. ¶¶ 7, 9–14); (Turner Decl. ¶ 10); (Cox Decl. ¶¶ 6–7, 9).

Chipotle's argument that the Plaintiffs have such differences that they may be forced to turn against each other because some members of the conditional class are managers is not persuasive at this point.  *See* (Chipotle's Opp'n at 35–36).  Some types of managers are paid hourly, and are or were subject to the same requirements to work off the clock.  *See, e.g.*, (Caldwell Decl. ¶¶ 5, 8–9); (Evenson Decl. ¶¶ 5, 8–9); (Suppl. Caldwell Decl. ¶¶ 4–8); (Turner Decl. ¶¶ 3–4, 6); (Gottlieb Decl. ¶ 18).  Therefore, hourly managers are similarly situated to hourly crew members because both groups were compensated on an hourly basis, and were

---

[11]      Although not all of the cited declarations aver that the automatic punch out occurs at 12:30 a.m., Chipotle does not dispute this fact.  *See* (Chipotle's Opp'n at 9); (Gottlieb Decl. ¶ 41).

required to work off the clock during closing shifts.  Chipotle's own polices suggest all hourly employees should be treated the same.  (Chipotle's Opp'n at 6).  The appropriate time for this Court to determine if the Plaintiffs' differences are prohibitive of a collective action is at the second—or decertification—stage, after discovery has been conducted.  *See Knaak v. Armour-Eckrich Meats LLC*, -- F. Supp. 2d --, Civil No. 13-829 (JRT/JJK), 2014 WL 67956, at *6 (D. Minn. Jan. 8, 2014) (citation omitted); *Jennings*, 2012 WL 2568146, at *6 (citation omitted).

### ii.      Whether Plaintiffs are Victims of a Common Policy

This Court finds that Plaintiffs have established a colorable basis to show that they and similarly situated individuals were the victims of a corporate-wide policy to underpay employees who worked the closing shift.  *See Burch*, 500 F. Supp. 2d at 1186.  Plaintiffs' evidence shows that labor budgets were set at a corporate level, and that pressure to stay within the budgets was a corporate policy.

First, a former employee who was a general manager submitted a declaration based on her personal knowledge that states the budgets were set by the corporate office and monitored through the Aloha timekeeping system.  (Turner Decl. ¶ 12).[12]  Second, Tim Spong, the director of security, safety, and risk for Chipotle, submitted a declaration in another case stating that Chipotle's chief financial officer (the "CFO") is based in Denver, in Chipotle's corporate headquarters.  (Decl. of Tim Spong in Supp. of Defs.' Notice of Removal, *Lemus v. Chipotle, Inc.*, Case No. 12-cv-05892 (C.D. Cal. June 26, 2012), Ex. E, Attached to Williams Decl.) [Doc. No. 67-5 ¶¶ 1, 16].  The CFO "is responsible for **all financial**, accounting[,] and reporting functions of the corporation . . . ."  (*Id.* ¶ 16) (emphasis added).  Spong further averred that "virtually all of the core executive and operational functions of Chipotle [] are carried out from

---

[12]      In addition to her position as a general manager, Turner also held hourly positions.  *See* (Turner Decl. ¶¶ 2–4).

the corporation's Denver headquarters, and, to a much lesser extent, from its small executive office in New York City." (*Id.* ¶ 28).   Additionally, all financial models are "developed, refined[,] and communicated" from Chipotle's Denver headquarters. (*Id.* ¶ 29).   Mindful of the fact that a court should not weigh evidence at this stage, this Court finds the Turner and Spong declarations show that the budgets and other financial management tools were created at the corporate level. *See Burch*, 500 F. Supp. 2d at 1186.

Second, Plaintiffs' evidence shows that pressure to stay within budget was part of a corporate policy.   Hourly employees were told they had to work off the clock to meet budget goals.  (Caldwell Decl. ¶ 10); (Evenson Decl. ¶ 10); (Suppl. Caldwell Decl. ¶ 9); (Suppl. Harris Decl. ¶ 7); (Turner Decl. ¶ 11); (Cox Decl. ¶ 7).   Requesting to be paid for off-the-clock hours was discouraged through the threat of retaliation.  *See* (Harris Decl. ¶ 9); (Hobbs Decl. ¶ 9); (Suppl. Caldwell Decl. ¶¶ 8, 12); (Suppl. Harris Decl. ¶¶ 6, 9–16); (Turner Decl. ¶ 10 ); (Cox. Decl. ¶¶ 6, 9).   Managers were instructed "to do what is necessary" or to prohibit others from clocking back in after the automatic reset at 12:30 a.m. to keep in line with labor goals, which were checked multiple times per day through the Aloha timekeeping system.  (Caldwell Decl. ¶ 10); (Evenson Decl. ¶ 10); (Suppl. Caldwell Decl. ¶¶ 10, 12); (Turner Decl. ¶¶ 11, 15).  General managers were aware that the pressure to keep labor costs low resulted in employees working off the clock.  (Turner Decl. ¶ 16).

