# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Marcus Harris, Julius Caldwell, DeMarkus Hobbs, and Dana Evenson, on behalf of themselves and all others similarly situated, | Case No. 13-cv-1719 (SRN/SER) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Chipotle Mexican Grill, Inc., | |
| Defendant. | |

Kent M. Williams, Williams Law Firm, 1632 Homestead Trail, Long Lake, MN 55356; Kyle Bachus and Karen O'Connor, Bachus & Schanker, LLC, 899 Wynkoop Street, Suite 700, Denver, CO 80202; and Adam S. Levy, Law Office of Adam S. Levy, LLC, P.O. Box 88, Oreland, PA 19075; for Plaintiffs.

Jennifer M. Robbins, Robins, Kaplan, Miller & Ciresi LLP, 2800 LaSalle Plaza, 800 LaSalle Avenue, Minneapolis, MN 55402; John K. Shunk and Andrew A. Smith, Messner Reeves LLP, 1430 Wykoop Street, Suite 300, Denver, CO 80202; and Richard J. Simmons, Sheppard Mullin Richter & Hampton LLP, 333 South Hope Street, Forty-Third Floor, Los Angeles, CA 90071, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on Defendant's Objections [Doc. No. 93] to the April 10, 2014 Report and Recommendation ("R & R") on Plaintiffs' Motion for Conditional Collective Action Certification.  The Magistrate Judge recommended that the motion be granted in part and denied in part.  For the reasons set forth below, Defendant's objections are sustained in part and overruled in part, and the Court adopts the R & R in part.

## II.      BACKGROUND

The factual and procedural background of Plaintiffs' case is well documented in the

Magistrate Judge's R & R and is incorporated herein by reference.[1]  In this lawsuit,

Plaintiffs Marcus Harris, Julius Caldwell, DeMarkus Hobbs, and Dana Evenson

(collectively, "Plaintiffs") brought claims, on behalf of themselves and all others

similarly situated, against Defendant Chipotle Mexican Grill, Inc. ("Defendant") pursuant

to the Fair Labor Standards Act, 29 U.S.C. §§ 201–219, and the Minnesota Fair Labor

Standards Act, Minn. Stat. §§ 177.21–177.35.[2]  (Consolidated Am. Class Action Compl.

[Doc. No. 31] ("Am. Compl.") ¶ 1.)  Plaintiffs allege that Defendant has a company-wide

policy of requiring hourly-paid employees to work "off the clock" and without pay, and

they seek to recover allegedly unpaid overtime compensation and other wages.  (See id.

¶¶ 3–4.)

### A.      Defendant's Business

Defendant operates more than 1,500 Mexican food restaurants, in 43 states and the

District of Columbia, as well as internationally.  (Gottlieb Decl. [Doc. No. 50] ¶¶ 4, 7.)

Defendant's domestic restaurants are divided into seven geographic regions, and regional

directors or executive team directors are responsible for the operations of the restaurants

within their region.  (Id. ¶¶ 8–9.)  The staffing in each restaurant may include, in order of

descending authority, a general manager, one or more apprentice managers, one or more

---

[1]      The Court recites background facts only to the extent necessary to rule on
Defendant's objections.

[2]      Plaintiffs Hobbs and Evenson originally brought a separate lawsuit against
Defendant, Hobbs v. Chipotle Mexican Grill, Inc., No. 13-cv-2738 (SRN/SER), that was

service managers, one or more kitchen managers, and 15 to 35 crew members.  (<u>Id.</u> ¶ 13.)

Service managers, kitchen managers, and crew members are paid on an hourly basis.  (<u>Id.</u>

¶ 18.)  Defendant currently employs more than 40,000 hourly employees in the United

States, approximately 1,600 of whom work in Minnesota.  (<u>Id.</u> ¶ 17.)  However, in any

given year, Defendant employs roughly 90,000 hourly employees in the United States.

(<u>Id.</u>)

Defendant has a formal "timekeeping/time punch policy," which states that "[a]ll

hourly employees are paid for all time worked.  This is the law and Chipotle's policy."

(<u>Id.</u>, Ex. 1 (Crew Handbook), at 22; id., Ex. 3 (Restaurant Management Handbook), at

19.)[3]  It also states that "[h]ourly employees must always work on the clock, not 'off the

clock'."  (<u>Id.</u>, Ex. 1 (Crew Handbook), at 23; <u>id.</u>, Ex. 3 (Restaurant Management

Handbook), at 20.)[4]  In addition, the policy provides a procedure for editing the time

recorded in the timekeeping system.  (<u>See id.</u>, Ex. 1 (Crew Handbook), at 23–24 ; <u>id.</u>, Ex.

3 (Restaurant Management Handbook), at 20–22.)[5]  Defendant's timekeeping system,

---

ordered to be consolidated with the present action on October 16, 2013 [Doc. No. 25].
[3]      This language is quoted from the current version of Chipotle's Crew Handbook and Restaurant Management Handbook, which have been in effect since April 2012. (<u>See</u> Gottlieb Decl. ¶¶ 24, 27.)  The previous versions, which were in effect between January 2011 and April 2012, contain similar language—i.e., employees "must be paid for all time worked."  (<u>See</u> <u>id.</u> ¶¶ 26, 29; <u>id.</u>, Ex. 2, at 20; <u>id.</u>, Ex. 4, at 19.)
[4]      Again, this language is quoted from the current version of Chipotle's Crew Handbook and Restaurant Management Handbook, which have been in effect since April 2012.  (<u>See</u> Gottlieb Decl. ¶¶ 24, 27.)  The previous version of the Crew Handbook contains similar language—i.e., "As an employee, you should be clocked in at all times while working in our restaurants.  You are never to work 'off the clock.'"  (<u>See</u> <u>id.</u> ¶ 26 & Ex. 2, at 20.)
[5]      The previous versions of the Crew Handbook and Restaurant Manager Handbook also contain procedures for editing time punches.  (<u>See</u> <u>id.</u> ¶¶ 26, 29; <u>id.</u>, Ex. 2, at 20; <u>id.</u>,

called "Aloha," records the hourly-employees' time.  (Id. ¶ 33.)  This system

automatically re-sets at 12:30 a.m., which has the effect of clocking out any employee

who was clocked in when the re-set occurred.  (Id. ¶ 41.)

### B.    The Named Plaintiffs and Their Allegations

The named Plaintiffs are each current or former hourly-paid employees at

Defendant's Crystal, Minnesota restaurant.  (See Supplemental Harris Decl. [Doc. No.

