# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Marcus Harris, Julius Caldwell, Demarkus Hobbs, and Dana Evenson, on behalf of themselves and all others, similarly situated, | No. 13-cv-1719 (SRN/SER) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Chipotle Mexican Grill, Inc., | |
| Defendant. | |

_____

| | |
|---|---|
| DeShandre Woodards, on behalf of himself and all others similarly situated, | No.  14-cv-4181 (SRN/SER) |
| Plaintiff, | |
| v. | |
| Chipotle Mexican Grill, Inc., | |
| Defendant. | |

_____

Adam S. Levy, Law Office of Adam S. Levy LLC, P.O. Box 88, Oreland, Pennsylvania 19075; Andrew C. Quisenberry and Jere Kyle Bachus, Bachus & Schanker, LLC, 1899 Wynkoop Street, Suite 700, Denver, Colorado 80202; Kent M. Williams, Williams Law Firm, 1632 Homestead Trail, Long Lake, Minnesota 55356; Kevin E. Giebel, Giebel and Associates, LLC, P.O. Box 414, Lake Elmo, Minnesota 55042; Michael E. Jacobs and Thomas M. Hnasko, Hinkle Shanor LLP, 218 Montezuma Avenue, Santa Fe, New Mexico 87501; and Robert Joseph Gralewski, Jr., Kirby McInerney LLP, 600 B Street, Suite 1900, San Diego, California 92101, for Plaintiffs.

Adam M. Royval, Allison J. Dodd, John K. Shunk, Louis M. Grossman, Scott L. Evans,

and Spencer Kontnik, Messner Reeves LLP, 1430 Wynkoop Street, Suite 300, Denver, Colorado 80202; Jeffrey Sullivan Gleason, Robins Kaplan LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis, Minnesota 55402; and Jennifer M. Robbins, Madel PA, 800 Hennepin Avenue, Suite 700, Minneapolis, Minnesota 55403, for Defendants.

_____

SUSAN RICHARD NELSON, United States District Court Judge

This matter is before the Court on Plaintiffs' Motion for Attorneys' Fees and Expenses, and for Authorization to Deduct Service Awards from an Award of Attorneys' Fees and/or Expenses [Doc. No. 446] and the Joint Motion for Approval of Settlement and to Dismiss Action with Prejudice [Doc. No. 453].[1]  For the reasons stated below, Plaintiffs' motion is granted in part and denied in part, and the parties' joint motion is granted.

## I.    BACKGROUND

The facts of these cases are well documented in the Court's September 9, 2014 Order [Doc. No. 101], granting in part and denying in part Plaintiffs' Motion to Certify the Class, and the June 12, 2017 Order denying Defendant's Motion to Decertify the Class, and are incorporated herein by reference.

This litigation began in June 2013, when Dana Evenson and DeMarkus Hobbs—Named Plaintiffs in the Harris action—filed suit against Defendant Chipotle

_____

[1]    While the Court references the docket numbers in Harris v. Chipotle Mexican Grill, Inc., 13-cv-1719 (SRN/SER), throughout this order, the Court's rulings apply equally to the parallel filings in Woodards v. Chipotle Mexican Grill, Inc., 14-cv-4181 (SRN/SER), which include Plaintiffs' Motion for Attorneys' Fees [Doc. No. 114], and the Joint Motion for Approval of Settlement [Doc. No. 108].

Mexican Grill, Inc. ("Chipotle") in the United States District Court for the District of Colorado.  (See Shunk Decl. ¶ 14 [Doc. No. 471].)  In July 2013, Marcus Harris and Julius Caldwell filed a similar suit against Chipotle in this District, asserting claims on behalf of themselves and all others similarly situated, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the Minnesota Fair Labor Standards Act, Minn. Stat. §§ 177.21–177.35.  (See Consolidated Am. Class Action Compl. [Doc. No. 31] ("Am. Compl.") ¶ 1.)  After the Colorado action was transferred to Minnesota, the Colorado plaintiffs joined Harris and Caldwell as the Named Plaintiffs in the Harris action. (See id.)

The Named Plaintiffs were all hourly employees at the Chipotle restaurant in Crystal, Minnesota ("the Crystal Restaurant").  (See Supp'l Harris Decl. [Doc. No. 64] ¶¶ 2–3; Supp'l Caldwell Decl. [Doc. No. 63] ¶ 2; Hobbs Decl. [Doc. No. 39] ¶¶ 3–5; Evenson Decl. [Doc. No. 40] ¶¶ 3–5; Gottlieb Decl. ¶¶ 20–23 [Doc. No. 50].)  They generally alleged that Chipotle maintained a company-wide unwritten policy of requiring hourly-paid employees to work "off the clock" and without pay, and they sought to recover allegedly unpaid overtime compensation and other wages for themselves and other similarly situated employees.  (See Am. Compl. ¶¶ 3–4.)   Chipotle denied Plaintiffs' allegations.  (See generally Answer to Am. Compl. [Doc. No. 45].)

The parties engaged in protracted discovery and frequent motion practice. Plaintiffs contend that Chipotle "dragged its feet" in discovery, (Williams Decl. ¶ 23 [Doc. No. 450]), failing to produce responses to discovery propounded in December 2013

3

until September 2014, and failing to produce any further discovery until the Court issued a scheduling order in March 2015.  (Id.)  Even after that, they contend that Chipotle did not complete the majority of its document production until February 2016.  (See id. ¶ 26.) Plaintiffs further assert that in contrast to their own narrow scope of discovery, Chipotle's discovery requests were unnecessarily wide-ranging, seeking written discovery of every member of the collective and noticing the depositions of 20 members.  (See id. ¶¶ 27–28.) And as to Chipotle's responsive discovery, Plaintiffs assert that they were forced to cull through "tens of thousands of Chipotle documents to find about 130 that were the most relevant to the case."  (Pls.' Mem. Supp. Mot. for Attys' Fees ("Pls.' Mem.") at 9 [Doc. No. 448].)

Chipotle, however, asserts that it "engaged in discovery necessary to adequately defend against nationwide collectives and statewide classes encompassing potentially hundreds of thousands of plaintiffs and untold millions in damages."  (Def.'s Opp'n Mem. at 12 [Doc. No. 470].)  It contends that it produced tens of thousands of documents at the request of Plaintiffs' counsel, "despite numerous warnings" from Chipotle of the high volume of documents.  (See Shunk Decl. ¶ 39.)  Chipotle also argues that before the Court limited the Harris collective to the Crystal Restaurant, Plaintiffs sought extensive discovery related to all hourly employees, spanning periods of several years.  (See id.)

The Harris Plaintiffs moved to conditionally certify the collective on October 23, 2013.  (See Williams Decl. ¶ 12.)  While the motion was pending, Chipotle conducted an internal investigation into the labor practices at the Crystal Restaurant.  (See Shunk Decl.

¶ 13.)  One of its Apprentice Managers acknowledged that he had required employees to work off the clock, leading to internal discipline.  (<u>See</u> Williams Decl. ¶¶ 18, 44.) Chipotle also paid its then-current employees back wages.  (<u>Id.</u>)  Plaintiffs contend, however, that Chipotle made no effort to compensate former employees who had also worked off the clock.  (<u>See</u> Pls.' Mem. at 7.)

On April 10, 2014, Magistrate Judge Rau recommended the conditional certification of a nationwide collective of closing-shift employees.  (<u>See</u> April 10, 2014 R&R at 33–34.)  On September 9, 2014, this Court adopted the R&R in part, limiting the scope of the conditional collective to Chipotle's Crystal Restaurant.[2]  (Sept. 9, 2014 Order at 21–22.)  Plaintiffs moved for the certification of an interlocutory appeal of this ruling to the Eighth Circuit, (<u>see</u> Pls.' Mot. Interlocutory Appeal [Doc. No. 104], which the Court denied.  (Nov. 14, 2014 Order [Doc. No. 128].)  Ultimately, 26 additional employees joined the litigation.  (<u>See</u> Pls.' Mem. at 7.)

In October 2014, Plaintiff Woodards, a former Chipotle employee at its restaurant

_____

[2] Specifically, the Court conditionally certified the following collective under the FLSA:

> All current and former hourly-paid restaurant employees of Chipotle
> Mexican Grill, Inc. who were employed at Chipotle's Crystal, Minnesota
> restaurant and, on after April 10, 2011, were automatically punched off
> the clock by the Aloha timekeeping system at 12:30 a.m. and continued to
> work, or who otherwise worked "off the clock" during closing shifts,
> resulting in non-payment of regular wages or overtime wages.

(Sept. 9, 2014 Order at 31.)

in Golden Valley, Minnesota, filed his complaint.  (See Shunk Decl. ¶ 31.)  Like the

Named Plaintiffs in Harris, he initially sought to represent a nationwide collective.  (Id.)

In April 2016, Woodards filed an amended complaint, withdrawing any collective or class

claims and pursuing an individual action under the FLSA and the Minnesota FLSA.

(Woodards, 14-cv-4181 (SRN/SER), Am. Compl. ¶ 1 [Doc. No. 81].)