Thus, the pressure that all Chipotle restaurants must stay within the budget goals, set on a corporate level, created a corporate policy to require employees to work off the clock during closing shifts to meet those goals. *Burch*, 500 F. Supp. 2d at 1186; *see also In re Bank of Am. Wage & Hour Emp't Litig.*, 286 F.R.D. 572, 586 (D. Kan. 2012) (granting conditional certification where plaintiffs "satisfied their minimal burden of providing substantial allegations

that the [defendant] maintained an unofficial policy requiring off-the-clock [work] through the use of labor budgets, aggressive management of overtime, and scheduling processes that result in the understaffing of branch locations.").

Plaintiffs' evidence is focused on the automatic clock-out during closing shifts and other off-the-clock work required during closing shifts. *See, e.g.*, (Harris Decl. ¶ 8); (Caldwell Decl. ¶ 8); (Hobbs Decl. ¶ 8); (Evenson Decl. ¶ 8); (Suppl. Caldwell Decl. ¶¶ 6, 11); (Suppl. Harris Decl. ¶¶ 5–9); (Turner Decl. ¶¶ 6–10); (Cox Decl. ¶¶ 5–9). Plaintiffs' evidence does not support their proposed broad class definition that includes not only employees who worked off the clock after being automatically punched out at 12:30 a.m. by the Aloha timekeeping system, but also those who "otherwise worked 'off the clock[.]'" *See* (Pls.' Mem. in Supp. at 1–2). Instead, this Court finds a more narrow class definition, limited to only those employees who worked off the clock during closing shifts, to be more appropriate.

### iii.    Non-affidavit Testimony

Although this Court finds Plaintiffs' evidence submitted through declarations sufficient to support a common policy or plan, it addresses the evidence Plaintiffs submitted that is not affidavits or declarations for the sake of completeness.

Courts are split on whether inadmissible evidence can be considered at the conditional certification stage. *Simmons v. Valspar Corp.*, Civ. No. 10-3026 (RHK/SER), 2011 WL 1363988, at *3 (D. Minn. Apr. 11, 2011) (citing *West*, 2006 WL 1892527, at *6; *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 369 (E.D. Tenn. 2006)).[13] "The only clear requirement is that averments in support of a Motion for Conditional Certification must be based on personal knowledge." *Id.* (citations and quotations omitted). Cases discussing the standard of evidence

---

[13]    In *Simmons*, the Court ultimately denied defendant's objection to plaintiffs' affidavits because defendant failed to establish a lack of personal knowledge. 2011 WL 1363988, at *3.

considered in a conditional certification typically only discuss affidavits and other averments based on personal knowledge; they do not discuss the value of other types of unsworn evidence. *See e.g.*, *Simmons*, 2011 WL 1363988, at *3; *Reyes v. AT&T Mobility Servs. LLC*, 759 F. Supp. 2d 1328, 1331–32 (S.D. Fla. 2010); *West*, 2006 WL 1892527, at *6; *but see Carden v. Scholastic Book Clubs, Inc.*, No. 2:10-cv-01112-NKL, 2011 WL 2680769, at *3 (W.D. Mo. July 8, 2011) (finding twelve sworn statements, an internal memo from the defendant company, and the defendant's responses to interrogatories sufficient to grant conditional certification in the absence of full discovery).

In *White*, the court found that evidence submitted in support of conditional certification did not need to meet the standard of admissibility required for evidence submitted during summary judgment for several reasons. *White*, 236 F.R.D. at 368. The court noted that some courts require factual support for plaintiff's allegations at the initial conditional certification stage, while others permit a plaintiff to rely only on the complaint. *Id.* (citing *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996)). Thus, the court concluded that the correct standard was some factual support is needed at the initial stage of class certification, but the factual support was not required to meet the summary judgment evidentiary standard. *Id.* Additionally, the court noted that summary judgment is different from conditional certification in two ways. (*Id.*). First, summary judgment motions take place when discovery is complete. *Id.* At the time of conditional certification, however, discovery has barely begun. *Id.* Second, summary judgment is a dispositive motion that may avoid trial, and therefore, the evidentiary standard should be the same as it would be at trial. *Id.* In other words, certification is only conditional at this stage, and after discovery, the defendant can move for decertification.

This Court finds that the *White* analysis is persuasive, and will next review whether Plaintiffs' unsworn evidence is based on personal knowledge and relevant to this Court's recommended more narrow class definition. *See White*, 236 F.R.D at 368.