64] ¶¶ 2–3; Supplemental Caldwell Decl. [Doc. No. 63] ¶ 2; Hobbs Decl. [Doc. No. 39]

¶¶ 3–5; Evenson Decl. [Doc. No. 40] ¶¶ 3–5; Gottlieb Decl. ¶¶ 20–23.)[6]  While Plaintiffs

Harris and Hobbs were employed solely as crew members, Plaintiffs Caldwell and

Evenson were both employed first as crew members and later as kitchen and service

managers.  (See Supplemental Harris Decl. ¶ 3; Supplemental Caldwell Decl. ¶¶ 3–5;

Hobbs Decl. ¶ 5; Evenson Decl. ¶ 5; Gottlieb Decl. ¶¶ 20–23.)  As stated in their

Amended Complaint, Plaintiffs allege that, in order to reduce its payroll budget,

Defendant "maintains a company-wide policy of not paying hourly-paid restaurant

employees for all time worked, and encouraging its general managers to require that work

be performed off the clock."  (Am. Compl. ¶ 25.)  Plaintiffs further allege that Defendant

implements this policy by setting payroll budgets such that they can only be met if hourly

employees work off the clock, and by rewarding general managers for staying within

---

Ex. 4, at 19.)

[6]     The declarations submitted by Plaintiffs Hobbs and Evenson do not identify the
location of the restaurant at which they were employed.  However, the Declaration of
David Gottlieb, submitted by Defendant in opposition to Plaintiffs' motion, confirms that
each of the named Plaintiffs was, or is, employed only at Defendant's Crystal, Minnesota
restaurant.  (See Gottlieb Decl. ¶¶ 20–23.)  Plaintiffs do not dispute this fact.

their payroll budget. (Id. ¶ 26.) Therefore, according to Plaintiffs, hourly employees are required to punch out (or are automatically punched out by Defendant's timekeeping system) although they must continue working. (Id. ¶ 29.) Plaintiffs claim that these directives are issued from Defendant's corporate offices in Colorado and are carried out by general managers at its restaurants nationwide. (Id. ¶ 32.) Finally, Plaintiffs allege that they are similarly situated to other putative members of the collective action because they:

> (a) worked for Chipotle during the applicable time period; (b) performed the same or similar duties; (c) had limited or no administrative responsibilities; (d) were and are not professionals within the meaning of the FLSA; and (e) were required to work off the clock, without compensation.

(Id. ¶ 56.)

## C.    Plaintiffs' Motion

Plaintiffs filed their motion for conditional collective action certification on October 23, 2013, seeking conditional certification of the following class:

> All current and former hourly-paid restaurant employees of Chipotle Mexican Grill, Inc. who, on or after [July 2, 2010],[7] were automatically punched off the clock and continued to work, or who otherwise worked "off the clock," resulting in non-payment of regular wages or overtime wages.

(Mem. in Supp. of Pls.' Mot. for Conditional Collective Action Certification and for

---

[7]    Plaintiffs' moving papers use October 23, 2010—three years prior to the filing of Plaintiffs' motion for conditional certification—as the relevant date. (See Pls.' Mem. at 1.)  However, both the Amended Complaint and Plaintiffs' reply brief use July 2, 2010—three years prior to the filing of the original Complaint. (See Am. Compl. ¶ 54; Reply Mem. in Supp. of Pls.' Mot. for Conditional Collective Certification and for Judicial Notice to Class [Doc. No. 62], at 25.)

Judicial Notice to Class [Doc. No. 35] ("Pls.' Mem."), at 1–2.)  In support of their motion, they each submitted a declaration stating that they had been "forced to work off the clock."  (Harris Decl. [Doc. No. 37] ¶ 6; Caldwell Decl. [Doc. No. 38] ¶ 6; Hobbs Decl. ¶ 6; Evenson Decl. ¶ 6.)  Plaintiffs Harris and Hobbs stated that they were not compensated for time worked after being made to punch out at the end of a shift, that Defendant's timekeeping system would automatically punch them out even when they continued working, that Defendant would cut their hours for the following week if they complained about not being paid for all of the hours they worked, and that they witnessed other employees being subjected to the same treatment.  (Harris Decl. ¶¶ 7–10; Hobbs Decl. ¶¶ 7–10.)  Plaintiffs Caldwell and Evenson also stated that they were not compensated for time worked after being made to punch out at the end of a shift, that Defendant's timekeeping system would automatically punch them out even when they continued working, and that they witnessed other employees being subjected to the same treatment.  (Caldwell Decl. ¶¶ 7–9, 11; Evenson Decl. ¶¶ 7–9, 11.)  They also stated that Defendant's general and apprentice managers told them to "do what is necessary to stay within payroll budget, including requiring hourly-paid employees to punch out early and work off the clock."  (Caldwell Decl. ¶ 10; see Evenson Decl. ¶ 10.)

In addition to these declarations, Plaintiffs submitted copies of three complaints that were filed with the Minnesota Department of Labor & Industry (collectively, the "DOLI Complaints").  (See Williams Aff. [Doc. No. 36] ¶ 4 & Ex. C.)  The first complaint was submitted by an employee at Defendant's Rochester, Minnesota location.  (Id., Ex. C.)  The employee states only that he was owed money for time worked as

detailed on his pay stub.  (See id.)  The second complaint was submitted by an employee

at Defendant's Crystal, Minnesota location who stated that he was forced to work off the

clock on one occasion as punishment and was not paid for all hours worked.  (See id.)

The third complaint was submitted by an employee at Defendant's Burnsville, Minnesota

restaurant who stated that she was being forced to work off the clock.  (See id.)  Plaintiffs

also filed a Notice of Filing Consent to Join Forms showing that the named Plaintiffs,

along with three other current or former employees of Defendant—Leah Turner, Ryan

Cox, and Todd Ayotte—had consented to join the lawsuit.  (See Pls.' Notice of Filing

Consent to Join Forms Pursuant to the FLSA [Doc. No. 32].)

Plaintiffs argue that, through this evidence, they met their "minimal burden" of

establishing a "colorable basis" for their claim that the putative collective action members

were the victims of a single decision, policy, or plan.  (See Pls.' Mem. at 2, 8.)  They

contend that Defendant's employees are "routinely" required to work off the clock,

without pay, pursuant to a timekeeping system that clocks them out each evening even if

they are still working and under other circumstances, such as during training.  (Id. at 14–

15.)  They also argue that, to be considered "similarly situated," they need not be

identical and, here, "[o]nly minor, inconsequential differences are likely to exist among

the members of the proposed Class."  (Id. at 15.)  Thus, Plaintiffs contend that variations

in job duties or in the amount of damages are not relevant.  (See id. at 13.)

Finally, Plaintiffs argue that judicial notice is appropriate and request that

Defendant be ordered to provide Plaintiffs' counsel with a list of all putative collective

action members, including each member's name, residence address, telephone numbers,

email address, job title and dates of employment with Defendant, location of employment with Defendant, employee number, date of birth, and social security number.  (<u>Id.</u> at 16–17.)  Plaintiffs ask the Court to order notice to be delivered via email and first-class mail, as well as posted on a website and at each of Defendant's restaurants.  (<u>Id.</u> at 18–19.)