        In December 2016, Chipotle moved to decertify the Harris collective, (see Def.'s

Mot. to Decertify [Doc. No. 244]), and also filed a motion, preemptively, to deny Rule 23

class certification on Plaintiffs' claims arising under Minnesota state law.  (See Def.'s

Mot. to Deny R. 23 Certification [Doc. No. 258].)  Six days after the filing, Plaintiffs

elected to dismiss their state law claims in Harris, rendering the Rule 23 motion moot.

(See Pls.' Dec. 15, 2016 Letter at 1 [Doc. No. 389].)  Chipotle asserts that this was the

first time that Plaintiffs' counsel in Harris had indicated that they would not seek class

certification under Rule 23, (Def.'s Opp'n Mem. at 10), although Plaintiffs state that they

gave notice prior to the filing of Chipotle's Rule 23 motion.  (See Pls.' Dec. 15, 2016

Letter at 1.)  On June 12, 2017, the Court denied Chipotle's decertification motion.  (See

June 12, 2017 Order [Doc. No. 423].)

        Shortly before this matter was scheduled for trial, the parties reached a settlement.

Under the terms of the settlement, Chipotle agreed to pay Plaintiff Woodards and the 27

members of the Harris collective the gross amount of $62,000.  (See Ex. 1 to Jt. Mot. to

Approve Settlement ¶ 6 (Settlement Agmt.) [Doc. No. 455].)  Plaintiffs acknowledge that

"[t]his [amount] is more than double their total damages at issue in this case, and almost

certainly better than any result the Plaintiffs could have obtained at trial." (Pls.' Mem. at 2.)

Pursuant to the terms of the settlement agreement—in which the parties agreed to submit the matter of attorneys' fees and costs to the Court, (see Ex. 1 to Jt. Mot. to Approve Settlement ¶ 6 (Settlement Agmt.))—and the fee-shifting provisions of the FLSA, Plaintiffs' counsel now seek a combined total award of attorneys' fees in the amount of $3,236,368.50, and costs in the amount of $59,942.86, for their work in the two cases.[3] (Pls.' Mem. at 3.) Plaintiffs contend that they obtained an "exceptional" settlement—the result of extraordinary effort and enormous investment by their counsel. (Id. at 2–3; 13.) They note that had this matter gone to trial, and had Plaintiffs proven all of their closing shift damages using their expert's methodology, single damages for the Harris collective would have totaled only $20,425.77, and $733.26 for Woodards. (See id. at 13.) Moreover, while enhanced doubling of damages are permitted under the law, Plaintiffs acknowledge that there was no guarantee of double damages in Harris. (Id.) Under the terms of the settlement agreement, however, Plaintiffs state that every member of the collective will receive more than double the amount of damages that they might have otherwise obtained at trial. (Id.)

---

[3] Plaintiffs initially requested costs in the amount of $62,232.54, (see Pls.' Mem. at 3), but counsel from Bachus & Schanker subsequently removed $2,289.68 in costs from their portion of the fee petition for work performed in Harris, resulting in the revised gross cost request of $59,942.86 ($10,774.27-$8,484.59 = $2,289.68). (See Quisenberry Supp'l Decl. ¶ 14 [Doc. No. 477].)

In addition to seeking an award of attorneys' fees, Plaintiffs also seek service awards for the <u>Harris</u> Named Plaintiffs.  Specifically, they request $15,000 each for Harris and Caldwell, $7,500 for Evenson, and $5,000 for Hobbs.  (<u>Id.</u> at 4–5.)

Although the parties jointly move for the approval of the settlement, Chipotle disputes the award of attorneys' fees.  Chipotle argues that because the matter settled and it has never conceded liability, Plaintiffs cannot be considered "prevailing parties" eligible for a fee award under the FLSA. (Def.'s Opp'n Mem. at 19.)  But even if the Court finds that Plaintiffs are eligible as prevailing parties, Chipotle argues that Plaintiffs' counsel is only entitled to a significantly reduced award.  (<u>Id.</u> at 20–45.)

Specifically, Chipotle argues that the hourly billing rates of Plaintiffs' counsel are unreasonable.  (<u>Id.</u> at 45–46.)  They propose that the attorneys' hourly billing rates be reduced to $450 for partners, $300 for associates, and $160 for paralegals.  (<u>Id.</u>)  In addition, Chipotle asserts that Plaintiffs' fee request should be reduced to offset unreasonable work, and further adjusted downward by 85% to reflect non-compensable work, resulting in a total award of attorneys' fees of $242,548.47 for <u>Harris</u> and $11,088.39 for <u>Woodards</u>.  (<u>Id.</u> at 46.)   Pursuant to its understanding that any service awards will be deducted from the Court's ultimate attorneys' fees award, Chipotle does not object to the proposed service awards to the Named Plaintiffs.  (<u>Id.</u> at 45.)  As to costs, Chipotle argues that Plaintiffs are entitled to no costs, (<u>id.</u> at 41), but if the Court finds otherwise, any award must be reduced by $35,288.27.  (<u>Id.</u> at 45.)

## II.    DISCUSSION

### A.      Approval of Settlement & Service Awards

A district court may approve a FLSA settlement if it "represents a fair compromise of a bona fide wage and hour dispute."  See McInnis v. Ecolab Inc., No. 11-cv-2196 (SRN/JJK), 2012 WL 892187, at *2 (D. Minn. Feb. 17, 2012), adopted, 2012 WL 892192 (D. Minn. Mar. 15, 2012).  In making that determination, courts consider whether the settlement "reflects a reasonable compromise over issues actually in dispute as employees may not waive their entitlement to minimum wage and overtime pay under the FLSA." Netzel v. West Shore Group, Inc., No. 16-cv-2552 (RHK/LIB), 2017 WL 1906955, at * 2 (D. Minn. May 8, 2017), adopted, Doc. No. 36 (D. Minn. May 26, 2017).

In addition, when determining the fairness and equity of the settlement terms, courts consider factors including: "(1) the stage of the litigation and the amount of discovery exchanges, (2) the experience of counsel, (3) the probability of the plaintiffs' success on the merits, (4) any overreaching by the employer in the settlement negotiations, and (5) whether the settlement is the product of arm's length negotiations between represented parties based on the merits of the case." Id. (citing King v. Raineri Constr., LLC, No. 4:14-CV-1828 (CEJ), 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015)).  Considering all of these factors, the Court is satisfied that the settlement here is for a bona fide wage and hour dispute, and is fair and equitable.  The parties reached a settlement after extensive discovery.  The settlement resulted from arm's length negotiations undertaken by experienced counsel on both sides.  Accordingly, the Court approves the settlement.

9

The Court likewise approves the proposed service awards of $15,000 each for
Harris and Caldwell, $7,500 for Evenson, and $5,000 for Hobbs.  The actions of these
Named Plaintiffs in leading the litigation and participating in discovery adequately
support a finding that the service awards are warranted and reasonable.  See Netzel, 2017
WL 1906955, at * 7 (citations omitted).

**B.     Attorneys' Fees**

The FLSA provides for attorneys' fees and costs, stating, "The court . . . shall, in
addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable
attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).

**1.     Prevailing Party**

As noted, Chipotle argues that because the resolution of this matter resulted from a
settlement in which Chipotle never conceded liability, Plaintiffs cannot be considered
"prevailing parties" who are entitled to attorneys' fees.  (See Def.'s Opp'n Mem. at
19–20.)   The Court disagrees.  Even where a FLSA dispute is resolved via settlement,
courts have found that as long as the settlement affords the plaintiffs with some benefit,
they are prevailing parties, and their attorneys are entitled to compensation for their
reasonable fees and costs.  See, e.g., Netzel, 2017 WL 1906955, at *8 ("The Court must
assess the reasonableness of plaintiffs' attorney fees in a proposed FLSA settlement, even
when the fee is negotiated in the settlement rather than through judicial determination.")
(citation omitted); Kahlil v. Original Old Homestead Restaurant, Inc., 657  F. Supp. 2d
470, 474 (S.D.N.Y. 2009); ("Where, as here, plaintiffs obtained a favorable settlement,

they are entitled to an award of attorneys' fees: '[t]he fact that [plaintiff] prevailed

through a settlement rather than through litigation does not weaken [plaintiff's] claim to

fees.'"  (quoting <u>Maher v. Gagne</u>, 448 U.S. 122, 129 (1980)) (alteration in original); <u>see</u>

<u>also</u> <u>Stewart v. USA Tank Sales</u>, No. 12-05136-CV-SW-DGK, 2016 WL 7206169, at

*2–3 (W.D. Mo. Feb. 3, 2016) (stating, in a case in which the settlement provided for

attorneys' fees, "because the [s]ettlement provides Plaintiffs with some benefit, they are

the prevailing party and their attorneys are entitled to a reasonable fee."); <u>Zhou v. Wang's</u>

<u>Rest.</u>, No. C 05-0279 PVT, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007) (finding,

in a case involving the settlement of FLSA claims, that an award of reasonable attorneys'

fees was mandatory).

Thus, although Chipotle does not concede liability, its agreement to pay Plaintiffs

$62,000 in exchange for the release of the wage and hour claims provides "some benefit"

to Plaintiffs.  Accordingly, the Court finds that Plaintiffs are prevailing parties who are

entitled to an award of reasonable attorneys' fees and costs under 29 U.S.C. § 216(b).