Plaintiffs submitted documents related to claims made with the Minnesota DOLI. (Ex. C, Attached to Williams Aff. at 11–31).[14] The first claim, Wage Claim Number 12082, involved a Chipotle store in Rochester, Minnesota, that issued a pay stub to an employee that reflected payment that was not actually made to the employee. (*Id.* at 12–14).[15] Ultimately, the claim was resolved. (*Id.* at 14). Because the documents do not demonstrate that this pay stub issue is related to unpaid work during a closing shift, it is not relevant to conditional certification.[16] The second claim, Case Code 9938, relates to an employee of the Crystal, Minnesota, Chipotle store being required to work off the clock as punishment. (*Id.* at 15–17).[17] While similar to Plaintiffs' claims in this case because of the allegations of being forced to work off the clock, Case Code 9938 does not mention of the closing shift. *See* (*id.* at 15). Additionally, the documents submitted are either from the Minnesota DOLI or Chipotle's counsel. *See* (*id.* at 15–17). None are signed by the employee, and in fact, one of the documents says the claimant-employee asked that his or her name not be used. (*Id.* at 15). Thus, although related to off-the-clock work, this claim does not weigh in favor or against conditional certification because it does not show a common policy of off-the-clock work during closing shifts, and because the documentation

---

[14]   Because all exhibits to the Williams Affidavit were submitted as part of the affidavit, as opposed to filed as separate documents, the page numbers refer to those assigned by the CM/ECF system.

[15]   The Wage Claim Number is given in the upper right corner of the Wage Claim Form. (Ex. C at 12).

[16]   Even if Wage Claim Number 12082 was related to the issues in the instant case, none of the documents are personal knowledge from the employee. *See* (*id.* at 12–14). Instead, the documents are all from the Minnesota DOLI. (*Id.*).

[17]   The Case Code is given in the upper right corner of the Complaint Form. (Ex. C at 15).

provided is not based on personal knowledge. Therefore, this Court does not consider this evidence. The final claim, Case Code 9799, relates to claims of several employees who claim that they were forced to work without breaks and were forced to work off the clock. (*Id.* at 19–31).[18] Again, these claims are not clearly related to the issues in this case—off-the-clock work during closing shifts—and are not based on personal knowledge. (*Id.*). The documents submitted are from the Minnesota DOLI and Chipotle's counsel. (*Id.*).[19] In conclusion, the Minnesota DOLI complaints are not probative regarding whether Plaintiffs and similarly situated individuals were forced to work off the clock during closing shifts as part of Chipotle's corporate policy.

With their Reply, Plaintiffs submitted several complaints filed in other districts that they say support Chipotle's policy of requiring off-the-clock work. (Pls.' Reply at 5–6); (Complaint, *Correa v. Chipotle Mexican Grill, Inc.*, Case No. 13-cv-60984-RNS (S.D. Fla. Apr. 27, 2013), the "*Correa* Complaint," Ex. A, Attached to Williams Decl.) [Doc. No. 67-1]; (Complaint, *Smulon v. Chipotle Mexican Grill, Inc.*, Case No. 10-cv-60106 AJ (S.D. Fla. Jan. 10, 2010), the "*Smulon* Complaint," Ex. B, Attached to Williams Decl.) [Doc. No. 67-2]; (Complaint, *Lemus v. Chipotle, Inc.*, Case No. 1384323 (Santa Barbara Sup. Ct. Dec. 23, 2011), the "*Lemus* Complaint," Ex. C, Attached to Williams Decl.) [Doc. No. 67-3]; *see also* (Williams Decl. ¶¶ 6–8). This Court finds these complaints do not support Plaintiffs' conditional certification argument. Both the *Correa* Complaint and the *Lemus* Complaint allege Chipotle employees were not compensated for regular or overtime work. (*Correa* Compl. ¶¶ 9–16); (*Lemus* Compl.

---

[18]     The Complaint Form in Case Code 9799 refers to only one employee. (Ex. C at 19). But the next page refers to several employees. (*Id.* at 20). Because there is no separate Complaint Form accompanying the allegations made on page 20, this Court presumes that pages 19 and 20 are both part of the same complaint.
[19]     The complainant also asked that his or her name not be used. (*Id.* at 19).

¶ 99).  But neither the *Correa* nor the *Lemus* plaintiffs' claims are specific to off-the-clock work done during closing shifts, and therefore do not further support Plaintiffs' Motion for Conditional Certification in this case.  The *Smulon* Complaint is even less applicable.  There, the plaintiff alleged that he was never paid more than forty hours per week, even when he worked more than forty hours.  (*Smulon* Compl. ¶ 4).  While this is technically a claim for working off the clock, it is more focused on overtime pay, and is not specific to closing shifts.  Therefore, the *Smulon* Complaint likewise does not support Plaintiffs' Motion for Conditional Certification.