In response, Defendant argues that the four named Plaintiffs have failed to establish the existence of an unlawful policy, plan, or decision applicable to the entire collective, or that they are similarly situated to a nationwide collective of over 100,000 employees.  (Def.'s Opp. to Pls.' Mot. for Conditional Collective Action Certification [Doc. No. 49] ("Def.'s Opp."), at 1, 19.)  Rather, Defendant argues that its policy is to pay hourly employees for all time worked, and that Plaintiffs have at most demonstrated that unnamed managers at a single store violated that policy.  (<u>See id.</u> at 1.)  Defendant also argues that the proposed class consists of two groups—crew members and managers—who are not similarly situated to each other because the hourly-paid managers are responsible for ensuring that the crew members are paid properly.  (<u>See id.</u> at 34–35.)  Finally, Defendant argues that Plaintiffs' proposed notice and distribution process should be rejected because Plaintiffs request too much personal information regarding each potential collective action member, requiring four forms of notice is unreasonable, the notice does not accurately describe the lawsuit, and notice should only be distributed to individuals employed by Defendant within three years of the Court's authorization of notice.  (<u>Id.</u> at 37, 49–50.)

In conjunction with its opposition memorandum, Defendant submitted the declaration of David Gottlieb, Defendant's Director of Compliance and Projects [Doc.

No. 50]; the declaration of Joel Chrisman, Defendant's Executive Director of IT and Training [Doc. No. 51]; as well as seven declarations of current and former hourly-paid employees (both crew members and managers) of Defendant [Doc. Nos. 52-1, 52-2, 52-3, 52-4, 52-5, 52-6, 52-7]. These employees—at least six of whom work, or worked, at Defendant's Crystal, Minnesota location[8]—state that they were never instructed or allowed to work off the clock and that they have been paid for all time worked. (See Beebe Decl. [Doc. No. 52-1] ¶¶ 5, 12; Borja-Granizo Decl. [Doc. No. 52-2] ¶¶ 5, 13; Ceron Decl. [Doc. No. 52-3] ¶¶ 5, 11; Hawkins Decl. [Doc. No. 52-4] ¶¶ 5, 11; Hernandez Decl. [Doc. No. 52-5] ¶¶ 5, 12; Martinez-Herrera Decl. [Doc. No. 52-6] ¶¶ 5, 13; Reyes-Jiminez Decl. [Doc. No. 52-7] ¶¶ 5, 12.)

In their reply brief, Plaintiffs reiterate their argument that the standard for conditional certification is lenient and that the Court is not to make any credibility determinations or to weigh the merits of their claims. (See Reply Mem. in Supp. of Pls.' Mot. for Conditional Collective Certification and for Judicial Notice to Class [Doc. No. 62] ("Pls.' Reply"), at 6–7.) Plaintiffs claim that, at this stage, Defendant's written policy is irrelevant because there is contrary evidence of an unwritten, unlawful policy of requiring off-the-clock work. (See id. at 8–11.) Moreover, Plaintiffs argue, conditional certification of a nationwide collective action is appropriate "based on relatively little

---

[8] In the Declaration of Angelina Martinez-Herrera, Ms. Martinez-Herrera states that she is employed as a service manager at Defendant's "'Silver Lake' location in Minneapolis, Minnesota." (Martinez-Herrera Decl. [Doc. No. 52-6] ¶ 2.) However, she discusses her experience at the Crystal, Minnesota location. (See id. ¶¶ 5, 14.) Thus, it is not clear to the Court whether Ms. Martinez-Herrera's use of "Silver Lake" is synonymous with "Crystal."

evidence" and is not "inherently unmanageable."  (Id. at 11, 13.)  Plaintiffs claim that they are similarly situated because they are non-exempt, hourly-paid employees, and the fact that some are hourly-paid managers versus crew members should not be considered until the second certification stage.  (See id. at 16–17.)  Finally, Plaintiffs argue that their proposed notice plan should be approved because they need the requested information to locate the potential collective action members, there is nothing improper about providing notice to all employees who "may" have a claim, and notice should be provided to all persons who were employed by Defendant within three years of the date the Complaint was filed.  (See id. at 21–25.)  They assert that any issues regarding the exact language of the notice can be resolved in a meet-and-confer.  (Id. at 25–26.)

Plaintiffs rely on their previously-submitted evidence, as well as supplemental declarations of two of the named Plaintiffs stating that they work, or worked, the night shift at Defendant's Crystal, Minnesota location; were required to work past Aloha's 12:30 a.m. re-set without pay; witnessed other current or former employees at the Crystal location being subjected to the same treatment; and believed, based on conversations with other individuals, that employees at other locations were treated similarly.  (See Supplemental Caldwell Decl. ¶¶ 2, 7, 10–11, 13–14; Supplemental Harris Decl. ¶¶ 2, 5, 8, 17–18.)  Plaintiffs also submitted the declarations of two more former hourly-paid employees of Defendant (Leah Turner and Ryan Cox), one of whom was employed at multiple locations in Colorado, and the other at the Crystal, Minnesota location.  (See Turner Decl. [Doc. No. 65] ¶¶ 2–5; Cox Decl. [Doc. No. 66] ¶¶ 2–3.)  Like the named Plaintiffs, these individuals state that they were required to work off the clock, without

pay, after the 12:30 a.m. re-set; that they were told they would be disciplined if they asked to be paid for that time; that they witnessed other employees being treated the same way; and that, based on conversations they had with other individuals, they believed that employees at other locations were treated the same.  (See Turner Decl. ¶¶ 6–10, 14; Cox Decl. ¶¶ 4–6, 8, 10–11.)  Ms. Turner, who worked as a general manager for a period of time, also stated that she was told by upper management that, due to budget restraints, employees working past 12:30 a.m. should not be clocked back in, and that several general managers in Colorado discussed the fact that they were forced to make people work off the clock and without pay.  (Turner Decl. ¶¶ 15–16.)

Plaintiffs also point to several court filings in other cases:  three other FLSA lawsuits against Defendant (not all of which contain allegations that specifically state that employees were required to work off the clock), a declaration submitted by Defendant's Director of Security, Safety, and Risk in support of Defendant's notice of removal in another case, approved notice in a case in which it was alleged that "apprentices" were not paid appropriate overtime amounts, and an order denying the defendant's motion for an interlocutory appeal of a district court order granting conditional certification in another case.  (See Williams Decl. [Doc. No. 67], Exs. A–C, E–G.) Finally, Plaintiffs also submitted copies of Internet postings and an article about the Aloha system.  (See id., Exs. D & H.)  The Internet postings contain statements from anonymous former employees in Victorville, California and Peoria, Arizona who state that one should "[e]xpect to work off the clock when closing Grill, or Prep" and "been told to work off the clock several times," respectively.  (Id., Ex. D at 1–2.)  A third posting from someone

11

who is identified neither as an employee or former employee states: "Are the powers that
be at Chipotle aware that employees have to work past 12:30am but for some reason the
time clock automatically punches them out at 12:30am? . . . It happens routinely in a
Chipotle in Chicago." (Id., Ex. D, at 3.)