## 2.    Reasonableness

The starting point for the determination of the amount of reasonable attorneys' fees

involves calculating the lodestar, which provides an initial estimate of the value of the

attorney's service.  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).  The lodestar is the

product of the number of hours reasonably expended on the litigation multiplied by a

reasonable hourly billing rate.  <u>Id.</u>

Plaintiffs here were represented by several law firms (collectively, "the Plaintiff

11

Firms"). The Plaintiff Firms have applied an overall 10% reduction to their lodestar calculations "to account for any possible inefficiency that may have been missed as part of [the] [billing review] process," (Pls.' Mem. at 20), resulting in the following request for their work in the <u>Harris</u> action:

| Firm/Attorney(s)/ Paralegal(s) | Lodestar Before 10% Reduction | 10% Reduction | Final Lodestar |
|---|---|---|---|
| Williams Law Firm (Kent Williams) | $1,872,900.00 | - $187,290.00 | $1,658,610.00 |
| Law Office of Adam S. Levy, LLC (Adam Levy) | $731,400.00 | - $73,140.00 | $658,260.00 |
| Hinkle Shanor LLP (Thomas Hnasko, Michael E. Jacobs, Julie Sakura, Loren Foy, Sheryl McInnis, Sonya Mares) | $465,705.00 | - $46,570.50 | $419,134.50 |
| Bachus & Schanker, LLC (Andrew Quisenberry, Darin Schanker, Karen O'Connor, Sam Scheurich, Steve Johnston, Ghandia Johnson, Chad Brockman) | $161,665.00 | - $16,266.50 | $145,398.50 |
| Giebel and Associates, LLC (Kevin Giebel, Breanna Enerson) | $178,680.00 | - $17,868.00 | $160,812.00 |
| **TOTALS** | **$3,410,440.00** | **- $341,044.00** | **$3,069,396.00** |

(Williams Decl. ¶ 50 [Doc. No. 450].)[4]

Similarly, the same firms present the following calculations for their work in the

Woodards action, along with a 10% reduction:

| Firm/Attorney(s)/ Paralegal(s) | Lodestar Before 10% Reduction | 10% Reduction | Final Lodestar |
|---|---|---|---|
| Williams Law Firm (Kent Williams) | $108,540.00 | - $10,854.00 | $97,686.00 |
| Law Office of Adam S. Levy, LLC (Adam Levy) | $52,380.00 | - $5,238.00 | $47,142.00 |
| Hinkle Shanor LLP (Thomas Hnasko, Michael E. Jacobs, Julie Sakura, Loren Foy, Sheryl McInnis, Sonya Mares) | $7,520.00 | - $752.00 | $6,768.00 |
| Bachus & Schanker, LLC (Andrew Quisenberry, Darin Schanker, Karen O'Connor, Sam Scheurich, Steve Johnston, Ghandia Johnson, Chad Brockman) | $12,825.00 | - $1,282.50 | $11,542.50 |
| Giebel and Associates, LLC (Kevin Giebel, Breanna Enerson) | $4,260.00 | - $426 | $3,834.00 |
| **TOTALS** | **$185,525.00** | **- $18,525.50** | **$166,972.50** |

---

[4] Attorney Robert Gralewski of Kirby McInerney LLP joined the litigation in June 2017 to assist with trial, but seeks no reimbursement for fees and costs.  (Williams Decl. ¶ 10, n.1.)

(Id. ¶ 51.)

### a.    Reasonable Hourly Rate

The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of comparable skills, experience and reputation.  See Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  In determining the reasonable hourly rate, "district courts may rely on their own experience and knowledge of prevailing market rates."  Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005).  The party seeking a fee award is responsible for providing evidence of hours worked and the rate claimed.  Wheeler v. Mo. Highway & Transp. Comm'n, 348 F.3d 744, 754 (8th Cir. 2003).  In determining the reasonable hourly rate for the relevant legal community, courts typically consider the ordinary rate for similar work in the community in which the case is litigated.  Emery v. Hunt, 272 F.3d 1042, 1048 (8th Cir. 2001).

Attorney Kent Williams, based in Long Lake, Minnesota, was the lead attorney on these cases.  (See Williams Decl. ¶¶ 52–55.)  He is a solo practitioner who has litigated plaintiffs' class actions for over 26 years of his career.  (Id. ¶¶ 2–6.)  In addition to his declaration, Mr. Williams submitted billing records and cost invoices for his work in Harris and Woodards.  (See Exs. H, I, J, K to Williams Aff.)

Attorney Adam Levy is based in Oreland, Pennsylvania.  Levy has 25 years of civil litigation experience and a national practice concentrated in complex litigation, and class, collective, and other representative actions.  (Levy Decl. ¶¶ 3–4 [Doc. No. 451].)  Mr. Levy submitted billing records and expense reports for his work in the Harris action,

(see Exs. B & C to Levy Decl.), and billing records for his work in the Woodards action. (See Ex. D to Levy Decl.)   He does not seek reimbursement for expenses in the Woodards action.   (Levy Decl. ¶ 8.)

Andrew Quisenberry is an associate attorney at Bachus & Schanker, LLC in Denver, Colorado, and a 2011 law school graduate.  (Quisenberry Decl. ¶ 3 [Doc. No. 452].)  Quisenberry has experience in employment and FLSA litigation.  (Id.)  Also working on these cases from Bachus & Schanker were the following staff:  Darin Schanker, a founding partner of the firm, who possesses extensive trial and appellate practice experience, (id. ¶ 4); Karen O' Conner, a former associate attorney who had practiced for more than 10 years and had extensive trial experience, (id. ¶ 5); Samuel Scheurich, an associate attorney with four years of experience, (id. ¶6); Steve Johnston, an associate attorney at the firm with 14 years of legal experience; (id. ¶ 7); and former paralegals Ghandia Johnson and Chad Brockman, who had experience in employment litigation.  (Id. ¶¶ 8–9.)   The billing records for the work performed by the Bachus & Schanker legal team in both the Harris and Woodards matters is appended to the Quisenberry Declaration.  (Id. at pp. 10–54.)

Attorney Kevin Giebel, the sole practitioner of the Giebel Law Firm, practices law in Lake Elmo, Minnesota.  (Giebel Decl. ¶ 5 [Doc. No. 454].)   His legal practice primarily involves general corporate representation.  (Id. ¶ 7.)  In addition to performing his own work on these cases, Mr. Giebel utilized the services of Breanna Enerson, a contract paralegal.  (See id. ¶¶ 4.)  Mr. Giebel submitted his billing and expense reports in

support of the attorneys' fees petition.  (See Ex. C to Giebel Decl.)

Thomas Hnasko is a partner with the Hinkle Shanor law firm in Santa Fe, New

Mexico.  (Hnasko Decl. ¶ 2 [Doc. No. 456].)  Since graduating from law school in 1982,

he is experienced in commercial and class action litigation.  (Id.)  Also working on these

cases from Hinkle Shanor were the following staff:  Michael Jacobs, partner, who has

practiced law in the areas of complex antitrust, commercial, and class action litigation for

19 years, (id. ¶ 3); Julie Sakura, partner, with experience in commercial litigation and

employment matters, (id. ¶ 4); Loren Foy, former associate attorney, (id. ¶ 5); and Sheryl

McInnis, a paralegal with over 20 years of experience, assisted by Sonya Mares.  (Id. ¶ 6.)

Counsel from Hinkle Shanor submitted their billing and expense reports in support of this

petition.  (See Exs. E & F to Hnasko Decl.)

Each of the Plaintiff Firms contemporaneously recorded time and expenses, using

the following hourly rates: $600 for partners; $450 for senior associates with five or more

years of experience; $350 for junior associates with less than five years of experience;

and $250 for paralegals.  (Williams Decl. ¶ 47.)

Chipotle argues that these rates do not reflect the prevailing market rates for

attorneys in the Twin Cities during the applicable time period.  (See Def.'s Opp'n Mem.

at 22.)   In support of Chipotle's argument that the amount of requested fees is

unreasonable, it submits the Affidavit of Joseph G. Schmitt [Doc. No. 472].)  Mr. Schmitt

is an attorney and shareholder at the Minneapolis law firm of Nilan, Johnson, Lewis.

(Schmitt Aff. ¶ 1.)  Based on his experience in wage and hour class and collective

16

litigation, and his review of the litigation file in this case and Plaintiffs' submissions, he

believes that Plaintiffs' fee request is neither reasonable nor appropriate under the FLSA.

(<u>Id.</u> ¶¶ 3–10.)

Plaintiffs object to the Court's consideration of this report, arguing that Chipotle

failed to identify Schmitt as an expert witness under Federal Rule of Civil Procedure

26(a)(2)(B).  (Pls.' Reply at 2–3 [Doc. No. 475].)   They therefore argue that the Court

should disregard the Schmitt Affidavit.  (<u>Id.</u>)

Frequently, when moving for or opposing a fee petition, parties submit affidavits

from local practitioners who opine on the reasonableness of attorneys' hourly rates,

billing for legal services, and attorneys' standing and reputation in the local legal

community.  The Court is unaware of any rule requiring a party supporting or opposing a

petition for attorneys' fees to formally serve an expert report in connection with an

affidavit of the type submitted by Mr. Schmitt.  While Mr. Schmitt does not claim to be

an attorney with experience prosecuting or defending FLSA claims, the Court finds him

sufficiently qualified as a local practitioner to offer his opinion on the reasonableness of

the billing rates and services at issue.