Plaintiffs also submitted documents regarding notice in two cases against Chipotle.  *See* (Exs. F & G, Attached to Williams Decl.) [Doc. Nos. 67-6, 67-7].  Neither of these cases appears to be related to off-the-clock work during closing shifts, and therefore both are irrelevant to whether conditional certification should be granted in this case.

Finally, Plaintiffs submitted copies of Chipotle's employees' Internet postings regarding being forced to work off the clock.  (Ex. D, Attached to Williams Decl.) [Doc. No. 67-4]; *see also* (Williams Decl. ¶ 9).  An anonymous former employee from Peoria, Arizona, posted that he and others were told to work off the clock several times.  (Ex. D at 3).[20]  But, like the complaints filed in other courts, this posting is not related to off-the-clock work during closing shifts, and therefore does not support Plaintiffs' Motion for Conditional Certification.  The two other postings provided by Plaintiffs, in contrast, specifically mention the closing shift.  *See* (*Id.* at 2, 4).  An employee in Victorville, California, anonymously reported that an employee should "[e]xpect to work off the clock when closing [g]rill[] or [p]rep."  (*Id.* at 2).  David L. Goldberg, who is from Chicago, Illinois, posted that employees must work past 12:30 a.m., but are automatically clocked out at 12:30 a.m.  (*Id.* at 4).

---

[20]     Page numbers cited in Exhibit D refer to those assigned by the CM/ECF system.

The Internet postings from Victorville and Chicago are a far cry from affidavits based on personal knowledge in terms of reliability.   Internet postings are difficult to authenticate as admissible evidence.   *See* Fed. R. Evid. 901(a); *Farkarlun v. Hanning*, 855 F. Supp. 2d 906, 921–22 (D. Minn. 2012) (ADM/JJK) (discussing plaintiff's failed attempt to authenticate articles and emails reproduced on Internet blogs due to plaintiff's inability to provide evidence that the items were reproduced accurately or that they originated from the sources plaintiff claimed).   But because the standard of evidence is lower in a motion for conditional certification than it would be in a motion for summary judgment, this evidence supports Plaintiffs' colorable basis that their off-the-clock work during closing shifts was part of a common policy.   *See White*, 236 F.R.D at 368.

### iv.   Disqualification of Plaintiffs' Counsel

Chipotle argues that, under the *Lou* Order, Plaintiffs' counsel must be disqualified from representing Plaintiffs in this case because they represent other plaintiffs in similar litigation. (Chipotle's Jan. 31, 2014 Letter at 3–5).   In *Lou*, the court considered plaintiffs' motion for class certification under Rule 23 of the Federal Rules of Civil Procedure and conditional certification under the FLSA.   (*Lou* Order at 1).[21]   The court noted that plaintiffs' counsel represented another group of plaintiffs in a similar action, making similar claims, against the same defendants in state court.   (*Id.* at 2–3).   The court found plaintiffs' counsel was inadequate to represent the class under Rule 23.   (*Id.* at 3).   The court found plaintiffs' counsel would have a conflict because it may be forced to consider settlement with defendants in one case—who would want to settle both cases—at the expense of the plaintiffs in the other case.   (*Id.*).

---

[21]   The court also considered several other motions not relevant to the issues in this case. (*Lou* Order at 1).

Chipotle argues that Plaintiffs' counsel in this case have a conflict because Plaintiffs' counsel "have sought to resolve the same claims in multiple proceedings." (Chipotle's Jan. 31, 2014 Letter at 5). Specifically, Chipotle points out that Plaintiffs' counsel represents Leah Turner ("Turner"), who opted in to this case, in a similar case filed in Colorado against Chipotle, which has since been dismissed. (Chipotle's Jan. 31, 2014 Letter at 3–4); *see also* (Pls.' Notice of Consent). Turner also joined a misclassification case against Chipotle, and is participating in a workers' compensation case against Chipotle. (Chipotle's Jan. 31, 2014 Letter at 4). Chipotle argues that Plaintiffs' counsel has now filed three similar cases against Chipotle: this case, Turner's case in Colorado, and Hobbs's case (which was later consolidated with this case). (*Id.* at 5). Plaintiffs' counsel argues that Chipotle does not have standing to disqualify them. (Pls.' Jan. 31, 2014 Letter at 1–2).

This Court finds that Plaintiffs' counsel should not be disqualified. Chipotle points to no cases from this District, nor any other cases besides *Lou*, where a court has considered the adequacy of counsel at the conditional certification stage. *See generally* (Chipotle's Jan. 31, 2014 Letter). Nothing in the standard traditionally used by this District addresses the adequacy plaintiffs' counsel. *See e.g.*, *Jennings*, 2012 WL 2568146, at *3–4; *Saleen*, 649 F. Supp. 2d at 939; *Burch*, 500 F. Supp. 2d at 1186.