After Plaintiffs submitted these additional exhibits with their reply brief,
Defendant requested permission to file a sur-reply, arguing that Plaintiffs' additional
evidence was available at the time they filed their moving papers and that Defendant was
prejudiced by not being able to address the new evidence and arguments in its opposition
brief. (See Def.'s Letter dated Jan. 3, 2014 [Doc. No. 70].) Plaintiffs opposed the
request. (See Pls.' Letter dated Jan. 6, 2014 [Doc. No. 71].) This Court denied
Defendant's request, stating that "Defendant does not adequately articulate the prejudice
it claims, and such prejudice is not evident from Plaintiffs' reply. Defendant will have a
full opportunity to be heard at oral argument on January 24, 2014." (Order dated Jan. 6,
2014 [Doc. No. 72].)

At the hearing on January 24, Defendant referred to the depositions taken by
Plaintiffs of several of Defendant's employees, as well as multiple "demonstrative"
exhibits. (See Tr. of Jan. 24, 2014 Motions Hr'g [Doc. No. 85], at 22–23, 29–35, 41, 45.)
In addition, the Magistrate Judge requested supplemental briefing on Plaintiffs' counsel's
potential conflicts of interest. (See id. at 50.) The parties each submitted letter briefs to
the Court. Plaintiffs argued that Defendant lacks standing to seek disqualification of
Plaintiffs' counsel because it is not a former or current client of Plaintiffs' counsel, and
that disqualification is not warranted because there is only speculation of a conflict and

no actual ethical breach.  (See Pls.' Letter dated Jan. 31, 2014 [Doc. No. 80].)  Defendant,

on the other hand, argues that Plaintiffs' counsel has a conflict of interest because they

represent Leah Turner in multiple lawsuits and seek to resolve the same claims in

multiple proceedings.  (See Def.'s Letter dated Jan. 31, 2014 [Doc. No. 81].)  Along with

its letter, Defendant submitted eleven exhibits, including two deposition transcripts (Exs.

1 & 2), a declaration of Defendant's Business Intelligence Manager stating that there

were between 66,000 and 100,000 instances during the proposed class period in which

Defendant's records reflected time worked after 12:30 a.m. by hourly-paid employees

(Ex. 3), and several documents relating to other matters involving Ms. Turner (Exs. 4–

11).

## D.    The Report and Recommendation

The Magistrate Judge issued his R & R on April 10, 2014.  He first reviewed the

various pieces of evidence submitted by the parties and determined that the evidence

submitted by Plaintiffs in support of their motion, and by Defendant in response to the

motion, are appropriately considered at the conditional certification stage.  (Report and

Recommendation dated Apr. 10, 2014 [Doc. No. 87] ("R & R"), at 9.)  As for the remaining

evidence, the Magistrate Judge determined that he would consider the documents filed with

Plaintiffs' reply brief.  (Id. at 10.)  He also stated that he would consider the following

documents submitted by Defendant either prior to, or at, the conditional certification motion

hearing because they were publically-filed documents:  the opinion in Lou v. Ma Labs.,

Inc., No. C 12-05409 WHA (N.D. Cal. Jan. 8, 2014), regarding disqualification of counsel;

and a complaint filed by Ms. Turner in another matter.  (See id. at 10–11.)  However, he

13

decided not to consider any of the other documents presented at the hearing because they were not submitted to, or accepted by, the Court as evidence.  (See id. at 11.)  He also declined to consider the documents included with Defendant's letter briefing regarding the disqualification of counsel because the Court had not contemplated the submission of exhibits.  (See id. at 11–12.)

In regard to the merits of Plaintiffs' motion, the Magistrate Judge concluded that Plaintiffs had demonstrated a colorable basis that they are similarly situated and were the victims of a single decision, policy, or plan, albeit a narrower common policy (relating only to those hourly-paid employees who worked the closing shift) than that proposed by Plaintiffs.  (Id. at 15.)  The Magistrate Judge concluded that Plaintiffs are similarly situated because they are—or were—hourly employees in Defendant's restaurants, were required to work off the clock when Aloha punched them out at 12:30 a.m. or were required to punch out even though they continued to work, and were prohibited from seeking pay for the hours worked after they were punched out.  (See id. at 16.)  He also concluded that whether there is an intra-class conflict sufficient to defeat certification should be evaluated at the decertification stage.  (Id. at 16–17.)

As for a common policy, the Magistrate Judge concluded that "the pressure that all Chipotle restaurants must stay within the budget goals, set on a corporate level, created a corporate policy to require employees to work off the clock during closing shifts to meet those goals."  (Id. at 18.)  Because he found Plaintiffs' evidence to be focused on off-the-clock work during closing shifts, however, he narrowed the broad class definition proposed

by Plaintiffs, which had included not only hourly employees who worked off the clock after being punched out by Aloha, but also those who "otherwise worked 'off the clock.'"  (Id. at 19.)  The Magistrate Judge, therefore, recommended conditional certification of the following collective action:

> All current and former hourly-paid restaurant employees of Chipotle Mexican Grill, Inc. who, on or after October 23, 2010, were automatically punched off the clock by the Aloha timekeeping system at 12:30 a.m. and continued to work, or who otherwise worked "off the clock" during closing shifts, resulting in non-payment of regular wages or overtime wages.

(Id. at 33–34.)

In so holding, the Magistrate Judge relied on the declarations submitted by the named Plaintiffs, Ms. Turner, and Mr. Cox, as well as the declaration of Defendant's Director of Security, Safety, and Risk.  (See id. at 17–18.)  While he found this evidence to be sufficient to support Plaintiffs' motion, the Magistrate Judge went on to consider whether Plaintiffs' unsworn evidence was relevant to the more narrow definition.  (Id.)  He concluded that the DOLI complaints were not probative because they were not based on personal knowledge and did not refer to the closing shift, that the court complaints and documents regarding notice in cases pending in other districts were not relevant because they are not specific to off-the-clock work during closing shifts, and that the Internet posting from Peoria, Arizona was not relevant because it did not refer to off-the-clock work during closing shifts.  (See id. at 21–23.)  However, the Magistrate Judge did find that the other two Internet postings (from Victorville, California and Chicago, Illinois)—despite being difficult

15

to authenticate—would be considered because they refer to off-the-clock work during the closing shift.  (See id. at 23–24.)