Therefore, in analyzing the reasonableness of the Plaintiff Firms' billing rates, the

Court will consider the Schmitt Affidavit, Plaintiffs' submissions, and the Court's own

knowledge of the billing rates and services of the Twin Cities legal community.  To the

extent that Mr. Schmitt offers any legal opinions, however, the Court will not consider

them.  <u>See</u> <u>S. Pine Helicopters, Inc. v. Phoenix Aviation Mgrs., Inc.</u>, 320 F.3d 838, 841

(8th Cir. 2003) (stating that expert testimony on legal matters is not admissible).

Chipotle contends that the average partner billing rate in Minnesota between 2014 and 2016 ranged between $380–460 per hour.  (See Schmitt Aff. ¶ 22.)   It asserts that the average associate billing rate in Minneapolis between 2014 and 2016 was in the range of $220–344 per hour.  (See Schmitt Aff. ¶ 24.)  As to paralegals, Chipotle also asserts that the requested billing rate of $250 per hour exceeds the $163–168 average hourly rate prevalent in Minneapolis.  (Id. ¶ 25.)  It urges the Court to apply the following hourly rates: $450 for partners, $300 for associates, and $160 for paralegals.  (Def.'s Opp'n Mem. at 24.)

Plaintiffs assert that their hourly rates are consistent with similar rate structures that this Court has found reasonable in FLSA cases, citing Brennan v. Qwest Corp., No. 07-cv-2024 (ADM/JSM).  (Pls.' Mem. at 25.)  In Brennan, the Court approved an uncontested fee award of $1,000,000, (see Brennan, 07-cv-2024, July 12, 2011 Order [Doc. No. 520]), which included a $600 hourly billing rate for a senior partner.  (See Brennan, 07-cv-2024, Pls.' Mem. Supp. Mot. for Attys.' Fees at 4 [Doc. No. 508].) Further, Plaintiffs cite fee awards in this District in other representative actions involving similar billing rates.  (Pls.' Mem. at 25–26) (citing Roeser v. Best Buy Co., Inc., No. 13-cv-1968 (JRT/HB), 2015 WL 4094052, at *11–12 (D. Minn. July 7, 2015) (awarding fees with attorney hourly rates as high as $775 and $880 in a consumer fraud/deceptive trade practices action); Austin v. Metro. Council, No. 11-cv-3621 (D. Minn. March 27, 2012), Williams Decl., Ex. E at ¶ 57 (awarding fee based on $500 hourly rate); In re Xcel

Energy, Inc., 364 F. Supp. 2d 980, 989–90 (D. Minn. 2005) (approving hourly attorney

rates from $225–650 in Rule 23 action)).

In addition, Mr. Williams states that he has been awarded fees based on a $500

hourly billing rate in this District and elsewhere.  (See Williams Decl. ¶ 48) (citing Austin

and an Iowa state court case).  Mr. Levy attests that in 2011, in a complex litigation

matter outside of this District, he was compensated at the hourly rate of $580 per hour,

and in 2012, an arbitration panel awarded him compensation based on an hourly rate of

$525 per hour.[5]  (See Levy Decl. ¶ 18.)

In its opposition, Chipotle cites authority from this District that is consistent with

---

[5]  Plaintiffs also observe that Chipotle, while attacking the billing rates of the
Plaintiff Firms, fails to disclose its own attorneys' billing rates.  (See Pls.' Reply at 4.)
They note that two years ago, in connection with a fee petition in another case, Robins
Kaplan attorney Eric Magnuson disclosed that his firm's hourly rates were between $475
to $700.  (See Magnuson Decl. ¶ 7, Ex. C to Williams Supp'l Decl. [Doc. No. 481-3].)

Sometimes defense counsel's fees may be relevant to a determination of the
reasonableness of plaintiff's counsel's fees, see Am Travelers Life Ins. Co. v. AIG Life
Ins. Co., 354 F.3d 755, 759-61 (8th Cir. 2004) (upholding award of $66,839.76 in
attorney's fees and costs in indemnification suit where, among other factors, defendant's
attorneys charged only $38,554.29); Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208,
1220 (8th Cir. 1981) (affirming the award of $149,175 in attorney's fees and $13,000 in
costs to plaintiff's counsel in an ERISA case, and noting, in passing, that defense counsel
spent close to one million dollars in attorney's fees), but frequently, the comparison is
irrelevant.  See Burks v. Siemens Energy & Automation, Inc., 215 F.3d 880, 884 (8th Cir.
2000) (describing the relationship as an "apples-to-oranges comparison," and noting that
it requires courts to undertake an additional analysis of whether defendant's counsel
billed a reasonable amount).  "As is apparent here, a heavily-litigated case is not
typically a one-sided affair. [Plaintiffs] and [Defendant] litigated this case tooth and nail,
which explains why [Plaintiffs'] attorney's fees and costs are relatively high."  Ewald v.
Royal Norwegian Embassy, 11-CV-2116 SRN/SER, 2015 WL 1746375, at *15 (D. Minn.
Apr. 13, 2015).  Chipotle's fees are likely relatively high as well, but the Court need not
consider them here in assessing the reasonableness of Plaintiffs' hourly rates and fees.

its proposed hourly rates.  (See Def.'s Opp'n Mem. at 23–24) (citing Taylor v. City of Amboy, No. 14-cv-722 (PJS/TNL), 2017 WL 4075163, at *2 (D. Minn. Sept. 14, 2017)) (finding a $450 hourly rate reasonable for an attorney with 35 years of experience, $400 hourly rate reasonable for an attorney with 19 years of experience, and $225 per hour reasonable for an attorney with four years of experience); Wirtz v. JPMorgan Chase Bank, N.A., No. 15-cv-2286 (DSD/KMM), 2016 WL 5402742, at * 2 (D. Minn. Sept. 26, 2016) (approving a $275 hourly rate for Minneapolis attorneys); Hall v. Sebelius, No. 13-cv-295 (JRT/LIB), 2016 WL 424965, at *5 (D. Minn. Feb. 3, 2016) (approving a $450 hourly rate for an attorney with 23 years of experience, a $225 hourly rate for an attorney with three years of experience, and a $195 hourly rate for a legal assistant with 38 years of experience); Ewald, 2015 WL 1746375, at *5–6 (approving hourly rates between $315 and $410 for attorneys with 15 to 30 years' experience in the Twin Cities)).

The Court finds that the requested billing rates here are above the prevailing rate for comparable work in the Twin Cities.  Granted, the Brennan request—which included a $600 hourly billing rate for the most senior timekeeper—was granted approximately two years before the Harris case was filed.  But in Brennan, not only did the parties stipulate to the fee award, Plaintiffs reduced their lodestar by approximately 53%.  (See Brennan, No. 07-cv-2024, Pls.' Mem. Supp. Mot. for Attys.' Fees at 4 [Doc. No. 508].) Here, Plaintiffs have taken only a 10% reduction, (see Pls.' Mem. at 20), and the fee petition is opposed.

Most importantly, Plaintiffs' requested rates do not sufficiently distinguish

between the variance in legal experience at each timekeeper level—instead they seek a flat rate of $600 per hour for partners, $450 for associates,[6] and $250 for paralegals. While Mr. Hnasko and Mr. Giebel have over 30 years of legal experience, the most junior partner on the cases, Ms. Sakura, has 14 years of legal experience. Yet Plaintiffs seek compensation for all three partners at the rate of $600 per hour. Similar experience variances exist among the associates and paralegals. With paralegals, Plaintiffs have not indicated the years of experience that Sonya Mares has, (see Hnasko Decl. ¶ 6), and only in a supplemental declaration did they provide some information from which the Court estimates that Ghandia Johnson has approximately 15–19 years of experience. (See Quisenberry Supp'l Decl. ¶ 9.) The Court is unable to determine the experience level of Chad Brockman from the information provided in the supplemental declaration. (See id.) A reasonable rate should account for varying levels of experience.