In *Lou*, the court considered the adequacy of counsel in connection with class certification under Rule 23. (*Lou* Order at 2). The court cited law made under Rule 23 class certification. *See* (*Lou* Order at 3) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); 1 McLaughlin on Class Actions 4:39 (10th ed.)). Only after conducting its Rule 23 analysis did the court exercise its discretion to apply counsel's inadequacy in representing the class to plaintiffs' conditional certification

motion.  (*Id.* at 3–4).  Nothing in the *Lou* order suggests that the court would have examined the adequacy of counsel as part of the conditional certification motion if not for the Rule 23 requirement of adequacy of counsel.  Instead, it appears that any potential conflict is more appropriately addressed at the second decertification stage in FLSA actions.

Even so, to the extent that Plaintiffs' counsel's other cases against Chipotle create a conflict—on which this Court does not opine—those issues have been resolved.  Turner's FLSA case in Colorado was dismissed by the parties' agreement, and therefore is no longer active.  (Chipotle's Jan. 31, 2014 Letter at 4).[22]  There can be no conflict between this case and a case that no longer exits.  Chipotle also points out that Turner is participating in two other cases against Chipotle: one regarding misclassification of assistant general managers, and one that involves a workers' compensation claim.  (*Id.*).  Neither of these cases is related to the instant claims.  While misclassification and off-the-clock work are both FLSA claims, they are not the same claims, which was the concern in the *Lou* Order.  *See* (*Lou* Order at 3).  Plaintiffs do not make a misclassification claim in this case, and nothing in the record to date supports such a claim.  Chipotle makes no argument that Turner's workers' compensation claim is similar to the claims in this case, only that Plaintiffs' counsel is the same in both cases.  (Chipotle's Jan. 321, 2014 Letter at 4).  This Court finds that Turner's other cases do not have similar claims to the claims made in this case, and therefore, disqualification of Plaintiffs' counsel is not appropriate.[23]  Finally, to the extent Chipotle argues that Plaintiffs' counsel is pursing the same

---

[22]    The parties agreed to dismiss Turner's case without prejudice, so Turner's ability to refile her case was done with the full knowledge and participation of Chipotle.

[23]    Chipotle also points out that in settlement negotiations between Turner and Chipotle in the workers' compensation case, the parties were discussing a so-called global settlement that would also resolve Turner's employment claims.  (Chipotle's Jan. 31, 2014 Letter at 4).  Chipotle does not specify why this is relevant, but to the extent Chipotle argues this proposed agreement shows Turner's claims are related, this Court disagrees.  Parties explore a wide range

claims in multiple proceedings by participating in the *Hobbs* case, this has also been resolved. The *Hobbs* case has been consolidated with the instant case, and Hobbs is now a named plaintiff in this case. *See* (Order for Consolidation Pursuant to F.R.C.P. 42(a)). This was done through a stipulation by the parties, and these cases are now being handled as they should be: together. *See* (*id.*). Thus, any conflict that may have arisen from two cases—this case and *Hobbs*—that make the same claims against Chipotle was resolved when the cases were consolidated.

### c. Conditional Certification Recommendation

Plaintiffs have provided a colorable basis that they and similarly situated individuals are victims of a single policy that deprived them of pay for hours worked off the clock during closing shifts. Although Plaintiffs proposed a class definition applicable to all employees who worked off the clock, this Court recommends conditional certification be limited to all current and former hourly-paid restaurant employees who were automatically punched off the clock and continued to work, or who otherwise worked "off the clock," during closing shifts. Additionally, Plaintiffs seek approval of Harris, Caldwell, Hobbs, and Evenson as class representatives, which Chipotle does not oppose. *See* (Pls.' Mem. in Supp. at 2). This Court recommends that Harris, Caldwell, Hobbs, and Evenson be designated as class representatives.

### B. Judicial Notice

Because this Court recommends conditional certification, it must now determine whether judicial notice is appropriate. A court has discretion to facilitate judicial notice to potential plaintiffs in appropriate cases. *Hoffman-La Roche Inc.*, 493 U.S. at 169. "Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written

---

of options during settlement discussions, and a global settlement is just one potential negotiation point that demonstrates nothing more than options discussed between the parties.

consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Id.* at 171.

> By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner.

*Id.* at 172. "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Id.*

This Court recommends exercising its discretion to facilitate judicial notice. Potential plaintiffs are current or former Chipotle employees across the country, and notice will prevent an expiration of the statute of limitations on the claims.

This Court describes and analyzes Chipotle's three major objections to Plaintiffs' proposed notice and recommends notice consistent with this analysis.