After determining that Plaintiffs had established a colorable basis for their collective action, the Magistrate Judge considered Defendant's argument that Plaintiffs' counsel must be disqualified based on their representation of Ms. Turner in other lawsuits.  (See id. at 24–25.)  The Magistrate Judge found that Lou was not applicable because it primarily addressed adequacy of counsel in the context of class certification under Rule 23 of the Federal Rules of Civil Procedure and that, at any rate, the issue would be more appropriately addressed at the decertification stage.  (See id. at 24–26.)  Even so, the Magistrate Judge determined that any potential conflicts have been resolved because Ms. Turner's FLSA case in Colorado was dismissed, and the other two cases (regarding misclassification and workers' compensation) are not related to the claims in the present action.  (See id. at 26.)  Therefore, the Magistrate Judge declined to disqualify Plaintiffs' counsel.  (Id. at 25.)  He also approved the named Plaintiffs as class representatives.  (Id. at 34.)

Finally, the Magistrate Judge determined that judicial notice is appropriate in this case.  (Id. at 28.)  He found that Defendant should be ordered to produce the names, email addresses, and last known addresses of potential plaintiffs, and that the requested four forms of notice were not unreasonably burdensome.  (See id. at 28–30.)  In addition, the Magistrate Judge found that the notice should cover a time period dating back to October 23, 2010, which is three years before Plaintiffs filed their notice of consent, and that notice should be provided to all current and former hourly employees of Defendant.  (Id. at 32–33.)

He also recommended that the parties engage in a meet-and-confer process to resolve any remaining issues with the contents of the notice.  (See id. at 31–33.)

## III.   DISCUSSION

### A.     Standard of Review

The parties dispute whether this Court should review the R & R de novo or for clear error.[9]  (See Objs. at 3; Resp. at 3.)  A magistrate judge's order on various pretrial matters is reviewed under a "clearly erroneous or contrary to law" standard of review.  28 U.S.C. § 636(b)(1)(A).  However, a magistrate judge's proposed findings of fact and recommendations for the disposition of certain matters, such as motions "to dismiss or to permit maintenance of a class action," are reviewed by the district judge de novo.  Id. § 636(b)(1)(A)–(C).  Because the R & R in this case deals with collective action certification, a de novo standard of review is appropriate.  See Thompson v. Speedway SuperAmerica LLC, No. 08-cv-1107 (PJS/RLE), 2009 WL 130069, at *1 (D. Minn. Jan. 20, 2009) (reviewing the magistrate judge's ruling on conditional certification de novo); Ray v. Motel 6 Operating, LP, No. 3-95-828, 1996 WL 938231, at *1 (D. Minn. Mar. 18,

---

[9]      The parties also dispute whether this Court may consider new evidence when conducting its review.  (See Def.'s Objs. to the Apr. 10, 2014 R & R on Pls.' Mot. for Conditional Collective Action Certification [Doc. No. 93], at 3; Pls.' Resp. to Def.'s Objs. to the Apr. 10, 2014 R & R [Doc. No. 95], at 3.)  As discussed below, this Court finds that conditional certification of a nationwide class is inappropriate in this case based on the evidence relied upon in the R & R.  To the extent that Defendant offers "new" evidence for this Court's consideration (e.g., deposition testimony or evidence of the number of instances in which Defendant's employees did record time worked after 12:30 a.m.), the Court finds that the evidence is contrary to that submitted by Plaintiffs and that the Court may not weigh the evidence at this stage.  Accordingly, the Court declines to consider that evidence, rendering the issue moot.

1996) (same).  Accordingly, the Court will review de novo those portions of the R & R to

which an objection is made and "may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C);

accord D. Minn. LR 72.2(b).

## B.    Objections

Defendant filed its objections to the R & R on May 12, 2014, and Plaintiffs

responded on May 27.  Defendant asserts that the Magistrate Judge erred in his

recommendation of conditional certification of a nationwide collective action.  (See

Def.'s Objs. to the Apr. 10, 2014 R & R on Pls.' Mot. for Conditional Collective Action

Certification [Doc. No. 93] ("Objs."), at 1.)  First, Defendant asserts that the R & R failed

to consider undisputed evidence.  (See id. at 4.)  Second, Defendant argues that there is

no colorable evidence of a nationwide unlawful scheme and that Plaintiffs are not

similarly situated.  (See id.)  Third, Defendant argues that the R & R should have

considered whether there is an intra-class conflict and whether Plaintiffs' counsel is

conflicted.  (See id.)  Finally, Defendant contends that judicial notice to individuals who

were employed by Defendant over three years ago is inappropriate.  (See id. at 15–16.)

This Court will address each objection in turn.

## 1.    Consideration of Evidence

Defendant first objects to the Magistrate Judge's refusal to consider all of the

evidence with which he was presented.  (See Objs. at 4.)  Defendant argues that whether

Plaintiffs have demonstrated a "colorable claim" should not be judged solely on the

evidence presented by Plaintiffs, but that Defendant's evidence should also be

considered.  (See id.)  According to Defendant, the Magistrate Judge should have considered the deposition testimony of the other Crystal, Minnesota restaurant employees that Defendant presented during oral argument and later filed.  (See id. at 5–6.)  In addition, Defendant argues that the Magistrate Judge should have considered the exhibits attached to its letter briefing on the conflict-of-interest issue.  (See id. at 7–8.)

As will be discussed in further detail below, this Court respectfully disagrees with the Magistrate Judge's finding that conditional certification of a nationwide class is appropriate in this case based on the evidence that the Magistrate Judge did consider. Rather, this Court finds that Plaintiffs' evidence presents a colorable claim that they were the victims of a common, unlawful policy only at the Crystal, Minnesota restaurant. Although some of Defendant's additional evidence pertains to practices at that restaurant (e.g., the deposition testimony) and to instances in which Defendant's employees did record time worked after 12:30 a.m., the Court may not engage in credibility determinations or otherwise weigh the evidence at this stage.  See Brennan v. Qwest Commc'ns Int'l, Inc., Civ. No. 07-2024 (ADM/JSM), 2008 WL 819773, at *3 (D. Minn. Mar. 25, 2008) (citation omitted) ("In determining whether Plaintiffs have come forward with evidence establishing a colorable basis for their claim . . . , the Court 'does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties at this initial stage.'").  Accordingly, this objection is overruled.

### 2.    Conditional Class Certification

Defendant next objects to the Magistrate Judge's recommendation of conditional certification for a nationwide collective action consisting of all hourly workers.  (See

Objs. at 9–14.)  The FLSA authorizes employees to bring a collective action against

employers to recover unpaid overtime.  29 U.S.C. § 216(b).  Unlike a Rule 23 class

action, no employee is a party to an FLSA collective action unless "'he gives his consent

in writing to become such a party and such consent is filed in the court in which such

action is brought.'"  Smith v. Heartland Auto. Servs., Inc., 404 F. Supp. 2d 1144, 1149

(D. Minn. 2005) (citation omitted).  "Courts have discretion, in 'appropriate cases,' to

facilitate the opt-in process by conditionally certifying a class and authorizing court-

supervised notice to potential opt-in plaintiffs."  Saleen v. Waste Mgmt., Inc., 649 F.