Based on all of the parties' materials and the Court's knowledge of reasonable billing rates in the local community, the Court reduces the requested hourly billing rates for all of the timekeepers, and calculates the lodestar as follows:

| Attorney Paralegal | Title | Firm | Yrs of Exp | Rate Per Hr | Time Harris | Lodestar: Harris | Time Woodards | Lode-star: Woodards |
|---|---|---|---|---|---|---|---|---|
| Thomas Hnasko | Ptr. | Hinkle Shanor | 35 | $575 | 150.20 | $86,365 | 6.20 | $3565 |

---

[6] For the most junior associate, Samuel Scheurich, Plaintiffs seek the approval of a billing rate of $350 per hour. (See Williams Decl. ¶ 47.) All other associates' billing rates are requested at $450 per hour. (Id.)

| Kevin Giebel | Sole Prop. | Giebel & Assocs. | 33 | $575 | 297.80 | $171,235 | 7.10 | $4082.50 |
|---|---|---|---|---|---|---|---|---|
| Kent Williams | Solo Prac. | Wms. Law Firm | 26 | $525 | 3121.65 | $1,638,866.25 | 180.9 | $94,972.50 |
| Adam Levy | Solo Prac. | Law Office of Adam Levy | 25 | $525 | 1219 | $639,975 | 87.3 | $45,832.50 |
| Darin Schanker | Ptr. | Bachus & Schanker | 24 | $525 | 2.40 | $1260 | 0 | |
| Michael Jacobs | Ptr. | Hinkle Shanor | 19 | $500 | 142.50 | $71,250 | 0 | |
| Julie Sakura | Ptr. | Hinkle Shanor | 14 | $475 | 137.70 | $65,407.50 | 0 | |
| Steven Johnston | Assoc. | Bachus & Schanker | 14 | $400 | .20 | $80 | 0 | |
| Karen O'Connor | Assoc. | Bachus & Schanker | 10 | $350 | 90.40 | $31,640 | 26.60 | $9,310 |
| Loren Foy | Assoc. | Hinkle Shanor | 6 | $300 | 274.70 | $82,410 | 5.50 | $1,650 |
| Andrew Quisenberry | Assoc. | Bachus & Schanker | 6 | $300 | 199.80 | $59,940 | 1.90 | $570 |
| Samuel Scheurich | Assoc. | Bachus & Schanker | 4 | $300 | 41.20 | $12,360 | 0 | |
| Sheryl McInnis | Para. | Hinkle Shanor | 20+ | $200 | 280.40 | $56,080 | .70 | $140 |
| Breanna Enerson | Para. | Giebel & Assocs. | 12 | $200 | 10.90 | $2180 | 0 | |
| Sonya Mares | Para. | Hinkle Shanor | | $160[7] | 16.60 | $2656 | 4.60 | $736 |
| Ghandia Johnson | Para. | Bachus & Schanker | 15–19 | $200 | 8.30 | $1660 | 0 | |
| Chad Brockman | Para. | Bachus & Schanker | | $160 | 52.20 | $8352 | | |
| **TOTAL** | | | | | 6045.95 | $2,931,716.75 | 320.8 | $160,858.50 |

(See Hnasko Decl., Exs. E & F; Giebel Decl., Ex. C; Williams Decl., Exs. H & J; Levy

---

[7] The Court applies the lower hourly rate of $160 proposed by Chipotle for paralegals Mares and Brockman. The Court lacks information concerning their respective experience levels.

22

Decl. ¶ 14, Ex. D; Quisenberry Decl. ¶ 21.)

These reductions are based on the Court's own experience, the guidance of awards in similar cases, and the parties' submissions.  As the chart indicates, calculating the reasonable hourly rates by the number of billed hours results in an initial lodestar of $2,931,716.75 for Harris and $160,858.50 for Woodards.

### b.      Reasonable Hours Expended

Chipotle challenges certain billing entries of the Plaintiff Firms, arguing that they warrant a reduction in fees for the following reasons: (1) unnecessary work; (2) unsuccessful efforts; (3) work performed on unrelated litigation; (4) administrative tasks; (5) excessive time entries; (6) duplication of efforts; and (7) vague time entries and block billing.  (Def.'s Opp'n Mem. at 24–34.)  With respect to these categories, Chipotle either seeks a specific hourly/dollar-amount reduction in fees, or a percentage-based deduction of 85% for a given category.

### i.      Unnecessary Work

Chipotle observes that Plaintiffs' counsel from Bachus & Schanker did not submit any time records from the firm's former attorney Colleen Calandra. (Id. at 24–25.) Chipotle surmises that this is because none of Ms. Calandra's fees are recoverable.  (Id. at 24.)  Consequently, Chipotle reasons, time reflecting work performed by other Plaintiffs' counsel with, or in conjunction with, Ms. Calandra should be deducted from the fee request.  (Id.)   Chipotle thus seeks a deduction of 60.8 hours as "unnecessary" time. (Id. at 25.)

Counsel from Bachus & Schanker explains that because Ms. Calandra did not leave her own billing records when she left the firm, Plaintiffs do not seek compensation for her work. (Quisenberry Supp'l Decl. ¶¶ 5–7.)  The lack of records for her work, however, does not require the deduction of hours for other attorneys who may have consulted or worked with her.  And while Chipotle suggests that other counsel expended up to 52.5 hours on Ms. Calandra's pro hac vice application, (see Def.'s Opp'n Mem. at 24), Plaintiffs' counsel refutes any such notion, and the billing entries in question include other work.  (See Williams Supp'l Decl. ¶ 37 [Doc. No. 481]; Williams Decl., Ex. H at 4.) No deduction will be taken on this basis.

### ii.        Unsuccessful Efforts

Chipotle also argues that Plaintiffs, who initially sought to certify a nationwide collective, were largely unsuccessful in this litigation, as the collective that the Court conditionally certified was limited to the Crystal Restaurant. (Def.'s Opp'n Mem. at 25.) For instance, it asserts that Plaintiffs expended 304.5 hours in pursuit of a nationwide collective in Harris, after which they expended 91.2 hours in pursuit of a failed interlocutory appeal.  (See Schmitt Aff. ¶ 28.)  Chipotle also cites 169.4 hours that Plaintiffs' counsel unsuccessfully expended in 2016 in attempting to amend the complaint, 19.6 hours in pursuit of a statewide class action in Harris, and 17.3 hours on class action claims in Woodards that were ultimately "abandoned."  (See Def.'s Opp'n Mem. at 25–27.)  Altogether, Chipotle seeks a reduction of 584.7 hours in Harris and 17.3 hours in Woodards for the "unsuccessful pursuits" of Plaintiffs' counsel.  (Id. at 25.)

24

In <u>Thompson v. Speedway Superamerica LLC</u>, No. 08-cv-1107 (PJS/RLE), 2009 WL 2998163, at *1 (D. Minn. Sept. 15, 2009), this Court observed that "[f]rom its inception, this litigation has been animated by the desire of plaintiffs to certify a nationwide class action."  Plaintiffs here were similarly motivated.  Unlike <u>Thompson</u>, however, this Court <u>did</u> conditionally certify the collective here, albeit on a substantially more limited basis than Plaintiffs requested.   However, Plaintiffs also expended time related to class action claims that they ultimately abandoned.  And while "'a fee award should not be reduced merely because a party did not prevail on every theory raised in the lawsuit.'" <u>Casey v. City of Cabool, Mo.</u>, 12 F.3d 799, 806 (8th Cir. 1993) (quoting <u>Hendrickson v. Branstad</u>, 934 F.2d 158, 162 (8th Cir. 1991)), the Court finds that a percentage-based reduction of 10% reasonably accounts for Plaintiffs' work on abandoned claims and unsuccessful efforts to amend the pleadings.

### iii.   Work Performed on Unrelated Litigation

Chipotle also argues that Plaintiffs' billing records reflect work performed on <u>Turner v. Chipotle Mexican Grill, Inc.</u>, a separate lawsuit in the District of Colorado, and <u>Strout v. Chipotle Mexican Grill, Inc.</u>, a case from Texas.  (<u>See</u> Schmitt Aff. ¶¶ 35–36.) In addition, it argues that Plaintiffs' billing records include hours expended on a Florida FLSA case, an unidentified New York case, and miscellaneous other litigation.  (<u>Id.</u>)  All told, Chipotle seeks to exclude 45.3 hours in <u>Harris</u> and 1.8 hours in <u>Woodards</u> for work on unrelated litigation.  (<u>Id.</u>; Def.'s Opp'n Mem. at 26.)

No deduction will be taken on this basis.  As the Plaintiff Firms explain, counsel

25

does not seek reimbursement from Chipotle for work performed in other cases.  (See

Williams Supp'l Decl. ¶ 35; Levy Supp'l Decl. ¶¶ 4–6 [Doc. No. 480]; Quisenberry

Supp'l Decl. ¶ 8.)  Rather, counsel monitored similar litigation against Chipotle in the

course of performing work on the instant cases.  Monitoring related cases is an

appropriate, reasonable practice and does not warrant a reduction.  See North Dakota v.

Heydinger, 11-CV-3232 (SRN/SER), 2016 WL 5661926, at *23 (D. Minn. Sept. 29,

2016) (declining to reduce fee award for counsel's review of filings concerning related

issues in other cases).

### iv.    Administrative Tasks

Chipotle argues that a reduction is warranted due to the expenditure of time on

purely administrative tasks performed by Plaintiffs' counsel.  Its expert, Mr. Schmitt,

states that he identified 136 entries, totaling 189.9 hours in Harris, and 1.1 hours in

Woodards, for time spent on tasks such as document management, calendaring, mail,

non-legal research, and filing documents with the Court.  (Def.'s Opp'n Mem. at 27)

(citing Schmitt Aff. ¶ 39.)  As examples, Chipotle states that Mr. Williams spent 24 hours

of time locating, touring, and securing office space and furniture for trial, (Schmitt Aff. ¶

38), and Mr. Scheurich expended 19.1 hours on "data entry" and "date entry."  (Id. ¶ 41.)

However, other than these two examples—which are not identified by date—Chipotle

does not identify the entries it challenges.