### 1.    Personal Information

Plaintiffs request the following information for each potential opt-in plaintiff: name, home address, home phone number, mobile phone number, personal email address, job title(s), dates of employment, location of employment, Chipotle employee number, date of birth, and social security number. (Pls.' Mem. in Supp. at 16–17). Plaintiffs argue this information is consistent with information ordered produced in other FLSA cases. (*Id.* at 17) (citing *Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 2:10-cv-04175-NKL, 2011 WL 3794021, at *10 (W.D. Mo. Aug. 25, 2011); *Burch*, 500 F. Supp. 2d at 1192–93). In addition, Plaintiffs argue that this information is best for the "young, transient" employees who work for Chipotle, and that Chipotle itself claims its turnover is 100% per year. (Pls.' Reply at 22) (citing Gottlieb Decl. ¶ 17).

Chipotle argues this amount of information is overbroad and unnecessary, and information provided should be limited to the information necessary to provide notice. (Chipotle's Opp'n at 37–39).  Chipotle argues that Plaintiffs should be limited to only names and addresses of the potential opt-in plaintiffs.  (*Id.* at 40).  Plaintiffs give no reason why telephone numbers are needed, and Plaintiffs have not yet shown that sensitive information such as birth dates and social security numbers are necessary.  (*Id.* at 40–41).  Finally, Chipotle argues that the type of work history Plaintiffs seek is not necessary to provide notice.  (*Id.* at 41).

This Court recommends that Chipotle be ordered to turn over names, email addresses, and last known addresses of potential opt-in plaintiffs.[24]  This is consistent with what is required to provide notice and with what other courts have done in similar cases.  *See, e.g.*, *Le v. Regency Corp.*, 957 F. Supp. 2d 1079, 1093 (D. Minn. 2013) (DWF/SER); *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 364 (W.D. Mo. 2007) (ordering production of plaintiffs' last known mailing address, telephone numbers, and email, and finding that also requiring job title was asking for "too much").[25]

### 2.     Multiple Forms of Notice

Chipotle argues that four proposed forms of notice—first-class mail, website, email, and a notice in Chipotle's restaurants—is excessive.  (Chipotle's Opp'n at 41–42).  Instead, Chipotle argues first-class mail and a website are sufficient.  (*Id.* at 41).  Chipotle argues email is inefficient because Chipotle does not have email addresses for a majority of its employees.  (*Id.* at 42).  It also argues that posting in its restaurants is overly burdensome because it has 1,500 restaurants and because it is unnecessary.  (*Id.* at 42–44).

---

[24]     Email addresses are also addressed below.

[25]     The cases that Plaintiffs cite are inapposite.  In both cases, the plaintiffs requested similar amounts of information requested here, but the defendants did not oppose the requests.  *Nobles*, 2011 WL 3794021, at *10; *Burch*, 500 F. Supp. 2d at 1191.

Plaintiffs respond that Chipotle has not identified any burden associated with email notice or signs posted in restaurants. (Pls.' Reply at 22–23). Plaintiffs argue that email is another way to reach potential opt-in plaintiffs, and judicial economy is protected when notice reaches "as many damaged plaintiffs as reasonably practicable." (*Id.* at 22) (citation omitted). Plaintiffs argue Chipotle has not described any burden with posting notices in its restaurants, other than the number of restaurants. (*Id.* at 23). Plaintiffs rely on Chipotles' ability to post notices of its confidential hotlines in all restaurants to support their argument that posting a notice about the instant lawsuit is not burdensome. (Pls.' Reply at 23) (citing Gottlieb Decl. ¶ 45).

With respect to email addresses, this Court finds that Chipotle has not identified any reason that email notification is not appropriate or unfairly burdensome. Likewise, Chipotle has not established sufficient burden that would make posting a notice in each of its restaurants unreasonably burdensome. Courts are split on whether to require a defendant to post notice in each of its multiple locations. *Compare Perrin v. Papa John's Int'l, Inc.*, No. 4:09CV01335 AGF, 2011 WL 4635140, at *2 (E.D. Mo. Oct. 4, 2011), *vacated on other grounds*, 2011 WL 4815066 (finding burden on defendants to post notice in nationwide restaurants did not outweigh the minimal value) *with Smith v. Pizza Hut, Inc.*, Civil Action No. 09-cv-01632-CMA-BNB, 2012 WL 1414325, at *9 (D. Colo. Apr. 21, 2012) (ordering notice via, *inter alia*, posting in nationwide chain of restaurants); *Nobles*, 2011 WL 3794021, at *10 (ordering notice to be posted in all of defendant's locations). This Court recommends that Chipotle be ordered to provide Plaintiffs with any email addresses it has for employees and to post notices in all of its restaurants.

### 3.    Inaccurate Description of Lawsuit

Chipotle argues Plaintiffs' notice is inaccurate in three ways: (1) it requests distribution to inconsistent groups and does not adequately inform recipients of eligibility requirements; (2) notice should only be sent to individuals employed by Chipotle within three years of any order requiring notice; and (3) the notice does not contain a statement that the court has not made a finding of wrongdoing or advising opt-in plaintiffs that they may incur obligations by opting in to the lawsuit.  (Chipotle's Opp'n at 44–52).