Supp. 2d 937, 939 (D. Minn. 2009) (quoting Hoffmann-La Roche Inc. v. Sperling, 493

U.S. 165, 169 (1989)).

        "To proceed with a collective action, Plaintiffs must demonstrate that they are

similarly situated to the proposed FLSA class."  Brennan, 2008 WL 819773, at *3.

Determining whether Plaintiffs are similarly situated to the proposed class requires a two-

step inquiry.  See Burch v. Qwest Commc'ns Int'l, Inc., 500 F. Supp. 2d 1181, 1186 (D.

Minn. 2007) (citations omitted).  "First, the court determines whether the class should be

conditionally certified for notification and discovery purposes."  Id. (citation and internal

quotation marks omitted).  "[T]he plaintiffs need only establish [at that time] a colorable

basis for their claim that the putative class members were the victims of a single decision,

policy, or plan."  Id. (citation and internal quotation marks omitted).  Determination of

class status at this stage is granted liberally because the court has minimal evidence for

analyzing the class.  Ray, 1996 WL 938231, at *2 (citation omitted).

After discovery is completed, the court conducts an inquiry into several factors if there is a motion to decertify. <u>Burch</u>, 500 F. Supp. 2d at 1186. These factors include: "[1] the extent and consequences of disparate factual and employment settings of the individual plaintiffs, [2] the various defenses available to the defendant that appear to be individual to each plaintiff, and [3] other fairness and procedural considerations." <u>Id.</u> (citation and internal quotation marks omitted). "If a class is decertified, opt-in class members are dismissed without prejudice, and the case proceeds only in the putative class representatives' individual capacities." <u>Keef v. M.A. Mortenson Co.</u>, No. 07-CV-3915 (JMR/FLN), 2008 WL 3166302, at *2 (D. Minn. Aug. 4, 2008).

Since the parties here have not completed discovery, this case is at the first step of the two-step inquiry.[10] Thus, the Court must determine only whether Plaintiffs have come forward with evidence establishing a colorable basis that the putative class members are victims of a single decision, policy, or plan. <u>Frank v. Gold'n Plump Poultry, Inc.</u>, Civ. No. 04-1018 (JNE/RLE), 2005 WL 2240336, at *2 (D. Minn. Sept. 14, 2005) (citation omitted). At this stage, "the Court 'does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties[.]'" <u>Brennan</u>, 2008 WL 819773, at *3 (citation omitted).

Defendant argues, first, that Plaintiffs have not demonstrated a colorable basis that Defendant has a nationwide policy to force off-the-clock work and, second, that its

---

[10] "Even in cases where the parties have engaged in some discovery, plaintiffs must show only a 'colorable basis' to achieve conditional certification under the first stage of review." <u>Lyons v. Ameriprise Fin., Inc.</u>, Civ. No. 10-503 (RHK/JJK), 2010 WL 3733565, at *3 (D. Minn. Sept. 20, 2010) (citation omitted).

hourly-paid managers are not similarly situated to its hourly-paid crew members.  (See

Objs. at 9–14.)  While this Court agrees that a nationwide class of Defendant's employees

is inappropriate, it finds that—for purposes of conditional certification—Plaintiffs have

demonstrated a colorable claim of a common, unlawful policy in regard to Defendant's

Crystal, Minnesota restaurant, and that Defendant's hourly-paid employees are similarly

situated regardless of their job title.

### a.    Common policy

As discussed above, the Magistrate Judge determined that Plaintiffs' evidence

demonstrated a colorable basis for their claim that Defendant has a nationwide corporate

policy of requiring its hourly-paid employees to work off the clock during closing shifts.

Defendant takes issue with this conclusion, arguing that "Plaintiffs must demonstrate a

'colorable basis' for their claim based on 'substantial evidence' and not mere allegations,"

and that Plaintiffs' evidence is insufficient to meet their burden.  (Objs. at 9.)  According to

Defendant, the present situation is more similar to the cases in this District in which the

courts have denied conditional certification.  (See id. at 12–13.)

The Court will first address the standard advocated by Defendant.  In its objections,

Defendant cites to Lyons v. Ameriprise Financial, Inc., Civ. No. 10-503 (RHK/JJK), 2010

WL 3733565 (D. Minn. Sept. 20, 2010), for the proposition that Plaintiffs must support their

claim with "substantial evidence."  (Objs. at 9.)  The court in Lyons, however, did not use

the term "substantial evidence," nor in its application of the conditional certification

standard did the court require "substantial evidence."  Rather, the court repeatedly

emphasized the lenient standard for conditional certification:

> Determination of class status at the notice stage is often liberally authorized
> since the court has minimal evidence for analyzing the class. . . . At the
> second stage, the court makes a factual determination whether the plaintiffs
> are indeed similarly situated based on more complete evidence and applying a
> stricter standard.
>
> . . . .
>
> [The plaintiff's] burden at [the first] stage is not onerous. . . . Because the
> court has minimal evidence, the first-stage determination is made using a
> fairly lenient standard.
>
> . . . .
>
> A colorable basis means that plaintiffs must come forward with something
> more than the mere averments in their complaint in support of their claim.

Lyons, 2010 WL 3733565, at *2–3 (internal citations, quotation marks, and brackets

omitted).  Although the court noted that the plaintiff had submitted declarations, deposition

excerpts, and interrogatory responses in support of her motion, the court determined that the

testimony (through declarations and deposition excerpts) of the named plaintiff and seven

opt-in plaintiffs that they were required to do work for which they were not paid was

"sufficient to establish a colorable basis for [the plaintiff's] claims."  Id. at *3.

Defendant also relies on the U.S. Supreme Court's decisions in Bell Atlantic Corp.

v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), for the

proposition that "if Plaintiffs' evidence is merely consistent with liability, rather than

plausibly demonstrating liability, the evidence cannot be 'colorable.'"  (Objs. at 9.)

However, as Defendant acknowledges, those opinions clarified the standard to be applied

in determining whether a complaint can survive a motion to dismiss, not whether a plaintiff can prevail on a motion for conditional certification of a collective action. (<u>See id.</u>) Accordingly, those cases are inapposite, and Defendant's argument for a heightened standard fails.