Mr. Williams contends that he was unable to review most of the challenged

entries, since Chipotle provides no identifying information.  (See Williams Supp'l Decl. ¶

26

36.)  As to the expenditure of time for procuring office space, he explains that none of the

Plaintiff Firms are located in St. Paul and counsel required office space in proximity to

the courthouse shortly in advance of trial.  (Id.)  Because he is a solo practitioner, he notes

that the task of securing office space could not be assigned to another person.  (Id.)

Nevertheless, Mr. Williams offers to take a 50% reduction of time for this task, i.e., 55

hours.  (Id.)

    As to the data entry tasks, Mr. Quisenberry attests that Mr. Scheurich reviewed

printed copies of alarm data that Chipotle did not produce in native or editable format.

(See Quisenberry Supp'l Decl. ¶ 11.)  Scheurich then reviewed the alarm data line-by-line

and compared it to the ending store shifts.  (Id.)

    Certain tasks that are administrative or clerical in nature cannot fairly be accounted

for at an attorney's billing rate.  See Rosen v. Wentworth, 13 F. Supp. 3d 944, 952–53 (D.

Minn. 2014).  With respect to the office procurement work of Mr. Williams, the Court

finds that a reduction is warranted.  The Court is mindful that the Plaintiff Firms also took

an across-the-board 10% reduction in fees.  But reducing Plaintiffs' petition by the

number of hours spent on office procurement is appropriate.  Again, Chipotle fails to

identify the billing entries in question.  The Court's review shows Mr. Williams' entries

from 2017 related to this task occurred on April 28, May 19, May 30–31, June 6, June 12,

June 14, June 15, and July 20.   (See Ex. H to Williams Decl.)  The Court has apportioned

time where Mr. Williams' entries were block-billed, resulting in a total calculation of

18.15 hours.  The Court therefore takes a deduction of 18.15 hours at the revised billing

rate of $525, for a total reduction of $9,528.75 for administrative work.

Regarding the data entry and "date entry" tasks, the Court has located some entries from Attorney Samuel Scheurich with these phrases.  For example, a November 30, 2015

entry for Mr. Scheurich states, "Date entry of alarm shut off times into alarm and tie

punch data spreadsheet." (See Quisenberry Decl. at 35.)  In context, it is apparent that

"date" refers to data, and the attorney was performing work appropriately billed at his

billing rate.  No deduction will be taken for this work.

###### v.       Excessive Time Entries & Duplication of Efforts

Chipotle contends that any fee award should be reduced due to overstaffing and

the expenditure of an unreasonable amount of time on particular tasks.  (See Def.'s Opp'n

Mem. at 28–30.)  For example, it asserts that Plaintiffs' counsel required 35 hours, at a

fee of $20,940, to draft the Harris Plaintiffs' initial disclosures, and 2.4 hours to draft the

Woodards initial disclosures.  (See Schmitt Aff. ¶ 30.)  Chipotle further argues that

because the case was staffed with several attorneys, the billing records reflect an

unreasonable amount of inter- and intra-office communications, (see id. ¶ 27), as well as

an excessive amount of time expended on preparing the fee petition.  Chipotle asserts that

Plaintiffs' counsel expended 182.6 hours, incurring $108,895 in fees, on the fee

application.  (Id. ¶ 46.)  It seeks an 85% reduction of the lodestar amount due to

"excessive time entries."  (Def.'s Opp'n Mem. at 30.)

Chipotle seeks a further 85% reduction in any fee award for duplicative work

among the Plaintiff Firms due to "obvious overstaffing."  (Id. at 30–32.)  It argues that

"Plaintiffs engaged twelve attorneys and five paralegals in five separate law firms across

three states for claims involving 27 employees who worked exclusively in Crystal,

Minnesota, and one employee who worked in Golden Valley, Minnesota."  (Id.)  As its

two examples of duplicative billing, Chipotle asserts that (1) "Mr. Levy, Mr. Quisenberry of Bachus & Schanker, and Ms. Sakura of Hinkle Shanor collectively spent approximately 145 hours researching, discussing, charting, and analyzing gap time issues;" and (2) Mr. Quisenberry attended and billed for the deposition of Chipotle's Rule 30(b)(6) deponent even though Mr. Hnasko conducted the deposition.  (Id. at 32.)

In response, Mr. Williams denies having spent 35 hours on initial disclosures for the four Named Plaintiffs in Harris, and instead asserts that he spent approximately 15 hours for the majority of this work. (See Williams Supp'l Decl. ¶ 30) (citing Ex. H to Williams Decl., entries for 9/19/14, 9/22/14, and 9/25/14).  Mr. Williams also disputes that he expended 182.6 hours on the fee petition.  (See id. ¶ 39; Levy Supp'l Decl. ¶ 8.) In addition, Plaintiffs assert that the internal conferences among lawyers were minimal and necessary and that nothing about their work was duplicative.  (Pls.' Reply at 7.) Likewise, as to Chipotle's example of time billed on the issue of gap time, the three attorneys in question deny any unreasonable duplication of effort.  (See Levy Supp'l Decl. ¶ 9; Sakura Supp'l Decl. ¶ 5 [Doc. No. 478]; Quisenberry Supp'l Decl. ¶ 12.) Further, two of the three attorneys indicate that work related to gap-time analysis charts was largely performed by paralegals.  (See Levy Supp'l Decl. ¶ 9; Sakura Supp'l Decl. ¶ 5.)  Regarding the Rule 30(b)(6) deposition, Plaintiffs simply assert that nothing about the task was duplicative.  (See Pls.' Reply at 7.)

Chipotle fails to identify billing entries by date and timekeeper that it seeks to challenge.  Lacking any specificity in Chipotle's objections, the Court declines to take an

85% deduction for excessive billing and yet another 85% deduction for excessive

staffing. "[T]he fact that multiple attorneys were involved in a discussion about the case

does not, by itself, mean that the time spent was unreasonable or excessive." <u>Heydinger</u>,

2016 WL 5661926, at *20.

On the other hand, the Court recognizes that Plaintiffs initially contemplated a

nationwide collective action, and were unsuccessful in seeking conditional certification

on a nationwide basis.  A nationwide collective action might have warranted staffing of

multiple attorneys in different states.  But the collective here was quite limited.  For a

collective action of this size, the decision to continue utilizing multiple law firms in

multiple states resulted in more internal communication than might reasonably be

expected and some duplication of effort.  For example, while Plaintiffs deny that the work

related to the Rule 30(b)(6) deposition was duplicative, they provide no further detail

explaining the need for two attorneys' attendance.  In addition, Plaintiffs actually added

attorneys to these cases even after the collective was limited to the Crystal Restaurant in

September 2014.[8]   Under these circumstances, the Court finds that a reduction of 20% is

warranted to more reasonably account for duplicative or excessive work.

### vi.    Vague Time Entries and Block Billing

Chipotle also seeks an additional reduction of 85% for purportedly vague billing

---

[8] Attorney Kevin Giebel entered a notice of appearance in the <u>Harris</u> action in
October 2015 [Doc. No. 168] and attorneys from the Hinkle Shanor firm first appeared in
the spring of 2016 [Doc. Nos. 178, 179, 187].

entries and block billing.  (See Def.'s Opp'n Mem. at 33–34.)  For instance, it notes that

paralegal Chad Brockman spent 35.5 hours during a three-month period "grooming" data,

(see Schmitt Aff. ¶ 37), and a $315 entry for December 10, 2015 billed by Mr. Scheurich

contains no description of any kind.  (Id. ¶ 43.)  Plaintiffs respond that Mr. Brockman's

entries describe his work in organizing, by specific employees, Chipotle's "massive

amounts of time record data."  (Quisenberry Supp'l Dec. ¶ 10.)

In order to award a reasonable fee, a billing entry must contain a description

regarding the expenditure of time.  And while the subsequent explanation provided by

Mr. Quisenberry is helpful, the entries regarding data grooming are vague.  However, an

85% reduction is not warranted.  The Court finds that a reduction of 5% sufficiently

accounts for vague time entries or a lack of a description altogether.

As to block billing, Chipotle contends that the billing records include 36 instances,

amounting to 442.3 hours and $243,770, in which the timekeeper billed for multiple tasks

in a single entry.  (See Def.'s Opp'n Mem. at 34.)   Plaintiffs, however, note that Chipotle

again fails to identify the billing entries or timekeepers in question.  (Levy Supp'l Decl. ¶

10.)

Block billing involves "the lumping together of daily time entries consisting of two

or more task descriptions" and the Eighth Circuit has no requirement against its use.

King v. Turner, 05-CV-388 (JRT/FLN), 2007 WL 1219308, at *3 (D. Minn. April 24,

2007).   However, this billing practice does make it difficult to determine how much time

was apportioned between tasks and whether that time was reasonable.  See Machine

Main., Inc. v. Generac Power Sys., Inc., No. 4:12-cv-793-JCH, 2014 WL 1725833, at *3 (E.D. Mo. Apr. 29, 2014).  Where block-billed entries specifically describe tasks accomplished, a blanket reduction for block billing is not necessary.  King, 2007 WL 1219308, at *3.  The Court makes no specific deduction to account for block billing, as other reductions account for block billing by apportioning the work or by taking a percentage reduction in light of the block-billed time entry.