Plaintiffs argue that all current and former employees who worked for Chipotle within the three-year time period should receive notice, not just those that worked off the clock.  (Pls.' Reply at 24).  More specifically, Plaintiffs argue that notice should be distributed broadly at this stage, even if not everyone who receives notice has a claim.  (*Id.*).  Plaintiffs also argue that notice should be distributed to current and former employees who worked for Chipotle within three years of the filing of the complaint.  (*Id.* at 25).[26]  Plaintiffs propose that the parties work out the remaining issues in a subsequent meet-and-confer process.  (*Id.* at 25–26).

### a.    Time Period

This Court first addresses the parties' dispute about the time period the notice should cover.  The statute of limitations for FLSA claims is two years.  29 U.S.C. § 255(a).  But if the violation is willful, the statute of limitations is three years.  *Id.*  Where, as here, there is not enough information to determine whether the violation is willful, courts in this District permit notice for the previous three years.  *See, e.g. Burch*, 500 F. Supp. at 1191 (finding that determining whether any violation was willful was premature at conditional certification stage).

---

[26]    Plaintiffs acknowledge that this is a change from their opening memorandum, which requested notice be sent to those current or former employees employed by Chipotle within three years of Plaintiffs' Motion for Conditional Certification.  (Pls.' Reply at 25 n.6).

Additionally, some cases in this District have said that the three-year period is three years before the date that the plaintiff filed the notice of consent to participate in a collective action. *See, e.g.*, *In re RBC Dain Rauscher Overtime Litig.*, 703 F. Supp. 2d 910, 966 (D. Minn. 2010) (JRT/FLN); *Alvarez v. Diversified Maint. Sys., LLC*, 11-CV-3106 (SRN/TNL), 2012 WL 3760818, at *3 (D. Minn. July 17, 2012). Others, apparently without objection from the defendant, have said the three-year class period begins three years before the notice was issued. *Loomis v. CUSA LLC*, 257 F.R.D. 674, 678 (D. Minn. 2009) (RHK/AJB); *Lyons v. Ameriprise Fin., Inc.*, Civ. No. 10-503 (RHK/JJK), 2010 WL 3733565, at *6 (D. Minn. Sept. 20, 2010) (defining class period as three years from date notice issued). At least one case has said the class period begins three years before the complaint is filed, and others have not addressed when the three-year period begins. *See e.g.*, *Edwards v. Multiband Corp.*, Civil No. 10-2826 (MJD/JJK), 2011 WL 117232, at *2, 5 (D. Minn. Jan. 13, 2011) (requiring defendant to provide plaintiff with information of current and former employees who worked for defendant from three years before the date of the complaint); *Ahle v. Veracity Research Co.*, Civil No. 09–00042 (ADM/RLE), 2009 WL 3103852, at *7 (D. Minn. Sept. 23, 2009) (discussing three-year statute of limitations but not specifying when that time frame begins). Absent a clear precedent in this District, this Court recommends that the notice period begin October 23, 2010. This is the date three years before Plaintiffs filed their notice of consent, and is in between Plaintiffs' revised proposal of July 2, 2010, and Chipotle's proposal of the three years prior to a court order regarding notice. *See* (Pls.' Notice of Consent); (Chipotle's Opp'n at 49); (Pls. Reply at 25).

### b. Inconsistent Groups

Chipotle's argument about inconsistent groups is essentially that it does not know which employees were forced to work off the clock, and if a broad group (all hourly Chipotle

employees employed within the past three years) receives notice, the notice does not adequately explain who should opt in.  (Chipotle's Opp'n at 45–46).  As Chipotle itself notes, at this stage, there is no way to further refine the group of individuals receiving notice.  *See* (Chipotle's Opp'n at 46).  This Court finds that the purposes of notice are best served by sending notice to current and former hourly employees employed by Chipotle from October 23, 2010, to the present.  The parties should meet and confer to further refine the notice so that current and former employees can make an informed decision about whether to opt in.

**c.      Remaining Issues**

Plaintiffs propose that the parties meet and confer regarding remaining issues with the notice.  This Court agrees.  If this Report and Recommendation is adopted, the parties will have more clarity regarding the scope of the class, and a meet-and-confer process is likely to be productive.