That being said, the Court finds that Plaintiffs' evidence is insufficient to establish a colorable basis for a <u>nationwide</u> collective action even under the lenient conditional certification standard. The R & R bases the finding of a corporate-wide policy to underpay employees on evidence purportedly showing that labor budgets are set at the corporate level and that pressure to stay within budget was a corporate policy. (R & R, at 17.) However, as Defendant points out, five of the six declarations upon which the Magistrate Judge relied on the latter point concern conduct only at Defendant's Crystal, Minnesota restaurant. (Objs. at 10.) Only Ms. Turner's declaration avers to facts pertaining to other locations, and those locations are limited to a few restaurants in Colorado. (<u>See id.</u>) The only other evidence relied upon by the Magistrate Judge consists of the Internet postings from individuals (one who is anonymous and one who does not claim to have worked at one of Defendant's restaurants) located in Victorville, California and Chicago, Illinois, although they do not identify a particular restaurant. (R & R, at 23–24.) Even assuming that both of these postings were made by current or former employees with personal knowledge, and considering them along with the declarations, "[s]uch a limited sampling of employees does not support the Plaintiffs' assertion of widespread violations resulting from a common policy or plan." <u>West v.</u>

24

Border Foods, Inc., Civ. No. 05-2525 (DWF/RLE), 2006 WL 1892527, at *6 (D. Minn.

July 10, 2006) (citations omitted).  It does, however, support the assertion of violations

resulting from a common policy at the Crystal, Minnesota location.  Accordingly, this

Court will approve a collective action on that basis.

### b.      Similarly situated

In light of the colorable evidence of this common, unlawful policy, the Court finds

that Plaintiffs are similarly situated.  The term "similarly situated" is not defined by the

FLSA, but it "typically requires a showing that an employer's commonly applied

decision, policy, or plan similarly affects the potential class members, and inflicts a

common injury on plaintiffs and the putative class."  Keef, 2008 WL 3166302, at *2

(citation omitted).  "This decision lies within the Court's sound discretion."  Id. (citation

omitted).

As discussed above, Plaintiffs have presented evidence of a common policy to

require hourly-paid employees to work off the clock, and without pay, during closing

shifts.  And, as noted in the R & R, Plaintiffs are all current or former hourly-paid

employees of Defendant who worked the closing shift and claim to have been the victims

of that policy.  Despite these commonalities among Plaintiffs, Defendant argues that the

hourly-paid managers and crew members are not similarly situated because the managers

could be held accountable for failing to ensure the accuracy of time records and so will

deny forcing the crew members to work off the clock.  (See Def.'s Objs. at 13–14.)

According to Defendant, these circumstances create an "irreconcilable conflict," and—

contrary to the Magistrate Judge's determination—the Court need not wait until the

decertification stage to resolve this issue because there is no conflicting evidence.  (See id.)  In response, Plaintiffs argue that the hourly-paid managers cannot be held liable under the FLSA because they have no economic or operational control over the employment relationship and that, to the extent they directed crew members to work off the clock, they did so in compliance with Defendant's unlawful policy.  (See Pls.' Resp. at 10–11.)  Therefore, Plaintiffs assert, the hourly-paid managers are similarly situated to the crew members because they were subjected to the same unlawful policy.  (See id. at 11–12.)  They also argue that the issue is more appropriately resolved at the decertification stage because there are disputed issues of fact.  (See id. at 12.)

This Court agrees with the Magistrate Judge and Plaintiffs that the evidence presented by Plaintiffs is sufficient for conditional certification of a collective action that includes both hourly-paid managers and crew members.  "[N]umerous courts have . . . observed that disparate factual and employment settings of the individual plaintiffs should be considered at the second stage of analysis rather than at the first stage."  Knaak v. Armour-Eckrich Meats LLC, 991 F. Supp. 2d 1052, 1060 (D. Minn. 2014) (citation and internal quotation marks omitted).  Although Defendant points to multiple cases that it claims stand for the proposition that managers and crew members are not similarly situated, those opinions were rendered under circumstances in which significant discovery had been conducted.  See Lucas v. Jerusalem Cafe, LLC, 721 F.3d 927, 930 (8th Cir. 2013) (affirming an FLSA verdict against a managerial employee)[11]; White v.

_____

[11]      This Court notes that, not only was the opinion in Lucas rendered in the context of a post-trial motion, but it also does not discuss the issue before this Court—i.e., whether

Osmose, Inc., 204 F. Supp. 2d 1309, 1313 n.2 (M.D. Ala. 2002) (stating that, because "[the plaintiff] has had extensive discovery with respect to [the defendant's] policies regarding the pay provisions of employees . . . , the court deems it necessary to carefully consider the submissions of the parties . . . rather than merely relying on the handful of affidavits that support [the plaintiff's] position" on the motion for conditional certification).  Here, minimal discovery has been completed related to the hourly-paid managers' responsibilities and the extent of their control over the timekeeping processes. Accordingly, the Court finds that Plaintiffs—at least at this stage—are similarly situated to the potential collective action members.

### 3.    Plaintiffs' Counsel

Defendant next argues that Plaintiffs' counsel is conflicted and should be disqualified.  (See Objs. at 14–15.)  The sole argument in Defendant's objections appears to be that, because Plaintiffs' counsel represents Ms. Turner in this lawsuit and in a previously-filed workers' compensation lawsuit, they may use the wage claims to leverage settlement of the workers' compensation claims.  (See id.)  However, this Court has determined that the appropriate scope of this collective action extends only to employees of Defendant's Crystal, Minnesota restaurant.  Because Ms. Turner was not employed at that location, she will not qualify as a member of the collective action in this

_____

managers and other employees are similarly situated.  The only issue before the Eighth Circuit was whether the FLSA applies to employers who hire unauthorized aliens.  Lucas, 721 F.3d at 930.

case, and the alleged conflict of which Defendants complain will disappear.

Accordingly, Defendant's objection is overruled as moot.

### 4.    Judicial Notice

Finally, Defendant asserts that the Magistrate Judge erred in recommending that notice be provided to individuals employed by Defendant since October 23, 2010, which—at the time the R & R was issued—was a date three-and-a-half years in the past. (Objs. at 15–16.)  Defendant argues that a class member can assert a FLSA claim dating back to, at most, three years prior to the date the member opts into the class, and that any older claims are time-barred.  (See id.)  Accordingly, Defendant contends that notice should be sent only to employees who worked for Defendant within three years of the date of the Court's order approving notice.  (See id. at 16.)  Plaintiffs, on the other hand, argue that beginning the notice period three years prior to the filing of their motion for conditional certification is appropriate because members whose claims are time-barred may seek equitable tolling.  (Pls.' Resp. at 13.)  In fact, Plaintiffs assert, the time it takes to adjudicate a motion for conditional certification may even warrant such relief.  (See id.)