The Court thus adjusts the lodestar as follows.  For Harris, with an initial lodestar of $2,931,716.75, the Court deducts 35% of the lodestar (10% for duplicative work + 20% for unsuccessful/abandoned work + 5% for vague entries = 35%), i.e., $1,026,100.86 and also deducts $9,528.75 for administrative work ($1,026,100.86 + $9,528.75 = $1,035,629.61 in total deductions), for a lodestar total of $1,896,087.14 ($2,931,716.75 - $1,035,629.61 = $1,896,087.14).  For Woodards, with an initial lodestar of $160,858.50, the Court also deducts 35% of the lodestar (10% for duplicative work + 20% for unsuccessful/abandoned work + 5% for vague entries = 35%), i.e., $56,300.48, for a lodestar total of $104,558.02 ($160,858.50 - $56,300.48 = $104,558.02).

### c.     Overall Adjustment

After the Court determines the lodestar, it may adjust the figure upward or downward, after taking into account various considerations, including the most important factor—the results obtained.  Hensley, 461 U.S. at 434.  The following are some of the factors that courts may consider:

(1) the time and labor involved; (2) the novelty and difficulty of the

question (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 430 n.3 (citing the "Johnson factors" set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).  However, "many of these factors are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."  Gopher Oil, Inc. v. Union Oil Co. of Cal., 757 F. Supp. 998, 1011 n.16 (D. Minn. 1991) (citation omitted).

Plaintiffs do not seek an upward adjustment.  However, citing certain Johnson factors, Plaintiffs assert that their fee request is justifiably reasonable in light of: (1) the results obtained; (2) the contingent nature of the case; (3) the time and labor involved; and (4) the preclusion of other employment.  (Pls.' Mem. at 29–34.)

Chipotle, however, seeks an 85% overall downward adjustment in fees, arguing that: (1) the legal questions in these actions were not difficult; (2) the Plaintiff Firms were not precluded from other employment; (3) the fees are excessive in light of the amount of damages at stake and the results obtained; (4) the fees are inconsistent with awards in similar cases; and (5) the Plaintiff Firms were unsuccessful as a whole.  (Def.'s Opp'n Mem. at 34–40.)

The Court agrees with Chipotle that the legal questions in these actions were not

unusually difficult.  As to the preclusion of counsel from other employment, the Court

does not agree with Chipotle's position.  While all of Plaintiffs' counsel may not have

been precluded from other employment altogether, the involvement of solo practitioners

caused them to forego other employment opportunities, including work on hourly fee-

paid cases.  (See Williams Decl. ¶ 59; Levy Decl. ¶ 21.)  The Court is sympathetic to the

solo practitioners' expenditure of time and effort, but for other reasons, discussed herein,

finds that a reduced fee award is reasonable.

Plaintiffs further urge the Court to take their contingency-based fee arrangement

into consideration when assessing the reasonableness of the fee petition.  (Pls.' Mem. at

31–32.)  The payment for legal services on a contingency basis, versus payment on an

hourly basis, is one of the Johnson factors that weighs in favor of a fee award.  See Keil v.

Lopez, 862 F.3d 685, 703 (8th Cir. 2017) (affirming a fee award, noting that the

contingency fee factor weighed in favor of awarding the requested fees).  The Court

appreciates the risk undertaken by attorneys representing hourly-paid employees suing

their corporate employer under the FLSA.  However, even considering the contingency-

based arrangement here, the total fee request of $3,236,368.50 is excessive.

The fee request here is particularly high in light of the amount of damages at stake,

Plaintiffs' overall success, and the results obtained—$62,000.  The Court appreciates that

Plaintiffs obtained a settlement in excess of their individual claimed damages and that the

Plaintiff Firms expended considerable time and labor in their representation.  Also, the

Court recognizes that the FLSA attorneys' fees provision is meant to provide employees

with access to the courts.  See Fegley v. Higgins, 19 F.3d 1126, 1134 (6th Cir. 1994).

Courts should not unduly emphasize the amount of a plaintiff's recovery under the FLSA

when determining a fee award because "the award of attorneys' fees in such cases

encourages the vindication of Congressionally identified policies and rights."  Allende v.

Unitech Design, Inc., 783 F. Supp.2d 509, 511–12 (S.D.N.Y. 2011).  Courts have often

awarded attorney's fees in excess of plaintiffs' recoveries in recognition of various

statutory objectives, including the vindication of employee rights under the FLSA.

Netzel, 2017 WL 1906955, at *9 (citing Fegley, 19 F.3d at 1134–35) (affirming attorney

fees of $40,000 on a judgment of $7,680 for overtime compensation); Lucio–Cantu v.

Vela, 239 Fed. App'x 866 (5th Cir. 2007) (affirming award of $51,750 in attorney fees on

a recovery of $4,679 in FLSA action); Howe v. Hoffman–Curtis Partners Ltd., LLP, 215

Fed. App'x 341, 342 (5th Cir. 2007) (affirming $129,805.50 fee award in FLSA action in

which the plaintiff received $23,357.30 in damages); Garcia v. Tyson Foods, No.

6–cv–2198 (JTM), 2012 WL 5985561, at *5–9 (D. Kan. Nov. 29, 2012) (awarding over

$3.2 million in attorney fees on a jury verdict of $533,011 in a collective action under

FLSA and state law); James v. Wash Depot Holdings, Inc., 489 F. Supp. 2d 1341 (S.D.

Fl. May 14, 2007) (awarding attorney fees of $114,021 on a judgment of $3,493.62 in

race discrimination and FLSA suit); Holyfield v. F.P. Quinn & Co., No. 9–cv–507, 1991

WL 65928, at *1 (N.D. Ill. Apr. 22, 1991) (awarding $6,922.25 in attorney fees and costs

on a FLSA judgment of $921).

However, even though the fee-shifting provision of FLSA serves the important

policy purpose of providing access to the courts to remedy violations of labor and wage laws, the requested amount here is inconsistent with awards in similar cases, as noted in the examples cited above.  For example, while the <u>Garcia</u> case involved a $3.2 million fee award, 2012 WL 5985561, at *5–9 , it also involved a $533,011 recovery for the plaintiffs—significantly greater than the $62,000 here.  And while the Plaintiff Firms initially sought to certify a nationwide class, their efforts to do so were unsuccessful.

In consideration of these factors, on balance, the Court is persuaded that due to the relatively straightforward nature of the legal issues here, significantly lower awards in similar cases, the results obtained, and the disproportionate relationship between the amount of damages obtained and the fee request, an overall downward reduction of 70% is reasonable.  For <u>Harris</u>, this results in an award of $568,826.14 ($1,896,087.14 x .70 = $1,327,261 downward adjustment; $1,896,087.14 - $1,327,261 =$568,826.14), and for <u>Woodards</u>, an award of $31,367.41 ($104,558.02 x .70 = $73,190.61 downward adjustment; $104,558.02 - $73,190.61 = $31,367.41), or a combined total award of fees of $600,193.55 ($568,826.14 for <u>Harris</u> + $31,367.41for <u>Woodards</u> = $600,193.55).

### C.    Costs

The Plaintiff Firms seek an award of costs in the amount of $58,597.79 for <u>Harris</u> and $1,345.07 for <u>Woodards,</u> resulting in a total request of $59,942.86.  (Williams Decl. ¶ 50; Quisenberry Supp'l Decl. ¶ 14.)   The FLSA provides for a mandatory award of costs to the prevailing plaintiff.  29 U.S.C. § 216(b).  Reimbursement for reasonably incurred out-of-pocket expenses is routinely granted.  <u>See</u> <u>Netzel</u>, 2017 WL 1906955, at * 9 (citing

<u>Sturgill v. United Parcel Serv., Inc.</u>, 512 F.3d 1024, 1036 (8th Cir. 2008)).

Chipotle argues that Plaintiffs cannot recover costs and fees due to their failure to comply with Local Rule 54.3(c), which requires the filing and service of a verified bill of costs. (Def.'s Opp'n Mem. at 40.)  In addition, they argue that Plaintiffs fail to provide supporting documentation, relying instead on vague spreadsheets summarizing their costs. (<u>Id.</u> at 41.)

It does not appear that the requirement for a bill of costs applies, as Local Rule 54.3 refers to Federal Rule of Civil Procedure 54(d)(1), which sets forth the procedure for recovering taxable costs following entry of judgment.  In any event, the Court will not refuse to consider Plaintiffs' petition for reimbursement of costs as a sanction for failing to file and serve notice.  Chipotle has always been on effective notice that Plaintiffs would seek to recover attorneys' fees and costs, and their settlement agreement expressly contemplated this process.

Nor will the Court refuse, on an overall basis, to consider Plaintiffs' request for costs because its supporting documentation is characterized as "vague."  Plaintiffs submitted itemized lists of their costs.  (<u>See, e.g.</u>, Williams Decl., Ex. I.)  While courts do not typically consider newly submitted material filed in connection with reply memoranda, the Court notes that Plaintiffs' counsel submitted supplemental declarations containing more detailed proof of expenses, such as invoices.