## III.    RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiffs' Motion for Conditional Certification [Doc. No. 33] be **GRANTED in part** and **DENIED in part** as follows:

1.    To the extent Plaintiffs' Motion for Conditional Certification seeks conditional certification, this Court recommends the Motion be **GRANTED** and that the following collective action be conditionally certified:  All current and former hourly-paid restaurant employees of Chipotle Mexican Grill, Inc. who, on or after October 23, 2010, were automatically punched off the clock by the Aloha timekeeping system at 12:30 a.m. and continued to work, or who otherwise

worked "off the clock" during closing shifts, resulting in non-payment of regular wages or overtime wages;

2.    To the extent Plaintiffs' Motion for Conditional Certification seeks the appointment of Marcus Harris, Julius Caldwell, Demarkus Hobbs, and Dana Evenson as conditional collective action class representatives, this Court recommends the Motion be **GRANTED**;

3.    To the extent Plaintiffs' Motion for Conditional Certification seeks approval of their proposed Notice of Right to Opt-In to Collective Action Lawsuit and Consent to Join, this Court recommends the Motion be **GRANTED** to the extent the Notice and Consent to Join complies with the analysis in this Report and Recommendation, and subject to the parties' subsequent meet-and-confer process;

4.    To the extent Plaintiffs' Motion for Conditional Certification seeks approval of Rust Consulting, Inc. ("Rust") as the Notice Administrator to administer and oversee the dissemination of the Notice, Consent to Join, and the collection of signed Consents to Join, including first class mail, email, telephone support, website design and maintenance, collection of signed Consents to Join, and all other necessary related and administrative functions, this Court recommends the Motion be **GRANTED**;

5.    To the extent Plaintiffs' Motion for Conditional Certification seeks production of information for potential opt-in plaintiffs, this Court recommends the Motion be **GRANTED** as follows:  Counsel for Plaintiffs and Chipotle must meet and confer regarding format and other logistics related to the production of such information. If this Report and Recommendation is adopted, Chipotle shall provide to Williams

Law Firm a fully useable, searchable and importable electronic list or database of all potential opt-in plaintiffs within fourteen (14) days of the order.  The following information for each potential opt-in plaintiff shall be included:  name, last known home or residence address, and personal email address, if known to Chipotle;

6.      To the extent Plaintiffs' Motion for Conditional Certification seeks approval of the language provided in their proposed Notice, this Court recommends the Motion be **GRANTED** to the extent the language is consistent with this Report and Recommendation, and to the extent the parties meet, confer, and agree on language that addresses Chipotle's objections;

7.      To the extent Plaintiffs' Motion for Conditional Certification seeks court-assisted notice, this Court recommends the Motion be **GRANTED** as follows:

a.      Within fourteen (14) days of receipt of the fully useable electronic list or database from Chipotle, Plaintiffs shall issue the proposed Notice and Consent to Join, consistent with this Report and Recommendation if adopted and consistent with the parties' subsequent agreement during a meet-and-confer process, to all potential opt-in plaintiffs making up the FLSA Class by first class mail to the last known home or residential address of each potential opt-in plaintiff, in a #10 envelope with the following conspicuous language placed on the front of the envelope "COURT-ORDERED NOTICE OF LAWSUIT. DEADLINE TO RESPOND: [insert deadline]";

b.    The Consent to Join mailed to each potential opt-in plaintiff shall be printed on yellow paper and shall be accompanied by a #9 postage pre-paid Business Reply Envelope;

c.    Plaintiffs are granted leave to send an email to each potential opt-in plaintiff for whom Chipotle has provided an email address no earlier than seven (7) days prior to mailing the Notice and Consent to Join to each potential opt-in plaintiff, notifying each such person that an important letter will be coming to them by first class mail concerning their potential right to opt-in to this lawsuit;

d.    Plaintiffs are granted leave to establish and publish, through Rust, an Internet website, in both English and Spanish, for potential opt-in plaintiffs to read the Notice, submit Consents to Join electronically, receive updates about the case, and otherwise communicate with class counsel;

e.    Chipotle shall post a copy of the Notice, in Spanish and English, in an appropriate, conspicuous, visible and accessible place at each of its restaurants, where it can be seen easily by currently employed putative Class members;

f.    All potential opt-in plaintiffs shall have ninety (90) days from the date of mailing the Notice and Consent to Join to "opt-in" to this lawsuit (the "Opt-In Period");

g.    All signed Consents to Join will be deemed to have been filed with this Court on the date that they are stamped as received by Rust, and Rust will

send .pdf copies of all signed Consents to Join to lead counsel, who will

file them electronically on the docket weekly on a rolling basis, and with

all Consents to Join filed no later than fourteen (14) days after the end of

the 90-day Opt-In Period; and

h.     Any signed Consent to Join inadvertently or mistakenly sent by a potential

opt-in plaintiff directly to any of the Plaintiffs' counsel shall be deemed to

have been filed with this Court on the date received by Plaintiffs' counsel

from such potential opt-in plaintiff.

8.     Plaintiffs' Motion for Conditional Certification is **DENIED** in all other respects.

Dated: April 10, 2014

_s/Steven E. Rau_____
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 24, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.