This Court finds that the language of the FLSA supports Defendant's position. Under the FLSA, a claim must be brought "within two years after the cause of action accrued," or within three years if the violation was willful.  29 U.S.C. § 255(a).  In the case of a collective action, a lawsuit is "commenced" by an "individual claimant":

> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

(b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

Id. § 256.  As noted by another court within this District, "[n]otice should be consistent with this determination."  In re RBC Dain Rauscher Overtime Litig., 703 F. Supp. 2d 910, 966 (D. Minn. 2010).  Several courts around the country have interpreted this language to require the provision of notice only to individuals who were employed by the defendant within three years of the provision of notice or of the court order approving such notice.  See, e.g., Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) ("Because the statute of limitations runs for each individual plaintiff until he consents to join the action, courts generally permit plaintiffs to send notice to those employed during the three year period prior to the date of the Order or to the mailing of the notice."); Tolentino v. C & J Spec-Rent Servs. Inc., 716 F. Supp. 2d 642, 654 (S.D. Tex. 2010) ("[C]lass certification is appropriately limited to workers employed by Defendant up to three years before this Court approves the notice. . . . Thus, the notice period must commence three years prior to the Court's approval of th[e] notice."); Camp v. Progressive Corp., No. Civ.A. 01-2680, 2002 WL 31496661, at *6 (E.D. La. Nov. 8, 2002) ("[T]he court will allow notice to be given to potential plaintiffs for claims of willful violations extending back three years from the date of entry of this order."). Likewise, courts within this District have used a class period extending back three years from the date notice was issued, albeit without discussion or any apparent objection by the defendant.  See, e.g., Loomis v. CUSA LLC, 257 F.R.D. 674, 678 (D. Minn. 2009).

Although Plaintiffs, in their response to Defendant's objections, ask that the notice be provided to individuals employed within three years of the date that they filed their motion for conditional certification based on the possibility of equitable tolling, the only basis for tolling that they have articulated is the amount of time it takes to adjudicate a motion for conditional certification.  As noted by the Eighth Circuit, there may be instances when equitable tolling is appropriate even though the defendant was not the cause of the time bar.  <u>Redman v. U.S. W. Bus. Res., Inc.</u>, 153 F.3d 691, 695 n.5 (8th Cir. 1998).  The Court finds that the amount of time that passed between the filing of the motion for conditional certification and the issuance of the R & R does not warrant equitable tolling.  However, because this Court referred Plaintiffs' motion for conditional certification to the Magistrate Judge, and because this Court's Order is permitting conditional certification of a subset of the collective action recommended by the Magistrate Judge, the Court finds that equitable tolling of the statute of limitations from the date of the Magistrate Judge's Order to the date of this Order is appropriate. Accordingly, the collective action in this case shall include individuals who—in addition to satisfying the other criteria—were employed in Defendant's Crystal, Minnesota restaurant dating back to April 10, 2011, and notice shall be provided accordingly.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Defendant's Objections to the April 10, 2014 Report and Recommendation on Plaintiffs' Motion for Conditional Collective Action Certification [Doc. No. 93] are **OVERRULED in part and SUSTAINED in part**;

2.      The Court **ADOPTS in part, and DECLINES to adopt in part**, the Magistrate Judge's Report and Recommendation [Doc. No. 87];

3.      Plaintiff's Motion for Conditional Collective Action Certification and for Judicial Notice to Class [Doc. No. 33] is **GRANTED in part and DENIED in part**, as detailed herein;

4.      The collective action is conditionally certified as:

All current and former hourly-paid restaurant employees of Chipotle Mexican Grill, Inc. who were employed at Chipotle's Crystal, Minnesota restaurant and, on or after April 10, 2011, were automatically punched off the clock by the Aloha timekeeping system at 12:30 a.m. and continued to work, or who otherwise worked "off the clock" during closing shifts, resulting in non-payment of regular wages or overtime wages.

5.      The named Plaintiffs are appointed as conditional collective action class representatives.

6.      Plaintiffs' proposed Notice of Right to Opt-In to Collective Action Lawsuit is approved to the extent that it is amended to comply with this Order, and to the extent that the parties meet and confer and address Defendant's remaining objections.

7.      Plaintiffs' proposed Consent to Join is approved to the extent that it is amended to comply with this Order.

8.      Rust Consulting, Inc. is approved as the Notice Administrator to administer and oversee the dissemination of the Notice and Consent to Join, including by first class mail, email, telephone support, website design and maintenance, collection of signed Consents to Join, and all other necessary related and administrative functions.

9.      Counsel for the parties must meet and confer regarding format and other logistics related to the production of information for potential opt-in plaintiffs. Defendant shall provide to Williams Law Firm a fully useable, searchable, and importable electronic list or database of all potential opt-in plaintiffs within fourteen (14) days of this Order.  The following information for each potential opt-in plaintiff shall be included:  name, last known home or residence address, and personal email address, if known by Defendant.

10.     Regarding court-assisted notice:

        a.   Within fourteen (14) days of receipt of the fully useable electronic list or database from Defendant, Plaintiffs shall issue the proposed Notice

31

and Consent to Join, consistent with this Order and with the parties' subsequent agreement during a meet-and-confer process, to all potential opt-in plaintiffs making up the FLSA Class by first class mail to the last known home or residence address of each potential opt-in plaintiff, in a #10 envelope with the following conspicuous language placed on the front of the envelope: "COURT-ORDERED NOTICE OF LAWSUIT. DEADLINE TO RESPOND: [insert deadline]."

b. The Consent to Join mailed to each potential opt-in plaintiff shall be printed on yellow paper and shall be accompanied by a #9 postage pre-paid Business Reply Envelope.

c. Plaintiffs are granted leave to send an email to each potential opt-in plaintiff for whom Defendant has provided an email address no earlier than seven (7) days prior to mailing the Notice and Consent to Join to each potential opt-in plaintiff, notifying each such person that an important letter will be coming to them by first class mail concerning their potential right to opt-in to this lawsuit.

d. Plaintiffs are granted leave to establish and publish, through Rust Consulting, Inc., an Internet website, in both English and Spanish, for potential opt-in plaintiffs to read the Notice, submit Consents to Join electronically, receive updates about the case, and otherwise communicate with class counsel.

e. Defendant shall post a copy of the Notice, in Spanish and English, in an appropriate, conspicuous, visible, and accessible place at its Crystal, Minnesota restaurant, where it can be seen easily by currently-employed putative Class members.

f. All potential opt-in plaintiffs shall have ninety (90) days from the date of mailing the Notice and Consent to Join to "opt in" to this lawsuit (the "Opt-In Period").

g. All signed Consents to Join will be deemed to have been filed with this Court on the date that they are stamped as received by Rust Consulting, Inc., and Rust will send .pdf copies of all signed Consents to Join to lead counsel, who will file them electronically on the docket weekly on a rolling basis, and with all Consents to Join filed no later than fourteen (14) days after the end of the Opt-In Period.

h. Any signed Consent to Join inadvertently or mistakenly sent by a potential opt-in plaintiff directly to any of Plaintiffs' counsel shall be deemed to have been filed with this Court on the date received by Plaintiffs' counsel from such potential opt-in plaintiff.

Dated:  September 9, 2014                    s/Susan Richard Nelson
                                             SUSAN RICHARD NELSON
                                             United States District Judge