Finally, Chipotle asserts that even if the Court finds that Plaintiffs are entitled to reimbursement of costs, any award must be reduced by $35,288.27 to account for the

following: (1) improperly submitted overhead expenses, for which Chipotle seeks a

deduction of $16,163.11; (2) expert witness fees, amounting to a proposed deduction of

$11,696.94; (3) costs of pro hac vice admissions in the amount of $400 in Harris and

$300 in Woodards; and (4) purportedly vague and unsupported entries, for which it

requests a reduction of $7,328.22. (Def.'s Opp'n Mem. at 42–44.)

The Court declines to make a deduction for improper overhead expenses. While

"[p]laintiffs are not entitled to reimbursement for expenses that are part of normal office

overhead in the community," Emery v. Hunt, 272 F.3d 1042, 1048 (8th Cir. 2001), the

Court does not find the challenged expenses to constitute "overhead." As this Court has

observed, "reimbursement for travel, meals, lodging, photocopying, long-distance

telephone calls, computer legal research, postage, courier service, mediation, exhibits,

documents scanning, and visual equipment are typically recoverable [in FLSA actions]."

Netzel, 2017 WL 1906955, at * 9 (quoting Rutti v. Lojack Corp., Inc., No. 06-cv-350,

2012 WL 3151077, at *12 (D.C. Cal. July 31, 2012)); see also Beckman v. KeyBank,

N.A., 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ("Here, Class Counsel's unreimbursed

expenses, including court and process server fees, postage and courier fees,

transportation, working meals, photocopies, electronic research, expert fees, and

Plaintiffs' share of the mediator's fees, are reasonable and were incidental and necessary

to the representation of the class.") The Court finds the expenses challenged as

"overhead" are reimbursable. See Heydinger, 2015 WL 5661926, at *23 n.20. The Court

likewise finds that the pro hac vice filing fees for which Plaintiffs seek

reimbursement—totaling $700 in both cases—are recoverable.  See Craftsmen

Limousine, Inc. v. Ford Motor Co., 579 F.3d 894, 898 (8th Cir. 2009) (finding that pro

hac vice fees are recoverable).

As to the Plaintiffs' expenses related to their damages consultant, Applecon, LLC,

Chipotle cites West Virginia University Hospitals, Inc. v. Casey, 499 U.S. 83 (1991), in

which the Supreme Court found that absent express statutory authority that shifts fees for

expert services, such costs were not recoverable in a civil rights action.  (See Def.'s

Opp'n Mem. at 43–44.)  Chipotle argues that because the FLSA does not expressly

authorize the award of expert fees to prevailing parties, Plaintiffs are not entitled to

reimbursement for any expert-related expenses.  (Id.)  Plaintiffs do not respond to this

argument in detail, simply stating, "Regarding specific costs, Chipotle (again, confusing

taxable and non-taxable costs) claims . . . 'expert fees' . . . are not recoverable, but

ignores decisions that allow them to be recovered under the FLSA."  (Pls.' Reply at 11)

(citing cases referenced in Pls.' Mem. at 32–33.)

While the Eighth Circuit does not appear to have addressed the question of

whether expert fees are a recoverable expense in a FLSA action, the Second Circuit has

done so, answering in the negative.  See Gortat v. Capala Bros., Inc., 795 F.3d 292, 297

(2d Cir. 2015).  In Gortat, the court held that "because 29 U.S.C. § 216(b) of the FLSA

does not explicitly authorize courts to award reimbursement for expert fees, it does not

permit a court to award such fees beyond the allowances recoverable pursuant to 28

U.S.C. § 1920  as limited by 28 U.S.C. § 1821 [i.e., per diem testifying witness fees]."  Id.

at 296–97 (citing Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 301

(2006); Casey, 499 U.S. at 86; Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437,

445 (1987)).  In Gortat, the Second Circuit further noted that its decision was consistent

with that of several other circuits.  795 F.3d at 297 n.3 (citing Tyler v. Union Oil Co. of

Cal., 304 F.3d 379, 404–05 (5th Cir. 2002); Bankston v. Ill., 60 F.3d 1249, 1256–57 (7th

Cir. 1995); Gray v. Phillips Petroleum Co., 971 F.2d 591, 593–95 (10th Cir. 1992); Glenn

v. Gen. Motors Corp., 841 F.2d 1567, 1573–76 (11th Cir. 1988)).

     While there appears to be no direct Eighth Circuit authority on whether expert

costs in a FLSA suit are recoverable, our sister court, the United States District Court for

the District of Nebraska, has permitted an expert-related expense award in a FLSA action.

See Morales v. Farmland Foods, Inc., No. 8:08CV504, 2013 WL 1704722, at *8, 11 (D.

Neb. Apr. 18, 2013)  ("Under Eighth Circuit precedent, plaintiffs may properly be

reimbursed for computerized legal research, expert witness fees, copying costs and

travel.").  However, the court in Morales did not cite precedent in FLSA actions, but

rather, an insurance indemnification suit, id. (citing Lee-Thomas, Inc. v. Hallmark Cards,

Inc., 275 F.3d 702 (8th Cir. 2002)), and actions brought under 42 U.S.C. § 1988—a

statute amended following Casey to explicitly permit the reimbursement of expert witness

fees.  Id.  (citing Landgraf v. USI Film Prods., 511 U.S. 244, 251 (1994); Interfaith Cmty.

Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 700 (3d Cir. 2005); Zeigler Coal Co. v. Dir.,

Office of Workers' Compensation Programs, 326 F.3d 894, 900 n.2 (7th Cir. 2003)).

Although not in a FLSA action, the Eighth Circuit has affirmed an award of fees and

costs that included, post-Casey, reimbursement for costs that were not expressly

identified under 28 U.S.C. § 1920.  Sturgill, 512 F.3d at 1036.  But Sturgill arose under

Title VII and courts have construed its fee-shifting provision to allow the award of

"reasonable out-of-pocket expenses incurred by the attorney which are normally charged

to a fee paying client."   Id. (citing Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261

F.3d 512, 529 (5th Cir. 2001)).  Similarly, while this Court permitted the reimbursement

of expert-related costs in North Dakota v. Heydinger, 2015 WL 5661926, at *24–25, the

statute in question, 42 U.S.C. § 1988, expressly permits courts, in their discretion, to

include expert fees as part of an attorney's fee award.  See 42 U.S.C. § 1988(c).   In light

of this authority, the Court finds that the expert-related expenses are not recoverable, as

the fee-shifting provision of the FLSA statute does not expressly provide for them.  See

29 U.S.C. § 216(b).  Accordingly, the Court deducts a total of $11,696.94 from Plaintiffs'

requested costs.  (See Williams Decl., Ex. I at 8; Hnasko Decl., Ex. E at 19.)

Chipotle further seeks a reduction of $7,328.22 concerning Plaintiffs'

reimbursement request for "deposition transcripts," arguing that this request is vague.

(Def.'s Opp'n Mem. at 44.)  The Court finds that Plaintiffs have submitted sufficient

support for reimbursement of deposition transcripts and declines to make any reduction in

the fee award.

For all of the foregoing reasons, the Court makes deductions from Plaintiffs'

expense reimbursement request for expert-related costs ($11,696.94).  Because the

primary costs were incurred in the Harris litigation, the Court deducts this amount from

the $58,597.79 that Plaintiffs have requested in costs in <u>Harris</u>.  Accordingly, the Court

finds that Plaintiffs are entitled to an award of costs in the amount of $46,900.85 for

<u>Harris</u> and $1,345.07 for <u>Woodards</u>, or a combined total cost award of $48,245.92.

**THEREFORE IT IS HEREBY ORDERED THAT:**

1.  Plaintiffs' Motion for Attorney Fees and Expenses, and for Authorization to
    Deduct Service Awards from an Award of Attorneys' Fees and/or Expenses
    [Doc. No. 446] is **GRANTED IN PART and DENIED IN PART**;

2.  With respect to <u>Harris v. Chipotle Mexican Grill, Inc.</u>, 13-cv-1719
    (SRN/SER), the Court awards the Plaintiff Firms attorneys' fees in the
    amount of $568,826.14, and costs in the amount of $46,900.85;

3.  With respect to <u>Woodards v. Chipotle Mexican Grill, Inc.</u>, 14-cv-4181
    (SRN/SER), the Court awards the Plaintiff Firms attorneys' fees in the
    amount of $31,367.41, and costs in the amount of $1,345.07;

4.  Service awards are **GRANTED** to the Named <u>Harris</u> Plaintiffs as follows:
    $15,000 for Marcus Harris, $15,000 for Julius Caldwell, $7,500 for Dana
    Evenson, and $5,000 for DeMarkus Hobbs;

5.  The Joint Motion for Approval of Settlement and to Dismiss Action with
    Prejudice [Doc. No. 453] is **GRANTED**;

    This matter is **DISMISSED WITH PREJUDICE**.[9]

---

[9]  The Court's rulings apply equally to the parallel requests made in <u>Woodards v.
Chipotle Mexican Grill, Inc.</u>, 14-cv-4181 (SRN/SER).  Accordingly, Plaintiff's Motion

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:    January 29, 2018

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge

---

for Attorney Fees and Expenses, and for Authorization to Deduct Service Awards from an Award of Attorneys' Fees and/or Expenses [Doc. No. 114] is **GRANTED IN PART AND DENIED IN PART**.  The parties' Joint Motion for Approval of Settlement and to Dismiss Action with Prejudice [Doc. No. 108] is **GRANTED**.

44